COPY

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1  Scott G. Johnson, Bar No. 153735
   SGJohnson@rkmc.com
2  Amy M. Churan, Bar No. 216932
   AMChuran@rkmc.com
3  ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
   2049 Century Park East, 34th Floor
4  Los Angeles, CA  90067-3206
   Telephone:   310-552-0130
5  Facsimile:   310-229-5800

6

7  Attorneys for Defendant,
   FACTORY MUTUAL INSURANCE COMPANY

8

9                UNITED STATES DISTRICT COURT

10               CENTRAL DISTRICT OF CALIFORNIA

11

12 DIRECTV, a Delaware corporation,      Case No.  CV14-08673-AB (MANx)

13               Plaintiff,               **NOTICE OF REMOVAL OF
                                          ACTION UNDER 28 USC § 1441(b) -
14 v.                                     (DIVERSITY)**

15 FACTORY MUTUAL INSURANCE
   COMPANY, a Rhode Island
16 corporation, and DOES 1 through 10,

17               Defendants.

18 **TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

19        PLEASE  TAKE  NOTICE  that  defendant  Factory  Mutual  Insurance

20 Company (hereinafter "FM") hereby removes to this Court the state court action

21 described below.

22        1.    On October 9, 2014, an action was commenced in the Superior Court of

23 the State of California in and for the County of Los Angeles entitled *DIRECTV v.*

24 *Factory Mutual Insurance Company, et al.* and assigned Case Number BC560150.

25 A copy of the complaint is attached hereto as Exhibit "A."

26

27

28

85222738.1

FILED
CLERK, U.S. DISTRICT COURT

NOV - 7 2014

CENTRAL DISTRICT OF CALIFORNIA
BY                           DEPUTY

1      2.   FM was served a copy of the summons and complaint on October 20,

2  2014. A copy of the Proof of Service of Summons showing the October 20, 2014

3  service date is attached hereto as Exhibit "B".

4      3.   The Court has original jurisdiction over this action under 28 U.S.C. §

5  1332. Defendant Factory Mutual may remove this action to this Court pursuant to

6  the provisions of 28 U.S.C. § 1441(b). This is a civil action between citizens of

7  different states and the matter in controversy exceeds the sum of $75,000,

8  exclusive of interest and costs.

9      4.   FM is informed and believes that plaintiff DIRECTV was, and still is, a

10 Delaware corporation with its principal place of business located in El Segundo,

11 California. *See* Exhibit "A" at paragraph 2.

12     5.   FM is Rhode Island corporation with its principal place of business in

13 Rhode Island. *See* Exhibit "A" at paragraph 3.

14     6.   The matter in controversy exceeds the sum of $75,000. Plaintiff seeks

15 damages in its Complaint in an amount in excess of $23 million. *See* Exhibit "A"

16 at paragraphs 37 and 41.

17     7.   Attached as Exhibit "C" is a conformed copy of FM's answer to the

18 Complaint which was filed on November 6, 2014.

19     8.   FM is informed and believes that Exhibits "A," "B," and "C" constitute

20 the entirety of the state court's file on this matter.   Attached as Exhibit "D" is a

21 current copy of the docket from the state court.

22 DATED:  November 7, 2014       **ROBINS, KAPLAN, MILLER & CIRESI**

23                            **L.L.P.**

24                     By:

25                           Scott G. Johnson

26                   **ATTORNEYS FOR DEFENDANT**
                        **FACTORY MUTUAL INSURANCE**

27                   **COMPANY**

28

*(Left margin, vertical text:)* ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT "A"

Kirk A. Pasich (SBN 94242)
pasichk@dicksteinshapiro.com
Michael S. Gehrt (SBN 246450)
gehrtm@dicksteinshapiro.com
DICKSTEIN SHAPIRO LLP
2049 Century Park East, Suite 700
Los Angeles, CA 90067-3109
Telephone: (310) 772-8300
Facsimile: (310) 772-8301

Attorneys for Plaintiff

A6015
90245
DEPT. 71
SUZANNE G.
BRUGUERA

FILED
Superior Court of California
County Of Los Angeles

OCT 09 2014

Sherri R. _____ Officer/Clerk
By_____, Deputy
       Judi Lara

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

DIRECTV, a Delaware corporation,

    Plaintiff,

    vs.

FACTORY MUTUAL INSURANCE COMPANY, a
Rhode Island corporation, and DOES 1 through 10,

    Defendants.

Case No. **BC 5 6 0 1 5 0**

Case assigned to

**COMPLAINT FOR BREACH OF
CONTRACT AND DECLARATORY
RELIEF**

**DEMAND FOR JURY TRIAL**

Plaintiff DIRECTV complains of Defendants and alleges as follows:

### NATURE OF THE ACTION

1.    This lawsuit is an action by DIRECTV to recover under an "all risks" property insurance policy for losses that it suffered as a result of the massive floods in Thailand in October 2011. This policy promises up to $3 billion in coverage for a wide ranges of losses, including economic losses that DIRECTV suffers because of property damage to the facilities of its direct suppliers. However, when DIRECTV suffered approximately $23 million in economic losses because of flood damage to two facilities of its direct supplier in Thailand, Factory Mutual Insurance Company ("FM") wrongfully denied coverage. FM contended that its policy provided no coverage whatsoever for DIRECTV's losses, claiming that the damaged Thailand facilities were owned by an entity that does not qualify as a "direct supplier" of DIRECTV because DIRECTV did not have a

**COMPLAINT AND DEMAND FOR JURY TRIAL**

1    written contract with the suppler.  FM took this position even though its policy did not limit "direct

2    suppliers" to only those suppliers that had contracts wth DIRECTV.  In adopting this position, FM

3    deprived DIRECTV of the full scope of the promised, and paid-for, coverage, and ignored the rules

4    under insurance industry custom and practice and California law that govern the interpretation of its

5    policy.  Therefore, DIRECTV brings this action to recover the full amount of its insured loss, plus

6    interest.

7                                          **THE PARTIES**

8          2.       DIRECTV is a Delaware corporation, with its principal place of business in El

9    Segundo, California.  DIRECTV, through its wholly owned subsidiaries, is the world's leading

10   provider of digital television entertainment services.  The DIRECTV companies acquire, promote,

11   sell, and distribute digital entertainment programming via satellite to residential and commercial

12   subscribers.  More than 20 million customers subscribe to DIRECTV service in the United States

13   and more than 17 million customers subscribe in Latin America.

14         3.       FM is a Rhode Island corporation, with its principal place of business in Rhode

15   Island.  It is licensed to transact business, and is transacting business, in the State of California and

16   the County of Los Angeles.

17         4.       FM is a member of the FM Global group of insurance companies.  FM and the other

18   FM Global insurance companies are extremely sophisticated and knowledgeable in insuring against

19   property and business interruption losses, and in investigating the risks that they are insuring.

20         5.       FM and the other FM Global companies participate in a wide range of first-party

21   insurance programs and hold themselves out as being knowledgeable, experienced, and reliable, and

22   willing to insure, and capable of insuring, substantial property and business interruption losses,

23   including flood-related losses around the world.

24         6.       According to its website, "FM Global provides comprehensive global commercial

25   and industrial property insurance, engineering-driven underwriting and risk management solutions,

26   groundbreaking property loss prevention research and prompt, professional claims handling."

27   http://www.fmglobal.com/page.aspx?id=01000000 (visited October 9, 2014).  FM Global represents

28   that its "coverage is based on the realities of our clients' individual risks, rather than actuarial

DICKSTEIN
SHAPIRO
LLP

COMPLAINT AND DEMAND FOR JURY TRIAL

1    assessments. We conduct hands-on research and deploy on-the-ground engineers and claims

2    personnel to help clients overcome new risk management challenges, and accommodate all their

3    property insurance and protection needs." http://www.fmglobal.com/page.aspx?id=02030000

4    (visited October 9, 2014).

5           7.     FM Global further represents that its "all risk" property coverage is "designed to

6    provide comprehensive and consistent global insurance coverage, backed by large, stable capacity

7    and tailored to your business needs" and "designed to be flexible enough so that a single policy can

8    provide all the coverage your business requires." http://www.fmglobal.com/page.aspx?id=03010100

9    (visited October 9, 2014).

10          8.     DIRECTV is ignorant of the true names and capacities, whether individual, associate,

11   partnership, or corporate or otherwise, of the defendants fictitiously designated herein as Does 1

12   through 10, and therefore sues those defendants by these fictitious names.  DIRECTV will seek

13   leave of Court to amend this complaint when the true names and capacities of these fictitiously

14   designated defendants have been ascertained.  DIRECTV is informed and believes, and on that basis

15   alleges, that Does 1 through 10, in some way unknown to DIRECTV, have underwritten or provided

16   insurance coverage to DIRECTV or are otherwise responsible for the loss alleged herein, and that

17   Does 1 through 10 are authorized to, and do, transact business in the State of California and the

18   County of Los Angeles.

19                        **THE FACTORY MUTUAL INSURANCE POLICY**

20          9.     FM has provided broad, all-risk property insurance coverage to DIRECTV for many

21   years.  During this time, FM has engaged, or had reasonable opportunities to engage, in extensive

22   underwriting investigation, and has become familiar and knowledgeable regarding the nature and

23   scope of DIRECTV's business and the nature of the risks that it was insuring against.

24          10.    FM issued Policy No. UB946, with a policy period of March 15, 2011, to March 15,

25   2012, to "DIRECTV" (hereafter, the "Policy").  DIRECTV and "any subsidiary" are the named

26   insureds under the Policy.  A true and correct copy of the Policy is attached hereto as Exhibit A and

27   incorporated by reference.

28

DICKSTEIN
SHAPIRO
LLP

3

COMPLAINT AND DEMAND FOR JURY TRIAL

11. The Policy is an "all-risk" property insurance policy—that is, a policy that covers all risks of loss except those plainly, clearly, conspicuously, and expressly excluded. Like most commercial property insurance policies, the Policy insures not only against physical damage or destruction of property, but also for the economic losses caused by physical damage or destruction. This coverage is typically referred to as "Time Element" coverage. The Time Element coverage is designed, understood, stated, and intended to cover insureds, including DIRECTV here, for economic losses, including losses from the interruption and/or reduction of its business

> directly resulting from physical loss or damage of the type insured by this
> Policy: 1) to property described elsewhere in this Policy and not
> otherwise excluded by this Policy or otherwise limited in the TIME
> ELEMENT COVERAGE below . . . .

Ex. A, § C, ¶ 1(A)(1). Within its "Time Element" coverage, the Policy covers "Extra Expense" as follows: "[t]he recoverable EXTRA EXPENSE loss will be the reasonable and necessary extra costs incurred by the Insured of the following . . . [e]xtra expenses to temporarily continue as nearly normal as practicable the conduct of the Insured's business . . . ." *Id.*, § C, ¶ 2(D)(1)(a).

12. The Policy also provides a broad range of "Time Element Coverage Extensions." These extensions include "Contingent Time Element Extended" coverage, which provides:

> This Policy covers the Actual Loss Sustained and EXTRA EXPENSE
> incurred by the Insured during the PERIOD OF LIABILITY directly
> resulting from physical loss or damage of the type insured to property of
> the type insured at Contingent Time Element Locations located within the
> TERRITORY of this Policy.

*Id.*, § C, ¶ 3(B).

13. The "Territory" of the Policy "covers Insured Locations worldwide" except for loss or damage in certain named countries. *Id.*, § A, ¶ 3. Thailand is not excluded from the Policy's "Territory" definition. *Id.*

14. The Policy defines "Contingent Time Element Locations" as "Any location: (a) of a direct supplier, contract manufacturer or contract service provider to the Insured." *Id.*, § C,

COMPLAINT AND DEMAND FOR JURY TRIAL

1    ¶ 3(B)(3)(a)(i)(a). The Policy makes clear that the "Time Element Coverage Extensions" apply to

2    these "Contingent Time Element Locations," which "shall be considered Insured Locations for

3    application of such Extensions." *Id.*, § C, ¶ 1(E).

4       15.    The Policy's "Contingent Time Element Locations" coverage requires DIRECTV to

5    "influence and cooperate with the Contingent Time Element Location in every way and take any

6    reasonable and necessary action . . . to effect mitigation of the loss payable hereunder." *Id.*, § C,

7    ¶ 3(B)(1)(a).

8       16.    The Policy also obligates FM to reimburse DIRECTV for all "expenses reasonably

9    and necessarily incurred by the Insured to reduce the loss otherwise payable under [the Time

10   Element] section of this Policy." *Id.*, § C, ¶ 1(C).

11      17.    The Policy contains a $3,000,000,000 limit of liability for loss from any single

12   occurrence. *Id.*, § A, ¶ 7. Like many property insurance policies, it provides lower amounts of

13   coverage (that is, coverage subject to "sub-limits") for specified types of losses. Thus, the Policy

14   provides $150,000,000 in coverage for "TIME ELEMENT for Locations outside of the United States

15   of America, its territories and possessions, and the Commonwealth of Puerto Rico" and a separate

16   $50,000,000 sub-limit for "CONTINGENT TIME ELEMENT EXTENDED but not to exceed a

17   USD25,000,000 limit per Contingent Time Element Location." *Id.*

18      18.    The Policy provides that "[i]n each case of loss covered by this Policy, the Company

19   will be liable only if the Insured sustains a loss, including any insured TIME ELEMENT loss, in a

20   single Occurrence greater than the applicable deductible . . . and only for its share of that greater

21   amount." *Id.*, § A, ¶ 12. The "Contingent Time Element Location" deductible is "USD2,500,000

22   per Occurrence." *Id.* "However when the loss results from . . . Flood such loss shall be subject to its

23   respective deductible(s) and shall apply at each Contingent Time Element Location where the

24   physical damage occurs as follows: 1) Flood USD2,500,000 Time Element, per Location." *Id.*

25      19.    To the extent not waived or otherwise excused because of the acts and conduct of FM

26   or by operation of law, DIRECTV has complied with all terms and conditions precedent contained in

27   the Policy. Therefore, it is entitled to all benefits of insurance provided by the Policy.

28

## DIRECTV'S SUPPLY CHAIN AND LOSS FROM THE THAILAND FLOODS

20.    DIRECTV programming is transmitted to subscribers via the DIRECTV System.  The DIRECTV System includes a satellite dish antenna that is attached to an ou loor surface.  The satellite dish picks up the signals from DIRECTV's satellites and transmits lose signals to another component of the DIRECTV System called the DIRECTV Receiver, which n turn transmits the signals to the subscriber's television as viewable television programming.

21.    A critical component of any DIRECTV Receiver with a digit l video recorder ("DIRECTV DVR") is the hard drive that stores software and data in the Re eiver and allows subscribers to record and watch television programming on their own schedules and at their convenience.  Western Digital Technologies, Inc. ("Western Digital") and Seagate Technology LLC ("Seagate") were selected by DIRECTV to be the exclusive direct suppliers and manufacturers of the hard drives used by DIRECTV in its DIRECTV DVRs.  DIRECTV works directly with both Western Digital and Seagate to develop specifications for the hard drives so that they conform to DIRECTV's technical requirements.  DIRECTV also has regular monthly meetings and biweekly discussions with Western Digital and Seagate regarding quality and fault analyses for the hard drives.  In addition, neither Western Digital nor Seagate can change the hard drive specifications without DIRECTV's unilateral approval.

22.    Once the hard drives are manufactured pursuant to DIRECTV's specifications, Western Digital and/or Seagate provide the hard drives to one of DIRECTV's four DIRECTV Receiver assemblers (Technicolor Connected Home USA, LLC, Pace Americas Inc., Samsung Electronics America, Inc., and Humax USA, Inc.) for incorporation into the DIRECTV DVRs.  The assemblers then send the completed DIRECTV DVRs, including the hard drives provided by Western Digital and/or Seagate, to DIRECTV's distribution facilities.  Due to the direct supplier relationship between DIRECTV and its hard drive suppliers, Western Digital and Seagate, the assemblers cannot source hard drives from any other company for assembly into DIRECTV DVRs, and cannot even alternate between Western Digital and Seagate, without prior unilateral approval from DIRECTV.

23.    In October 2011, floodwaters caused by an accumulation of water from an unusually

DICKSTEIN
SHAPIRO
LLP

COMPLAINT AND DEMAND FOR JURY TRIAL

1    strong monsoon season in northern Thailand swamped more than 1,000 factories across central

2    Thailand.  The flood physically damaged two of Western Digital's Thailand manufacturing plants

3    that supplied the hard drives used by DIRECTV in its DIRECTV DVRs.  The damage to Western

4    Digital's manufacturing plants resulted in a diminished supply of hard drives available to DIRECTV

5    for incorporation into the DIRECTV DVRs.

6         24.    Following the flood, Western Digital provided regular updates and presentations to

7    DIRECTV regarding the progress of Western Digital's flood recovery effort.  In the meantime,

8    DIRECTV sourced replacement hard drives from Seagate due to the lack of supply or prohibitively

9    higher cost related to the Western Digital hard drives.  Despite an average cost above pre-flood level,

10   the replacement hard drives from Seagate significantly reduced DIRECTV's Contingent Time

11   Element Loss as a result of the flood.

12        25.    As a result of the flood damage to Western Digital's Thailand manufacturing plants,

13   DIRECTV is informed and believes, and on that basis alleges, that it has suffered a Contingent Time

14   Element Loss in excess of $19,000,000.

15        26.    DIRECTV is further informed and believes, and on that basis alleges, that it has

16   incurred over $3,000,000 in extra expenses, other loss, and costs that are covered by the various

17   provisions of the Policy.  DIRECTV is also entitled to recover such extra expense, loss, and costs

18   under the law, including the common law doctrine of mitigation of damages.  Had DIRECTV not

19   engaged in these reasonable steps to mitigate its loss, its loss would have been substantially greater.

20        27.    To the extent that any of the Policy's deductibles apply, the total amount of

21   DIRECTV's insured loss would be reduced by the amount of any applicable deductibles.  DIRECTV

22   is informed and believes, and on that basis alleges, that the applicable deductibles do not exceed

23   $5,000,000.  Therefore, DIRECTV is entitled to at least $17,000,000 in coverage under the Policy,

24   plus interest.

25            **FACTORY MUTUAL'S BREACH OF ITS INSURANCE CONTRACT**

26        28.    DIRECTV promptly notified FM regarding the loss that DIRECTV suffered from the

27   flooding in Thailand.  DIRECTV also provided extensive information and documentation to FM

28   regarding the nature and extent of its loss and has met with FM to discuss the loss and answer

DICKSTEIN
SHAPIRO
LLP

COMPLAINT AND DEMAND FOR JURY TRIAL

1  questions.  DIRECTV has reasonably and timely cooperated with FM in FM's investigation of the

2  loss.

3       29.      In April and May 2013, FM requested from DIRECTV information regarding the

4  business relationship between Western Digital and DIRECTV.

5       30.      On July 11, 2013, DIRECTV provided FM a description of its supply chain and

6  confirmed that Western Digital and Seagate are the exclusive direct suppliers and manufacturers of

7  the hard drives used in the DIRECTV DVRs.

8       31.      On July 31, 2013, FM responded, requesting copies of any contracts and/or

9  agreements between DIRECTV, on the one hand, and Western Digital and Seagate, on the other.

10      32.      On October 31, 2013, DIRECTV informed FM that it does not have a written contract

11  or agreement with either Western Digital or Seagate.  DIRECTV explained, however, that FM's

12  inquiry regarding contracts with either Western Digital or Seagate was not determinative of the

13  Policy's coverage because the Policy covers "direct suppliers" and does not require that DIRECTV

14  have written contracts with its "direct suppliers."

15      33:      On December 5, 2013, FM sent a letter denying coverage for DIRECTV's loss.  FM

16  erroneously stated that DIRECTV's Contingent Time Element Loss was not covered by the Policy

17  because Western Digital does not qualify as a "direct supplier" of DIRECTV.  FM acknowledged

18  that there was, in fact, a "direct working relationship" between DIRECTV and Western Digital, but

19  cited the lack of a "contractual relationship" as the sole basis for denying coverage.  FM did so, even

20  though:

21           (a)      it knew, or should have known from its many years of insuring DIRECTV,

22  including for world-wide Time Element losses, the nature and structure of DIRECTV's business and

23  manufacturing relationships;

24           (b)      it had never informed DIRECTV during the years of selling DIRECTV

25  property insurance that the coverage for losses involving "direct suppliers" would apply only if

26  DIRECTV had written contracts with those "direct suppliers";

27           (c)      the Policy does not define or limit "direct suppliers" and does not specify that

28  a supplier is a "direct supplier" only if DIRECTV has a written contract with that supplier;

1        (d)    it could have worded its policy provision to plainly and clearly restrict

2   coverage to direct suppliers with whom DIRECT had written contracts, but did not do so;

3        (e)    had it previously told DIRECTV of the limiting interpretation that it now

4   asserts, DIRECTV could have entered into written contracts with the suppliers, thereby ensuring

5   coverage; and

6        (f)    DIRECTV's interpretation of the Policy is a reasonable interpretation in

7   accord with its reasonable expectations and, therefore, is the interpretation that FM knows, or should

8   know, controls under insurance industry custom and practice and California law.

9       34.    Notwithstanding FM's improper denial of coverage, DIRECTV continued to gather

10   information in support of its claim for coverage of its loss under the terms of the Policy.  In

11   furtherance of DIRECTV's efforts to resolve its claim amicably, DIRECTV requested and received

12   multiple extensions of time to submit its proof of loss and file suit under the terms of the Policy.

13   The most recent extension, granted by FM on August 8, 2014, extended the time for DIRECTV to

14   submit its proof of loss until September 10, 2014, and the time to file suit against FM until October

15   10, 2014.

16       35.    On September 9, 2014, DIRECTV submitted to FM a detailed proof of loss along

17   with supporting claim documentation substantiating DIRECTV's claim for coverage.

18       36.    On September 15, 2014, FM sent a letter to DIRECTV rejecting DIRECTV's proof of

19   loss on the ground that neither Western Digital nor Seagate are direct suppliers to DIRECTV.  FM

20   confirmed that the coverage position stated in its December 5, 2013, letter "remains unchanged."

21       37.    At this time, DIRECTV estimates that its loss resulting from the flood damage to its

22   direct supplier, Western Digital, is in excess of $23,000,000.  DIRECTV expects FM to pay for

23   DIRECTV's loss, costs, and extra expenses resulting from the floods in Thailand.

24   <u>**FIRST CAUSE OF ACTION**</u>

25   **(Breach of Contract Against Factory Mutual)**

26       38.    DIRECTV realleges and incorporates by reference herein each allegation contained in

27   paragraphs 1 through 37 above.

28       39.    Implied in the Policy is a covenant that FM would act in good faith and deal fairly

1  with DIRECTV, that it would do nothing to interfere with DIRECTV's right to receive the benefits

2  due under the Policy, and that it would give at least the same level of consideration to DIRECTV's

3  interests as it gives to its own interests.

4      40.    FM has breached its duties under the Policy by, among other things:

5          (a)    Denying coverage and refusing to pay for DIRECTV's loss caused by the

6  flood damage to the property of Western Digital;

7          (b)    Denying coverage and refusing to pay for amounts that DIRECTV spent to

8  reduce its Contingent Time Element Loss, even though the Policy requires DIRECTV to "mitigate"

9  its loss and both the Policy and common law obligate FM to pay DIRECTV for amounts that

10  DIRECTV reasonably incurred in an effort to mitigate loss; and

11          (c)    By otherwise acting as alleged above.

12      41.    As a direct and proximate result of FM's acts, DIRECTV has been damaged in an

13  amount in excess of $23,000,000, plus interest.  The damages include the amount owing under the

14  Policy, plus damages caused by FM's delays and denials of coverage.  The actual amount of

15  damages has not been precisely ascertained yet.  When the precise amount of these damages is

16  known, DIRECTV will seek leave of Court to amend this Complaint.

17                  **SECOND CAUSE OF ACTION**

18          **(Declaratory Relief Against Does 1 through 10)**

19      42.    DIRECTV realleges and incorporates by reference herein each allegation contained in

20  paragraphs 1 through 37 above.

21      43.    DIRECTV is informed and believes, and on that basis alleges, that Does 1 through 10

22  dispute DIRECTV's contentions as stated above.  Therefore, an actual and justiciable controversy

23  exists between DIRECTV and Does 1 through 10 concerning the coverage provided for DIRECTV's

24  loss caused by the flood damage to the property of Western Digital.

25      44.    Because an actual and justiciable controversy between DIRECTV and Does 1 through

26  10 exists, DIRECTV seeks a judicial declaration regarding the duties and obligations of Does 1

27  through 10 by confirming that DIRECTV's contentions, as stated above, are correct and DOES 1

28  through 10's contentions are incorrect; and declaring that DIRECTV's loss caused by the flood

DICKSTEIN
SHAPIRO
LLP

COMPLAINT AND DEMAND FOR JURY TRIAL

1    damage to DIRECTV's direct supplier, Western Digital.

2         45.    A declaration is necessary at this time so the parties' dispute may be resolved and

3    they are made aware of their respective rights and obligations to one another.

4         WHEREFORE, DIRECTV prays for judgment as follows:

5                        **ON THE FIRST CAUSE OF ACTION**

6    1.    For damages according to proof at the time of trial, plus interest;

7                       **ON THE SECOND CAUSE OF ACTION**

8    2.    For declarations in accord with DIRECTV's contentions stated above.

9                          **ON ALL CAUSES OF ACTION:**

10   3.    For costs of suit incurred herein; and

11   4.    For such other, further, and/or different relief as may be deemed just and proper.

12

13   DATED:  October 9, 2014                  DICKSTEIN SHAPIRO LLP

14                                            By: _____

15                                                Michael S. Gehrt
                                                 Attorneys for Plaintiff

16

17

18

19

20

21

22

23

24

25

26

27

28

DICKSTEIN
SHAPIRO
LLP

COMPLAINT AND DEMAND FOR JURY TRIAL

1        **DEMAND FOR JURY TRIAL**

2            DIRECTV hereby demands a trial by jury in this action.

3

4   DATED:  October 9, 2014                    DICKSTEIN SHAPIRO LLP

5

6                                          By: _____

7                                              Michael S. Gehrt
                                               Attorneys for Plaintiff

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT AND DEMAND FOR JURY TRIAL

EXHIBIT A



**FM Global**

# MUTUAL CORPORATION
# NON-ASSESSABLE POLICY

Factory Mutual Insurance Company
P.O. Box 7500
Johnston, Rhode Island 02919
1-800-343-7722

## DECLARATIONS

| Policy No. | Previous Policy No. | DATE OF ISSUE |
|---|---|---|
| UB946 | UB813 | 14 March, 2011 |

| Account No. | Replaces Binder No. | |
|---|---|---|
| 1-33966 | | |

In consideration of this Policy's Provisions, Conditions, Stipulations, Exclusions and Limits of Liability, and of premium charged, Factory Mutual Insurance Company, hereafter referred to as the Company, does insure:

> **INSURED:**
>
> DIRECTV
>
>
>
> (For Complete Title See Policy)

The term of this Policy is from the 15th day of March, 2011 to the 15th day of March, 2012 at 12:01 a.m., Standard Time, at the Locations of property involved as provided in this Policy.

This Policy covers property, as described in this Policy, against ALL RISKS OF PHYSICAL LOSS OR DAMAGE, except as hereinafter excluded, while located as described in this Policy.

By virtue of this Policy and any other policies purchased from the Company being in force, the Insured becomes a member of the Company, subject to the provisions of its charter and by-laws, and is entitled to one vote either in person or by proxy at any and all meetings of said Company.

Assignment of this Policy will not be valid except with the written consent of the Company.

This Policy is made and accepted subject to the above provisions and those hereinafter stated, which are made a part of this Policy, together with such other provisions and agreements as may be added to this Policy.

In Witness, this Company has issued this Policy at its office in the city of Johnston, R. I. this 14th day of March, 2011.

Authorized Signature                Secretary                President

Countersigned (if required) this          day of

_____
                                        Agent

Form FMGA DEC
7020 (5/99)

Printed in U.S.A.

EX.A



Account No.  1-33966
Policy No.  UB946

## TABLE OF CONTENTS
### (Order In Which They Appear)

Page No.

**DECLARATIONS PAGE**

**DECLARATIONS - SECTION A**

| | | |
|---|---|---|
| 1. | NAMED INSURED AND MAILING ADDRESS | 1 |
| 2. | POLICY DATES | 1 |
| 3. | TERRITORY | 1 |
| 4. | INSURED LOCATION | 1 |
| 5. | CURRENCY | 2 |
| 6. | OCCURRENCE | 2 |
| 7. | LIMITS OF LIABILITY | 2 |
| 8. | PREMIUM | 6 |
| 9. | PREMIUM PAYABLE | 6 |
| 10. | VALUE REPORTING PROVISIONS | 6 |
| 11. | WAITING PERIOD | 6 |
| 12. | DEDUCTIBLES | 7 |

**PROPERTY DAMAGE - SECTION B**

| | | | |
|---|---|---|---|
| 1. | | PROPERTY INSURED | 12 |
| 2. | | PROPERTY EXCLUDED | 12 |
| 3. | | ADDITIONAL COVERAGES | 13 |
| | A. | ACCOUNTS RECEIVABLE | 13 |
| | B. | AUTOMATIC COVERAGE | 14 |
| | C. | BRANDS AND LABELS | 15 |
| | D. | COINSURANCE DEFICIENCY AND CURRENCY DEVALUATION | 15 |
| | E. | CONSEQUENTIAL REDUCTION IN VALUE | 16 |
| | F. | CONTROL OF DAMAGED PROPERTY | 16 |
| | G. | DATA, PROGRAMS OR SOFTWARE | 16 |
| | H. | DEBRIS REMOVAL | 18 |
| | I. | DECONTAMINATION COSTS | 18 |
| | J. | DEFERRED PAYMENTS | 18 |
| | K. | DEMOLITION AND INCREASED COST OF CONSTRUCTION | 19 |
| | L. | DIFFERENCE IN CONDITIONS | 20 |
| | M. | EARTH MOVEMENT | 21 |
| | N. | ERRORS AND OMISSIONS | 21 |
| | O. | EXPEDITING COSTS | 22 |
| | P. | FINE ARTS | 22 |
| | Q. | FLOOD | 23 |
| | R. | LAND AND WATER CONTAMINANT CLEANUP, REMOVAL AND DISPOSAL | 23 |
| | S. | MISCELLANEOUS PERSONAL PROPERTY | 24 |
| | T. | NEIGHBOUR'S RECOURSE AND TENANT'S LIABILITY | 24 |
| | U. | NON-ADMITTED INCREASED TAX LIABILITY | 25 |
| | V. | OFF PREMISES STORAGE FOR PROPERTY UNDER CONSTRUCTION | 25 |
| | W. | OPERATIONAL TESTING | 26 |
| | X. | PROFESSIONAL FEES | 26 |



Account No.  1-33966
Policy No.  UB946

## TABLE OF CONTENTS
### (Order In Which They Appear)

| | | Page No. |
|---|---|---|
| Y. | PROTECTION AND PRESERVATION OF PROPERTY | 27 |
| Z. | SERVICE INTERRUPTION PROPERTY DAMAGE | 27 |
| AA. | TAX TREATMENT OF PROFITS | 28 |
| BB. | TEMPORARY REMOVAL OF PROPERTY | 29 |
| CC. | TERRORISM | 29 |
| DD. | TRANSPORTATION | 30 |
| EE. | VALUABLE PAPERS AND RECORDS | 32 |
| 4. | APPLICATION OF POLICY TO DATE OR TIME RECOGNITION | 33 |
| 5. | EXCLUSIONS | 34 |

**TIME ELEMENT - SECTION C**

| | | |
|---|---|---|
| 1. | LOSS INSURED | 39 |
| 2. | TIME ELEMENT COVERAGES | 40 |
| | A. INSURED OPTION | 40 |
| | B. GROSS EARNINGS | 40 |
| | C. GROSS PROFIT | 42 |
| | D. EXTRA EXPENSE | 45 |
| | E. LEASEHOLD INTEREST | 45 |
| | F. RENTAL INSURANCE | 46 |
| 3. | TIME ELEMENT COVERAGE EXTENSIONS | 47 |
| | SUPPLY CHAIN TIME ELEMENT COVERAGE EXTENSIONS | 47 |
| | A. CIVIL AUTHORITY | 47 |
| | B. CONTINGENT TIME ELEMENT EXTENDED | 47 |
| | C. INGRESS/EGRESS | 48 |
| | D. LOGISTICS EXTRA COST | 49 |
| | E. SERVICE INTERRUPTION TIME ELEMENT | 51 |
| | ADDITIONAL TIME ELEMENT COVERAGE EXTENSIONS | 52 |
| | A. COMPUTER SYSTEMS–NON PHYSICAL DAMAGE | 52 |
| | B. DELAY IN START UP | 52 |
| | C. EXTENDED PERIOD OF LIABILITY | 52 |
| | D. ON PREMISES SERVICES | 53 |
| | E. PROTECTION AND PRESERVATION OF PROPERTY – TIME ELEMENT | 53 |
| | F. RELATED REPORTED VALUES | 54 |
| | G. RESEARCH AND DEVELOPMENT | 54 |
| | H. SOFT COSTS | 54 |
| 4. | PERIOD OF LIABILITY | 55 |
| 5. | TIME ELEMENT EXCLUSIONS | 58 |

**LOSS ADJUSTMENT AND SETTLEMENT - SECTION D**

| | | |
|---|---|---|
| 1. | LOSS ADJUSTMENT/PAYABLE | 59 |
| 2. | CURRENCY FOR LOSS PAYMENT | 59 |
| 3. | VALUATION | 59 |
| 4. | LOSS CONDITIONS | 62 |
| | A. REQUIREMENTS IN CASE OF LOSS | 62 |
| | B. COMPANY OPTION | 63 |



Account No. 1-33966
Policy No. UB946

## TABLE OF CONTENTS
### (Order In Which They Appear)

Page No.

C.  ABANDONMENT ........................................................................ 63
D.  SUBROGATION ......................................................................... 63
E.  APPRAISAL ............................................................................... 64
F.  SUIT AGAINST THE COMPANY ................................................ 65
5.  SETTLEMENT OF CLAIMS ......................................................... 65
6.  COLLECTION FROM OTHERS .................................................... 65
7.  PARTIAL PAYMENT OF LOSS SETTLEMENT ............................ 65
8.  JURISDICTION ........................................................................... 65

**GENERAL PROVISIONS - SECTION E**

1.  ADDITIONAL INSURABLE INTERESTS/CERTIFICATES OF INSURANCE ........ 66
2.  CANCELLATION/NON-RENEWAL ............................................... 66
3.  INSPECTIONS ............................................................................ 66
4.  PROVISIONS APPLICABLE TO SPECIFIC JURISDICTIONS ........ 67
5.  LIBERALIZATION ....................................................................... 69
6.  MISREPRESENTATION AND FRAUD .......................................... 69
7.  LENDERS LOSS PAYEE AND MORTGAGEE INTERESTS AND OBLIGATIONS ........ 69
8.  OTHER INSURANCE .................................................................. 71
9.  POLICY MODIFICATION ............................................................. 71
10.  REDUCTION BY LOSS ............................................................... 71
11.  SUSPENSION ............................................................................. 72
12.  TITLES ...................................................................................... 72
NEW MADRID SEISMIC ZONE ............................................................ APPENDIX A
PACIFIC NORTHWEST SEISMIC ZONE ................................................ APPENDIX B
HIGH HAZARD WIND ZONES WORLDWIDE ......................................... APPENDIX C
HOME SERVICES LOCATIONS ............................................................ APPENDIX D
SUPPLEMENTAL UNITED STATES CERTIFIED ACT OF TERRORISM ENDORSEMENT,
FORM FMG7308

 **FM** Global

Account No.   1-33966
Policy No.   UB946

# DECLARATIONS - SECTION A

## 1.  NAMED INSURED AND MAILING ADDRESS

DIRECTV and any subsidiary, and DIRECTV's interest in any partnership or joint venture in which DIRECTV has management control or ownership as now constituted or hereafter is acquired, as the respective interest of each may appear; all hereafter referred to as the "Insured", including legal representatives.

2250 East Imperial Highway
P.O. Box 956/A141
El Segundo, CA 90245-0956

## 2.  POLICY DATES

|  |  |
|---|---|
| FROM: | 15 March, 2011 |
| TO: | 15 March, 2012 |
| TERM: | One year |

## 3.  TERRITORY

This Policy covers Insured Locations worldwide except for loss or damage in the following countries:

Afghanistan, Albania, Algeria, Angola, Armenia, Azerbaijan, Bangladesh, Belize, Benin, Botswana, Burkina Faso, Burundi, Cambodia, Cameroon, Central African Republic, Chad, Cote D'Ivoire, Cuba, Democratic Republic of the Congo (former Zaire), Djibouti, Equatorial Guinea, Eritrea, Ethiopia, Fiji, Gabon, Gambia, Georgia, Ghana, Grenada, Guinea, Guinea-Bissau, Guyana, Haiti, India (State of Jammu and Kashmir), Iran, Iraq, Israel (Gaza Strip, West Bank and territories north of Latitude 32.80 N), Laos, Lebanon, Lesotho, Liberia, Libya, Madagascar, Malawi, Mali, Mauritania, Mauritius, Moldova, Mongolia, Montenegro, Montserrat, Mozambique, Myanmar, Namibia, Nepal, Niger, Nigeria, North Korea, Pakistan, Papua New Guinea, People's Republic of China (Aksai Chin region and Trans-Karakoram Tract), Republic of the Congo, Russian Federation (Chechen Republic), Rwanda, Senegal, Seychelles, Sierra Leone, Somalia, Sri Lanka, Sudan, Swaziland, Syria, Tajikistan, Tanzania, Timor-Leste, Togo, Turkey (Provinces of Agri, Bingol, Bitlis, Diyarbakir, Elazig, Hakkari, Mardin, Mus, Siirt, Urfa and Van), Turkmenistan, Uganda, Uzbekistan, Yemen, Zambia and Zimbabwe.

## 4.  INSURED LOCATION

A.  The coverages under this Policy apply to an Insured Location unless otherwise provided.

Insured Location is a location:

1) listed on a Schedule of Locations on file with the Company.

2) covered as a Miscellaneous Unnamed Location.

FM Global

Account No.  1-33966<br>
Policy No.  UB946

   3) covered under the terms and conditions of the Automatic Coverage or Errors and Omissions provisions.

B.  References and Application.  The following term(s) wherever used in this Policy means:

   1) Miscellaneous Unnamed Location:  A Location owned, leased or rented by the Insured, but not specified in the Schedule of Locations.

   2) Location:

      a) as specified in the Schedule of Locations, or

      b) if not so specified in the Schedule of Locations: a Location is a building, yard, dock, wharf, pier or bulkhead (or any group of the foregoing) bounded on all sides by public streets, clear land space or open waterways, each not less than fifty feet wide. Any bridge or tunnel crossing such street, space or waterway will render such separation inoperative for the purpose of this References and Application.

## 5.  CURRENCY

All amounts, including deductibles, premiums and limits of liability, indicated in this Policy shall be in the currency represented by the three letter currency designation shown.  This three letter currency designator is defined in Table A.1-Currency and funds code list, International Standards Organization (ISO) 4217, edition effective at inception of this Policy.

## 6.  OCCURRENCE

The following term wherever used in this Policy means:

A.  Occurrence:

The sum total of all loss or damage of the type insured, including any insured TIME ELEMENT loss, arising out of or caused by one discrete event of physical loss or damage, except as respects the following:

   1) Terrorism: Occurrence shall mean the sum total of all loss or damage of the type insured, including any insured TIME ELEMENT loss, arising out of or caused by all acts of Terrorism during a continuous period of seventy-two (72) hours.

   2) Earth Movement: Occurrence shall mean the sum total of all loss or damage of the type insured, including any insured TIME ELEMENT loss, arising out of or caused by all Earth Movement(s) during a continuous period of seventy-two (72) hours.

## 7.  LIMITS OF LIABILITY

The Company's maximum limit of liability in an Occurrence regardless of the number of Locations or coverages involved, including any insured TIME ELEMENT loss, will not exceed the Policy

 FM Global

limit of liability of USD3,000,000,000 but not to exceed USD600,000,000 for TIME ELEMENT loss, subject to the following provisions:

A.   limits of liability stated below or elsewhere in this Policy are part of, and not in addition to, the Policy limit of liability.

B.   limits of liability in an Occurrence apply to the total loss or damage at all Locations and for all coverages involved, including any insured TIME ELEMENT loss, subject to the following provisions:

1)   when a limit of liability applies in the Aggregate During Any Policy Year, the Company's maximum amount payable will not exceed such limit of liability during any policy year regardless of the number of Locations, coverages or Occurrences involved.

2)   when a limit of liability applies to a Location or other specified property, such limit of liability will be the maximum amount payable for all loss or damage at all Locations arising from physical loss or damage at such Location or to such other specified property.

C.   Should an Occurrence result in liability payable under more than one policy issued to the Named Insured by the Company, or its Representative Companies, the maximum amount payable in the aggregate under all such policies will be the applicable limit(s) of liability indicated in this Policy regardless of the number of Locations, coverages or perils involved.

Limits of Liability

| USD10,000,000: | Miscellaneous Unnamed Locations per Location, but not to exceed a USD2,500,000 limit per Location for Miscellaneous Unnamed Locations outside of the United States of America, its territories and possessions, and the Commonwealth of Puerto Rico |
|---|---|
| USD10,000,000 applies to each of the following: | MISCELLANEOUS PERSONAL PROPERTY in the Aggregate During Any Policy Year; OFF PREMISES STORAGE FOR PROPERTY UNDER CONSTRUCTION per Location; SOFT COSTS |
| USD150,000,000 | TIME ELEMENT for Locations outside of the United States of America, its territories and possessions, and the Commonwealth of Puerto Rico |
| USD100,000,000 applies to each of the following: | ACCOUNTS RECEIVABLE; COINSURANCE DEFICIENCY AND CURRENCY DEVALUATION; DEFERRED PAYMENTS; ERRORS AND OMISSIONS; EXPEDITING COSTS and EXTRA EXPENSE combined; FINE ARTS; NON-ADMITTED INCREASED TAX LIABILITY; VALUABLE PAPERS AND RECORDS |

FM Global

Account No.   1-33966
Policy No.   UB946

USD50,000,000 applies to each of the following:

CONTINGENT TIME ELEMENT EXTENDED but not to exceed a USD25,000,000 limit per Contingent Time Element Location; DATA, PROGRAMS OR SOFTWARE and COMPUTER SYSTEMS–NON PHYSICAL DAMAGE combined but not to exceed a USD10,000,000 limit as respects COMPUTER-SYSTEMS NON PHYSICAL DAMAGE or malicious introduction of a machine code or instruction; NEIGHBOUR'S RECOURSE AND TENANT'S LIABILITY; SERVICE INTERRUPTION PROPERTY DAMAGE and SERVICE INTERRUPTION TIME ELEMENT combined; TRANSPORTATION but not to exceed a USD10,000,000 limit for TIME ELEMENT

USD150,000,000:

EARTH MOVEMENT in the Aggregate During Any Policy Year but not to exceed the following limits in the Aggregate During Any Policy Year:

a)   USD100,000,000 for property located in Moderate Hazard Zones for Earth Movement

b)   USD25,000,000 for property located in the New Madrid Seismic Zone as described in Appendix A

c)   USD25,000,000 for property located in the Pacific Northwest Seismic Zone as described in Appendix B

d)   USD40,000, 000 for property located in California

e)   USD40,000,000 for property located in High Hazard Zones for Earth Movement, except a USD127,000,000 limit for property located at Calle Bella Vista, Colina de los Caobos, Caracas, Miranda 1050, Venezuela

In the event an Occurrence involves any property located in a High Hazard Zone for Earth Movement and for property located at Calle Bella Vista, Colina de los Caobos, Caracas, Miranda 1050, Venezuela, this Company's maximum limit of liability as respects EARTH MOVEMENT shall not exceed a USD127,000,000 limit in an Occurrence regardless of the number of locations or coverages involved.

USD250,000,000:

FLOOD in the Aggregate During Any Policy Year but not to exceed a USD100,000,000 limit in the Aggregate During Any Policy Year for property located at 3800 Via Oro Avenue, Long Beach, CA



Account No.  1-33966
Policy No.  UB946

USD100,000:  LAND AND WATER CONTAMINANT CLEANUP, REMOVAL AND DISPOSAL in the Aggregate During Any Policy Year

USD25,000 plus 50% of the amount recoverable under this coverage in excess of USD25,000:  PROFESSIONAL FEES

USD5,000,000:  TERRORISM in the Aggregate During Any Policy Year but not to exceed the following limit(s) in the Aggregate During Any Policy Year:

a)  USD1,000,000 for Miscellaneous Unnamed Locations, MISCELLANEOUS PERSONAL PROPERTY, OFF PREMISES STORAGE FOR PROPERTY UNDER CONSTRUCTION and TEMPORARY REMOVAL OF PROPERTY combined

b)  USD1,000,000 for Flood when caused by or resulting from Terrorism

These limits shall not include the Actual Cash Value portion of fire damage caused by Terrorism

These limits do not apply to the SUPPLEMENTAL UNITED STATES CERTIFIED ACT OF TERRORISM ENDORSEMENT

Time Limits

In addition to the time limits shown elsewhere in this Policy, the following apply:

90 day period but not to exceed a USD100,000,000 limit, per Location:  AUTOMATIC COVERAGE

60 day period:  EXTENDED PERIOD OF LIABILITY

90 day period:  Ordinary Payroll

6 month period:  GROSS PROFIT but not exceed a 90 day period for Ordinary Payroll

30 day period but not to exceed a USD25,000,000 limit:  INGRESS/EGRESS

180 day period but not to exceed the lesser of a USD5,000,000 limit or 200% of the Normal Cost:  LOGISTICS EXTRA COST



Account No. 1-33966
Policy No. UB946

12 month period:
TIME ELEMENT loss as respects TERRORISM

This Time Limit for TERRORISM coverage shall not be considered additive to any other Time Limits or to any PERIOD OF LIABILITY applying to any coverage provided in the TIME ELEMENT section, and shall be subject to the limits of liability for TERRORISM.

## 8. PREMIUM

This Policy is issued in consideration of an initial premium. If the term of this Policy is longer than one year, for each subsequent year of coverage, premium will be due at the anniversary and will be subject to rules and rates in effect at that time.

## 9. PREMIUM PAYABLE

Marsh Risk & Insurance Services pays the premium under this Policy, and any return of the paid premium accruing under this Policy will be paid to the account of Marsh Risk & Insurance Services.

## 10. VALUE REPORTING PROVISIONS

The Insured will provide the Company 100% values by location.

These statement(s) of values are due on the date(s) shown below.

| Values as Of | Due Date | Type of Values |
|---|---|---|
| 15 December | 15 January | Property values in accordance with the VALUATION clause of the LOSS ADJUSTMENT AND SETTLEMENT section. |
| 15 December | 15 January | In addition, Stock and Supplies on the average and maximum values based on the previous 12 month period. |
| 15 December | 15 January | Time Element values anticipated for the 12 months following the "Value as Of" date, and the actual Time Element values for the previous 12 month period. |

## 11. WAITING PERIOD

For the purposes of applying COMPUTER SYSTEMS-NON PHYSICAL DAMAGE Coverage, the Waiting Period is 48 hours.

For the purposes of applying DATA, PROGRAMS OR SOFTWARE Coverage when the loss or damage is caused by the malicious introduction of a machine code or instruction, the Waiting Period is 48 hours.

For the purposes of applying LOGISTICS EXTRA COST Coverage, the Waiting Period is 48 hours except 168 hours applies for Earth Movement and/or Flood and/or Wind.

 **FM Global**

Account No.  1-33966
Policy No.  UB946

For the purposes of applying SERVICE INTERRUPTION Coverage, the Waiting Period is 12 hours.

## 12.  DEDUCTIBLES

In each case of loss covered by this Policy, the Company will be liable only if the Insured sustains a loss, including any insured TIME ELEMENT loss, in a single Occurrence greater than the applicable deductible specified below, and only for its share of that greater amount.

A.  When this Policy insures more than one Location, the deductible will apply against the total loss covered by this Policy in an Occurrence except that a deductible that applies on a per Location basis, if specified, will apply separately to each Location where the physical damage occurred regardless of the number of Locations involved in the Occurrence.

B.  Unless stated otherwise, if two or more deductibles apply to an Occurrence, the total to be deducted will not exceed the largest deductible applicable.  If two or more deductibles apply on a per Location basis in an Occurrence the largest deductible applying to each Location will be applied separately to each such Location.

C.  Notwithstanding item B above, in the event an Occurrence involves loss or damage caused by or resulting from both Flood and Wind and there is a specific Flood deductible and a specific Wind deductible applying, such Flood and Wind loss or damage shall be adjusted separately from each other with each being subject to its respective deductible.

Policy Deductible(s)

Property Damage:  USD300,000;

Time Element:  USD2,500,000,

per Occurrence, except as follows.

Exceptions to Policy Deductible(s)

A.  Property located outside of the United States of America, its territories and possessions, and the Commonwealth of Puerto Rico

Property Damage:  USD50,000;

Time Element:  USD2,500,000,

per Occurrence.

B.  Home Services Locations as described in Appendix D

USD25,000 combined all coverages, per Occurrence.

 FM Global

Account No. 1-33966
Policy No. UB946

C.   **Computer Systems-Non Physical Damage**

2 Day Equivalent deductible subject to a minimum deductible of USD2,500,000, per Occurrence.

D.   **Contingent Time Element Location**

USD2,500,000 per Occurrence. However when the loss results from Wind and/or Flood such loss shall be subject to its respective deductible(s) and shall apply at each Contingent Time Element Location where the physical damage occurs as follows:

1)   **Flood**

USD2,500,000 Time Element, per Location.

2)   **Wind**

a)   As respects Locations in Tier I Wind Areas as described in Appendix C:

i)   Time Element – 5% of the full Time Element values that would have been earned in the 12 month period following the Occurrence by use of the facilities at the Location where the physical damage occurred and that proportion of the full Time Element values at all other Locations where TIME ELEMENT loss ensues that was directly affected by use of such facilities and that would have been earned in the 12 month period following the Occurrence, per Location.

ii)   The above Wind deductible is subject to a minimum deductible of USD2,500,000 for Time Element, per Location.

b)   As respects Locations in Tier II Wind Areas as described in Appendix C:

i)   Time Element – 3% of the full Time Element values that would have been earned in the 12 month period following the Occurrence by use of the facilities at the Location where the physical damage occurred and that proportion of the full Time Element values at all other Locations where TIME ELEMENT loss ensues that was directly affected by use of such facilities and that would have been earned in the 12 month period following the Occurrence, per Location.

ii)   The above Wind deductible is subject to a minimum deductible of USD2,500,000 for Time Element, per Location.

E.   **Data, Programs or Software**

2 Day Equivalent deductible as respects loss or damage caused by the malicious introduction of a machine code or instruction, subject to a minimum deductible of USD2,500,000, per Occurrence.


FM Global

Account No.   1-33966
Policy No.   UB946

F.   <u>Earthquake</u>

1)   As respects Locations in California, in High Hazard Zones for Earth Movement and in the New Madrid Seismic Zone as described in Appendix A:

   a)   Property Damage – The greater of USD300,000, except USD100,000 for Locations outside of the United States of America, its territories and possessions, and the Commonwealth of Puerto Rico, or 5% of the value, per the VALUATION clause of the LOSS ADJUSTMENT AND SETTLEMENT section, of the property insured at the Location where the physical damage occurred, per Location.

   b)   Time Element – 5% of the full Time Element values that would have been earned in the 12 month period following the Occurrence by use of the facilities at the Location where the physical damage occurred and that proportion of the full Time Element values at all other Locations where TIME ELEMENT loss ensues that was directly affected by use of such facilities and that would have been earned in the 12 month period following the Occurrence, per Location, subject to a minimum of USD2,500,000, per Occurrence.

2)   As respects Locations in the Pacific Northwest Seismic Zone as described in Appendix B:

   a)   Property Damage – The greater of USD300,000, except USD100,000 for Locations outside of the United States of America, its territories and possessions, and the Commonwealth of Puerto Rico, or 2% of the value, per the VALUATION clause of the LOSS ADJUSTMENT AND SETTLEMENT section, of the property insured at the Location where the physical damage occurred, per Location.

   b)   Time Element – 2% of the full Time Element values that would have been earned in the 12 month period following the Occurrence by use of the facilities at the Location where the physical damage occurred and that proportion of the full Time Element values at all other Locations where TIME ELEMENT loss ensues that was directly affected by use of such facilities and that would have been earned in the 12 month period following the Occurrence, per Location, subject to a minimum of USD2,500,000, per Occurrence.

G.   <u>Flood</u>

   Property Damage:   USD300,000;

   Time Element:       USD2,500,000,

   per Location, except for the following:

   1)   Property Damage:       USD500,000;

       Time Element:           USD2,500,000,

       per Location, for property located at 3800 Via Oro Avenue, Long Beach, CA.



Account No.  1-33966
Policy No.  UB946

    2)  Property Damage:     USD50,000;

         Time Element:       USD2,500,000,

         per Location for Locations outside of the United States of America, its territories and possessions, and the Commonwealth of Puerto Rico.

**H.**   <u>Logistics Extra Cost</u>

     USD300,000 combined all coverages, per Occurrence.

**I.**   <u>Terrorism coverage and the Actual Cash Value portion of fire damage caused by Terrorism</u>

     As respects Locations outside of the United States of America, its territories and possessions and the Commonwealth of Puerto Rico:

     1)  The greater of the Policy Deductible, or if applicable the Location deductible, per Location.

**J.**   <u>Transportation</u>

     USD10,000 combined all coverages, per Occurrence.

**K.**   <u>Wind</u>

     1)  As respects Locations in Tier I Wind Areas as described in Appendix C:

        a)  Property Damage - The greater of USD300,000, except USD100,000 for Locations outside of the United States of America, its territories and possessions, and the Commonwealth of Puerto Rico, or 5% of the value, per the VALUATION clause of the LOSS ADJUSTMENT AND SETTLEMENT section, of the property insured at the Location where the physical damage occurred, per Location.

        b)  Time Element – 5% of the full Time Element values that would have been earned in the 12 month period following the Occurrence by use of the facilities at the Location where the physical damage occurred and that proportion of the full Time Element values at all other Locations where TIME ELEMENT loss ensues that was directly affected by use of such facilities and that would have been earned in the 12 month period following the Occurrence, per Location, subject to a minimum of USD2,500,000, per Occurrence.

     2)  As respects Locations in Tier II Wind Areas as described in Appendix C:

        a)  Property Damage - The greater of USD300,000, except USD100,000 for Locations outside of the United States of America, its territories and possessions, and the Commonwealth of Puerto Rico, or 3% of the value, per the VALUATION clause of the LOSS ADJUSTMENT AND SETTLEMENT section, of the property insured at the Location where the physical damage occurred, per Location.



Account No.   1-33966
Policy No.   UB946

b) Time Element – 3% of the full Time Element values that would have been earned in the 12 month period following the Occurrence by use of the facilities at the Location where the physical damage occurred and that proportion of the full Time Element values at all other Locations where TIME ELEMENT loss ensues that was directly affected by use of such facilities and that would have been earned in the 12 month period following the Occurrence, per Location, subject to a minimum of USD2,500,000, per Occurrence.

References and Application.  The following term(s) wherever used in this Policy means:

1)   Day Equivalent:

An amount equivalent to the number of days stated times the 100% daily Time Element value that would have been earned following the Occurrence at the Location where the physical damage occurred and that proportion of the 100% daily Time Element value at all other Locations where TIME ELEMENT loss ensues that was directly affected by use of such Location.

2)   Wind:

Direct action of wind including substance driven by wind.  Wind does not mean or include anything defined as Flood in this Policy.



Account No.  1-33966
Policy No.  UB946

## PROPERTY DAMAGE - SECTION B

### 1.  PROPERTY INSURED

This Policy insures the following property, unless otherwise excluded elsewhere in this Policy, located at an Insured Location or within 1,000 feet thereof, to the extent of the interest of the Insured in such property.

A.  Real Property, including new buildings and additions under construction at an Insured Location, in which the Insured has an insurable interest.

B.  Personal Property:

1)  owned by the Insured.

2)  consisting of the Insured's interest as a tenant in improvements and betterments. In the event of physical loss or damage, the Company agrees to accept and consider the Insured as sole and unconditional owner of improvements and betterments, notwithstanding any contract or lease to the contrary.

3)  of officers and employees of the Insured.

4)  of others in the Insured's custody to the extent the Insured is under obligation to keep insured for physical loss or damage insured by this Policy.

5)  of others in the Insured's custody to the extent of the Insured's legal liability for physical loss or damage to Personal Property. The Company will defend that portion of any suit against the Insured that alleges such liability and seeks damages for such insured physical loss or damage. The Company may, without prejudice, investigate, negotiate and settle any claim or suit as the Company deems expedient.

This Policy also insures the interest of contractors and subcontractors in insured property during construction at an Insured Location or within 1,000 feet thereof, to the extent of the Insured's legal liability for insured physical loss or damage to such property. Such interest of contractors and subcontractors is limited to the property for which they have been hired to perform work and such interest will not extend to any TIME ELEMENT coverage provided under this Policy.

### 2.  PROPERTY EXCLUDED

This Policy excludes:

A.  currency, money, precious metal in bullion form, notes, or securities.

B.  land, water or any other substance in or on land; except this exclusion does not apply to:

1)  land improvements consisting of landscape gardening, roadways and pavements, but not including any fill or land beneath such property.



Account No.  1-33966
Policy No.  UB946

2)   water that is contained within any enclosed tank, piping system or any other processing equipment.

C.    animals, standing timber, growing crops.

D.    watercraft or aircraft, except when unfueled and manufactured by the Insured.

E.    vehicles of officers and employees of the Insured or vehicles otherwise insured for physical loss or damage.

F.    underground mines or mine shafts or any property within such mine or shaft.

G.    dams and dikes.

H.    property in transit, except as otherwise provided by this Policy.

I.    property sold by the Insured under conditional sale, trust agreement, installment plan or other deferred payment plan after delivery to customers, except as provided by the DEFERRED PAYMENTS coverage of this Policy.

J.    electronic data, programs and software, except when they are stock in process, finished goods manufactured by the Insured, raw materials, supplies or other merchandise not manufactured by the Insured or as otherwise provided by the DATA, PROGRAMS OR SOFTWARE coverage of this Policy.

K.    property at customer locations.

3.    **ADDITIONAL COVERAGES**

This Policy includes the following Additional Coverages for physical loss or damage insured by this Policy.

These Additional Coverages:

1)    are subject to the applicable limit of liability;

2)    will not increase the Policy limit of liability; and

3)    are subject to the Policy provisions, including applicable exclusions and deductibles,

all as shown in this section and elsewhere in this Policy.

A.    **ACCOUNTS RECEIVABLE**

This Policy covers any shortage in the collection of accounts receivable, resulting from insured physical loss or damage to accounts receivable records, including accounts receivable records stored as electronic data, while anywhere within this Policy's TERRITORY, including while in transit.  The Company will be liable for the interest charges on any loan to offset impaired collections pending repayment of such sum



Account No.  1-33966
Policy No.  UB946

uncollectible as the result of such loss or damage.  Unearned interest and service charges on deferred payment accounts and normal credit losses on bad debts will be deducted in determining the recovery.

1)  In the event of loss to accounts receivable records, the Insured will use all reasonable efforts, including legal action, if necessary, to effect collection of outstanding accounts receivable.

2)  The Insured agrees to use any suitable property or service:

    a)  owned or controlled by the Insured; or

    b)  obtainable from other sources,

    in reducing the loss under this Additional Coverage.

3)  This Policy covers any other necessary and reasonable costs incurred to reduce the loss, to the extent the losses are reduced.

4)  If it is possible to reconstruct accounts receivable records so that no shortage is sustained, the Company will be liable only for the reasonable and necessary cost incurred for material and time required to re-establish or reconstruct such records, and not for any costs covered by any other insurance.

5)  ACCOUNTS RECEIVABLE Exclusions:  The following exclusions are in addition to the EXCLUSIONS clause of this section:

This Additional Coverage does not insure against shortage resulting from:

    a)  bookkeeping, accounting or billing errors or omissions; or

    b)  (i)  alteration, falsification, manipulation; or

        (ii) concealment, destruction or disposal,

    of accounts receivable records committed to conceal the wrongful giving, taking, obtaining or withholding of money, securities or other property; but only to the extent of such wrongful giving, taking, obtaining or withholding.

6)  The settlement of loss will be made within 90 days from the date of physical loss or damage.  All amounts recovered by the Insured on outstanding accounts receivable on the date of loss will belong and be paid to the Company up to the amount of loss paid by the Company.  All recoveries exceeding the amount paid will belong to the Insured.

## B.  AUTOMATIC COVERAGE

This Policy covers insured property at any Location purchased, leased or rented by the Insured after the inception date of this Policy.  This coverage applies from the date of purchase, lease or rental.

FM Global

Account No.  1-33966
Policy No.  UB946

This Additional Coverage does not apply to property insured in whole or in part by any other insurance policy.

This coverage will apply until whichever of the following occurs first:

1)  The Location is bound by the Company.

2)  Agreement is reached that the Location will not be insured under this Policy.

3)  The Time Limit shown in the LIMITS OF LIABILITY clause in the DECLARATIONS section has been reached.  The Time Limit begins on the date of purchase, lease or rental.

## C.  BRANDS AND LABELS

If branded or labeled property insured by this Policy is physically damaged and the Company elects to take all or any part of that property, the Insured may at the Company's expense:

1)  stamp "salvage" on the property or its containers; or

2)  remove or obliterate the brands or labels,

if doing so will not damage the property.  In either event, the Insured must relabel such property or its containers to be in compliance with any applicable law.

## D.  COINSURANCE DEFICIENCY AND CURRENCY DEVALUATION

This Policy covers the deficiency in the amount of loss payable under the Insured's locally written admitted primary and/or underlying policy(ies), if any, and its renewals, issued by the Company or its Representative Company(ies), solely as the result of:

1)  the application of a coinsurance (or average) clause; or

2)  official government devaluation of the currency in which the local policy is written;

for physical loss or damage of the type insured under such local policy(ies) to property of the type insured under this Policy and not otherwise excluded by this Policy.

The Insured agrees to adjust the Policy values as a result of such devaluation within 30 days after the date of the currency's devaluation.

There is no liability under the terms of this coverage if the Insured is unable to recover any loss under such local policy(ies), and its renewals, if such inability is the result of intentional under insurance by the Insured.



### E.  CONSEQUENTIAL REDUCTION IN VALUE

This Policy covers the reduction in value of insured merchandise that is a part of pairs, sets, or components, directly resulting from physical loss or damage insured by this Policy to other insured parts of pairs, sets or components of such merchandise. If settlement is based on a constructive total loss, the Insured will surrender the undamaged parts of such merchandise to the Company.

### F.  CONTROL OF DAMAGED PROPERTY

This Policy gives control of physically damaged property consisting of finished goods manufactured by the Insured as follows:

1)  The Insured will have full rights to the possession and control of damaged property in the event of insured physical damage to such property provided proper testing is done to show which property is physically damaged.

2)  The Insured using reasonable judgment will decide if the physically damaged property can be reprocessed or sold.

3)  Property so judged by the Insured to be unfit for reprocessing or selling will not be sold or disposed of except by the Insured, or with the Insured's consent.

4)  Any salvage proceeds received will go to the:

   a)  Company at the time of loss settlement; or

   b)  Insured if received prior to loss settlement and such proceeds will reduce the amount of loss payable accordingly.

### G.  DATA, PROGRAMS OR SOFTWARE

This Policy covers insured Physical Loss Or Damage To Electronic Data, Programs Or Software, including physical loss or damage caused by the malicious introduction of a machine code or instruction, while anywhere within this Policy's TERRITORY, including while in transit.

1)  With respect to Physical Loss Or Damage caused by the malicious introduction of machine code or instruction, this Additional Coverage will apply when the Period of Liability is in excess of the time shown as Waiting Period in the WAITING PERIOD clause of the DECLARATIONS section.

2)  This Additional Coverage also covers the cost of the following reasonable and necessary actions taken by the Insured:

   a)  Actions to temporarily protect and preserve insured electronic data, programs or software;





Account No.   1-33966
Policy No.   UB946

b) Actions taken for the temporary repair of insured Physical Loss Or Damage To Electronic Data, Programs Or Software and to expedite the permanent repair or replacement of such damaged property,

provided such actions are taken due to actual insured Physical Loss Or Damage To Electronic Data, Programs Or Software.

3) This Additional Coverage also covers the reasonable and necessary costs incurred by the Insured to temporarily protect or preserve insured electronic data, programs or software against immediately impending insured Physical Loss Or Damage To Electronic Data, Programs Or Software.  In the event that the physical loss or damage does not occur, the costs covered under this item 3 will be subject to the deductible that would have applied if the physical loss or damage had occurred.

4) Costs recoverable under this Additional Coverage are excluded from coverage elsewhere in this Policy.

5) This Additional Coverage excludes loss or damage to data, programs or software when they are stock in process, finished goods manufactured by the Insured, raw materials, supplies or other merchandise not manufactured by the Insured.

6) DATA, PROGRAMS OR SOFTWARE Exclusions:  The exclusions in the EXCLUSIONS clause of this section do not apply to DATA, PROGRAMS OR SOFTWARE except for A1, A2, A6, B1, B2, B3a, B4 and B5.  In addition as respects DATA, PROGRAMS OR SOFTWARE the following exclusions apply:

This Policy does not insure:

a) errors or omissions in processing, or copying; all unless physical damage not excluded by this Policy results, in which event, only that resulting damage is insured.

b) loss or damage to data, programs or software from errors or omissions in programming or machine instructions; all unless physical damage not excluded by this Policy results, in which event, only that resulting damage is insured.

c) deterioration, inherent vice, vermin or wear and tear; all unless physical damage not excluded by this Policy results, in which event, only that resulting damage is insured.

7) References and Application.  The following term(s) means:

a) Physical Loss Or Damage To Electronic Data, Programs Or Software:

The destruction, distortion or corruption of electronic data, programs or software.



Account No.  1-33966
Policy No.   UB946

### H.   DEBRIS REMOVAL

This Policy covers the reasonable and necessary costs incurred to remove debris from an Insured Location that remains as a direct result of physical loss or damage insured by this Policy.

This Additional Coverage does not cover the costs of removal of:

1)   contaminated uninsured property; or

2)   the Contaminant in or on uninsured property,

whether or not the Contamination results from insured physical loss or damage.  This Additional Coverage shall cover the costs of removal of contaminated insured property or the Contaminant in or on insured property only if the Contamination, due to the actual not suspected presence of Contaminant(s), of the debris resulted directly from other physical damage not excluded by the Policy.

### I.   DECONTAMINATION COSTS

If insured property is contaminated as a direct result of physical damage insured by this Policy and there is in force at the time of the loss any law or ordinance regulating Contamination due to the actual not suspected presence of Contaminant(s), then this Policy covers, as a direct result of enforcement of such law or ordinance, the increased cost of decontamination and/or removal of such contaminated insured property in a manner to satisfy such law or ordinance.  This Additional Coverage applies only to that part of insured property so contaminated due to the actual not suspected presence of Contaminant(s) as a direct result of insured physical damage.

The Company is not liable for the costs required for removing contaminated uninsured property nor the Contaminant therein or thereon, whether or not the Contamination results from an insured event.

### J.   DEFERRED PAYMENTS

This Policy covers insured physical loss or damage to Personal Property of the type insured sold by the Insured under a conditional sale or trust agreement or any installment or deferred payment plan and after such property has been delivered to the buyer.  Coverage is limited to the unpaid balance for such property.

In the event of loss to property sold under deferred payment plans, the Insured will use all reasonable efforts, including legal action, if necessary, to effect collection of outstanding amounts due or to regain possession of the property.

There is no liability under this Policy for loss:

1)   pertaining to products recalled including, but not limited to, the costs to recall, test or to advertise such recall by the Insured.



2) from theft or conversion by the buyer of the property after the buyer has taken possession of such property.

3) to the extent the buyer continues payments.

4) not within the TERRITORY of this Policy.

## K.   DEMOLITION AND INCREASED COST OF CONSTRUCTION

1) This Policy covers the reasonable and necessary costs incurred, described in item 3 below, to satisfy the minimum requirements of the enforcement of any law or ordinance regulating the demolition, construction, repair, replacement or use of buildings or structures at an Insured Location, provided:

    a) such law or ordinance is in force on the date of insured physical loss or damage; and

    b) its enforcement is a direct result of such insured physical loss or damage.

2) This Additional Coverage does not cover loss due to any law or ordinance with which the Insured was required to comply had the loss not occurred.

3) This Additional Coverage, as respects the property insured in item 1 above, covers:

    a) the cost to repair or rebuild the physically damaged portion of such property with materials and in a manner to satisfy such law or ordinance; and

    b) the cost:

        (i)  to demolish the physically undamaged portion of such property insured; and

        (ii) to rebuild it with materials and in a manner to satisfy such law or ordinance,

to the extent that such costs result when the demolition of the physically damaged insured property is required to satisfy such law or ordinance.

4) This Additional Coverage excludes any costs incurred as a direct or indirect result of enforcement of any laws or ordinances regulating any form of Contamination.

5) The Company's maximum liability for this Additional Coverage at each Insured Location in any Occurrence will not exceed the actual cost incurred in demolishing the physically undamaged portion of the property insured in item 1 above plus the lesser of:

    a) the reasonable and necessary actual cost incurred, excluding the cost of land, in rebuilding on another site; or

    b) the cost of rebuilding on the same site.



## L.   DIFFERENCE IN CONDITIONS

As respects Insured Locations which are insured under locally admitted policies (herein referred to as Underlyer policy) issued by the Company or its Representative Company(ies), or another company, this Policy is designated the Master Global Insuring Policy and coverage under this Policy for such Insured Locations shall apply only after the coverage provided under the Underlyer policy has been exhausted.  The Underlyer policy will be the first policy to respond in the event of loss or damage and upon exhaustion of coverage under the Underlyer policy, this Policy covers:

1) the difference in definitions, perils, conditions or coverages between the Underlyer policy and this Policy; and

2) the difference between the limit(s) of liability stated in the Underlyer policy and this Policy,

provided that

a) the coverage is provided under this Policy;

b) coverage provided under the Underlyer policy has been exhausted;

c) the limit(s) of liability has been exhausted under the Underlyer policy, and

d) the deductible(s) applicable to such claim for loss or damage in the Underlyer policy has been applied.

Any coverage provided by the Underlyer policy that is not provided in this Policy does not extend to this Policy.  As respects Representative Company(ies) only, any insolvency or bankruptcy of the Underlyer insurance company shall be considered exhaustion of coverage under the Underlyer policy.

As respects Underlyer policy issued by companies other than this Company or its Representative Company(ies), the following applies:

1) This Additional Coverage will not cover any financial loss due to insolvency or bankruptcy of the Underlyer insurance company.

2) It is agreed that during the term of this Policy the Insured will not cancel or restrict without the knowledge and consent of the Company, any insurance in force at the time coverage hereunder attaches, which covers the same risk(s) as covered hereunder.

3) If the Underlyer policy is canceled, restricted or allowed to expire and not renewed without the knowledge and consent of the Company, this coverage will continue to apply as though such Underlyer policy has been maintained in full force and effect.

References and Application.  The following term(s) wherever used in this Policy means:

Representative Company(ies):

FM Insurance Company Limited; Affiliated FM Insurance Company; Appalachian Insurance Company or any other company issuing an Underlyer policy at the direction of the Company



Account No. 1-33966
Policy No. UB946

**M. EARTH MOVEMENT**

This Policy covers physical loss or damage caused by or resulting from Earth Movement.

This Additional Coverage does not apply to loss or damage caused by or resulting from Flood.

1) References and Application. The following term(s) wherever used in this Policy means:

a) Earth Movement:

Any natural or man-made earth movement including, but not limited to earthquake or landslide, regardless of any other cause or event contributing concurrently or in any other sequence of loss. However, physical loss or damage by fire, explosion, or sprinkler leakage resulting from Earth Movement will not be considered to be loss by Earth Movement within the terms and conditions of this Policy.

b) High Hazard Zones for Earth Movement:

Property located in Hawaii; Alaska; the Commonwealth of Puerto Rico; the Republic of Mexico; Argentina (except Ciudad de Buenos Aires); Bhutan; Bolivia; Bosnia and Herzegovina; Brazil (only the State of Acre); Bulgaria; Caribbean Islands of Aruba, Cayman Islands, Dominican Republic, Jamaica; Trinidad and Tobago; Chile; Colombia; Costa Rica; Croatia; Curacao; Cyprus; Ecuador; El Salvador; Greece; Guam; Guatemala; Honduras; Iceland; India; Indonesia; Israel; Italy; Japan; Jordan; Monaco; New Zealand; Nicaragua; Northern Pacific Islands of Federated States of Micronesia, Palau, Northern Marianas, Marshall Islands and Kiribati; Panama; People's Republic of China; Peru; Philippines; Romania; Spain (only the Province of Granada); Southern Pacific Islands of American Samoa, Loyalty Islands, French Polynesia, New Caledonia, Solomon Islands, Samoa, Tonga, Tuvalu and Vanuatu; Taiwan; Turkey; and Venezuela.

c) Moderate Hazard Zones for Earth Movement:

Property located in Arizona, Arkansas, Idaho, Illinois, Indiana, Kentucky, Mississippi, Missouri, Montana, Nevada, New York, Oregon, South Carolina, Tennessee, Utah, Washington and Wyoming.

**N. ERRORS AND OMISSIONS**

If physical loss or damage is not payable under this Policy solely due to an error or unintentional omission:

1) in the description of where insured property is physically located;

2) to include any Location:

a) owned, leased or rented by the Insured on the effective date of this Policy; or



b)  purchased, leased or rented by the Insured during the term of this Policy; or

3)  that results in cancellation of the property insured under this Policy;

this Policy covers such physical loss or damage, to the extent it would have provided coverage had such error or unintentional omission not been made.

It is a condition of this Additional Coverage that any error or unintentional omission be reported by the Insured to the Company when discovered and corrected.

## O.   EXPEDITING COSTS

This Policy covers the reasonable and necessary costs incurred to pay for the temporary repair of insured damage to insured property and to expedite the permanent repair or replacement of such damaged property.

This Additional Coverage does not cover costs:

1)  recoverable elsewhere in this Policy; or

2)  of permanent repair or replacement of damaged property.

## P.   FINE ARTS

This Policy covers insured physical loss or damage to Fine Arts articles while anywhere within this Policy's TERRITORY, including while in transit.

1)  This Additional Coverage excludes loss or damage if the Fine Arts cannot be replaced with other of like kind and quality, unless it is specifically declared to the Company.

2)  FINE ARTS Exclusion: The exclusions in the EXCLUSIONS clause of this section do not apply to FINE ARTS coverage except for A1, A2, A6, A7, B1, B2, B3a, B4 and B5. In addition, as respects FINE ARTS, the following exclusions apply:

This Policy does not insure against:

a)  deterioration, wear and tear or inherent vice.

b)  fungus, mold or mildew; unless directly resulting from other physical damage not excluded by this Policy.

c)  loss or damage from any repairing, restoration or retouching process.

3)  References and Application.  The following term(s) wherever used in this Policy means:

a)  Fine Arts:



Account No.  1-33966
Policy No.  UB946

Paintings; etchings; pictures; tapestries; rare or art glass; art glass windows; valuable rugs; statuary; sculptures; antique furniture; antique jewelry; bric-a-brac; porcelains; and similar property of rarity, historical value, or artistic merit excluding automobiles, coins, stamps, furs, jewelry, precious stones, precious metals, watercraft, aircraft, money, securities.

Q.   **FLOOD**

This Policy covers physical loss or damage caused by or resulting from Flood.

1)   References and Application.  The following term(s) wherever used in this Policy means:

   a)   Flood:

Flood; surface waters; rising waters; storm surge, sea surge, wave wash; waves; tsunami; tide or tidal water; the release of water, the rising, overflowing or breaking of boundaries of natural or man-made bodies of water; or the spray therefrom; all whether driven by wind or not; or sewer back-up resulting from any of the foregoing; regardless of any other cause or event, whether natural or man-made, contributing concurrently or in any other sequence of loss.  Physical loss or damage from Flood associated with a storm or weather disturbance whether or not identified by name by the U.S. National Hurricane Center or any other meteorological authority, such as the Tokyo Typhoon Center or the Central Pacific Hurricane Center, is considered to be Flood within the terms of this Policy.  However, physical loss or damage by fire, explosion or sprinkler leakage resulting from Flood is not considered to be loss by Flood within the terms and conditions of this Policy.

R.   **LAND AND WATER CONTAMINANT CLEANUP, REMOVAL AND DISPOSAL**

This Policy covers the reasonable and necessary cost for the cleanup, removal and disposal of the actual not suspected presence of Contaminant(s) from uninsured property consisting of land, water or any other substance in or on land at the Insured Location if the release, discharge or dispersal of such Contaminant(s) is a direct result of insured physical loss or damage to insured property.

This Policy does not cover the cost to cleanup, remove and dispose of Contamination from such property:

1)   at any location insured for Personal Property only.

2)   at any property insured under AUTOMATIC COVERAGE, ERRORS AND OMISSIONS or Miscellaneous Unnamed Location coverage provided by this Policy.

3)   when the Insured fails to give written notice of loss to the Company within 180 days after inception of the loss.



Account No. 1-33966
Policy No. UB946

**S. MISCELLANEOUS PERSONAL PROPERTY**

This Policy covers insured physical loss or damage to Personal Property of the type insured:

1) owned by the Insured or

2) property of others in the custody of the Insured, to the extent the Insured is under obligation to keep insured for physical loss or damage, not otherwise excluded from this Policy,

at any Location within the TERRITORY of this Policy.

This Additional Coverage excludes property insured under any other coverage in this Policy.

MISCELLANEOUS PERSONAL PROPERTY Exclusion: The following additional exclusion applies:

This Policy excludes loss or damage directly or indirectly caused by or resulting from the following regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss:

a) Earth Movement for property located in California, in High Hazard Zones for Earth Movement, in the New Madrid Seismic Zone as described in Appendix A and in the Pacific Northwest Seismic Zone as described in Appendix B.

**T. NEIGHBOUR'S RECOURSE AND TENANT'S LIABILITY**

Coverage under this provision is limited to Insured Locations within the following countries: France, the French Territories, Spain, Italy, Belgium, Greece, Portugal and Luxembourg.

This Policy covers the Insured's liability:

1) as a tenant or occupant under the articles of any civil or commercial code toward the owner for direct physical damage of the type insured to Real or Personal Property of the owner of the premises.

2) under articles of any civil or commercial code toward neighbours, co-tenants and other third parties for direct physical damage of the type insured to the Real or Personal Property of neighbours, co-tenants and other third parties.

3) as landlord under articles of any civil or commercial code for direct physical damage of the type insured to the Personal Property of tenants as a result of construction defects or lack of maintenance.

4) as tenant or occupant under the articles of any civil or commercial code for total or partial loss of use by the owner of the premises resulting from direct physical damage of the type insured.



Account No.  1-33966
Policy No.   UB946

### U.   NON-ADMITTED INCREASED TAX LIABILITY

This Policy covers the Non-Admitted Increased Tax Liability as described herein of the Insured for a loss covered under this Policy.

1) If a loss recovery under this Policy cannot be paid in the country where the loss occurred because of local law or otherwise, such loss is to be paid in the currency of this Policy in a country designated by the Insured where such payment is legally permissible. In the event of such a payment, the Company will pay in addition to the loss, the net amount required to offset local taxes on income with due consideration to any tax relief/credit that accrues because of such payment. The amount of such additional payment is to be calculated as follows:

Additional Payment = [a (1 - c) / (1 - b)] - a

Where:
a = Loss otherwise payable under this Policy except for operation of this coverage, after due consideration for any applicable deductible(s).
b = The net effective rate of the sum of: any taxation (a positive number) plus any tax relief/credit (a negative number) that accrues in the country where loss payments are received.
c = The net effective rate of the sum of: any taxation (a positive number) plus any tax relief/credit (a negative number) that accrues in the country where the loss occurred.

2) The formula herein will not apply if the calculation of additional payment results in an amount less than zero. The rates referred to herein will be the respective corporate income tax rates in effect on the date of the loss.

3) The Insured will cooperate with the Company in making every reasonable effort to pay the loss or portion thereof locally in the country in which the loss occurred.

4) Any payment under this coverage will be made only after completion and acceptance by the Company of audited tax returns for the period in question for both the country where a payment hereunder is made and the country where the loss occurred. The actual payment under this coverage will be adjusted and reduced by all appropriate tax credits and/or tax relief entitled and/or received by the Insured and/or the local entity where the loss occurred provided that an income tax liability is incurred.

### V.   OFF PREMISES STORAGE FOR PROPERTY UNDER CONSTRUCTION

This Policy covers insured physical loss or damage to property of the type insured that is under contract to be used in a construction project at an Insured Location.

Coverage attaches at the time such property is delivered to the Insured or their contractor (with respect to the property under construction) by the manufacturer or supplier and such property is located at a storage site within this Policy's TERRITORY but away from the Insured Location.

FM Global

Account No.  1-33966
Policy No.  UB946

This coverage includes necessary expendable materials and supplies to be utilized in the construction project but does not include any property owned or rented by the contractor.

OFF PREMISES STORAGE FOR PROPERTY UNDER CONSTRUCTION Exclusion: The following additional exclusion applies:

This Policy excludes loss or damage directly or indirectly caused by or resulting from the following regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss:

a)  Earth Movement for property located in California, in High Hazard Zones for Earth Movement, in the New Madrid Seismic Zone as described in Appendix A and in the Pacific Northwest Seismic Zone as described in Appendix B.

## W.  OPERATIONAL TESTING

This Policy covers insured physical loss or damage to insured property during the Period Of Operational Testing.

Property, including stock or material, manufactured or processed by the Insured is excluded under this Additional Coverage.

1)  References and Application.  The following term(s) means:

    a)  Period Of Operational Testing:

        The period of time beginning 24 hours prior to the earlier of the following:

        (i)  introduction, into a system, of feedstock or other materials for processing or handling;

        (ii)  commencement of fuel or energy supply to a system,

        and ending with the earlier of the following:

        (i)  the expiration date or cancellation date of this Policy.

        (ii)  if specified, the number of consecutive days shown in the LIMITS OF LIABILITY clause in the DECLARATIONS section.

## X.  PROFESSIONAL FEES

This Policy covers the actual costs incurred by the Insured, of reasonable fees payable to the Insured's accountants, architects, auditors, engineers, or other professionals and the cost of using the Insured's employees, for producing and certifying any particulars or details contained in the Insured's books or documents, or such other proofs, information or evidence required by the Company resulting from insured loss payable under this Policy for which the Company has accepted liability.

FM Global

Account No. 1-33966
Policy No. UB946

    1) This Additional Coverage will not include the fees and costs of attorneys, public adjusters, and loss appraisers, all including any of their subsidiary, related or associated entities either partially or wholly owned by them or retained by them for the purpose of assisting them nor the fees and costs of loss consultants who provide consultation on coverage or negotiate claims.

    2) This Additional Coverage is subject to the deductible that applies to the loss.

## Y.   PROTECTION AND PRESERVATION OF PROPERTY

This Policy covers:

    1) reasonable and necessary costs incurred for actions to temporarily protect or preserve insured property; provided such actions are necessary due to actual, or to prevent immediately impending, insured physical loss or damage to such insured property.

    2) reasonable and necessary:

        a) fire department fire fighting charges imposed as a result of responding to a fire in, on or exposing the insured property.

        b) costs incurred of restoring and recharging fire protection systems following an insured loss.

        c) costs incurred for the water used for fighting a fire in, on or exposing the insured property.

This Additional Coverage does not cover costs incurred for actions to temporarily protect or preserve insured property from actual, or to prevent immediately impending, physical loss or damage covered by TERRORISM coverage as provided in this section of the Policy.

This Additional Coverage is subject to the deductible provisions that would have applied had the physical loss or damage occurred.

## Z.   SERVICE INTERRUPTION PROPERTY DAMAGE

    1) This Policy covers insured physical loss or damage to insured property at an Insured Location or as MISCELLANEOUS PERSONAL PROPERTY when such physical loss or damage results from the interruption of the specified incoming services consisting of electricity, gas, fuel, steam, water, refrigeration or from the lack of outgoing sewerage service by reason of any accidental event at the facilities of the supplier of such service located within this Policy's TERRITORY, that immediately prevents in whole or in part the delivery of such usable service.

    2) This Additional Coverage will apply when the Period of Service Interruption is in excess of the time shown as Waiting Period in the WAITING PERIOD clause of the DECLARATIONS section.



3) The exclusions in the EXCLUSIONS clause of this section do not apply to SERVICE INTERRUPTION PROPERTY DAMAGE coverage except for:

    a) A1, A2, A3, A6, B1, B2, and

    b) B4 with respect to incoming or outgoing voice, data, or video, and

    c) D1 except with respect to fungus, mold or mildew.

In addition, as respects SERVICE INTERRUPTION PROPERTY DAMAGE coverage the following exclusion applies:

This Policy excludes loss or damage directly or indirectly caused by or resulting from the following regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss:

    a) Earth Movement for property located in California, in High Hazard Zones for Earth Movement, in the New Madrid Seismic Zone as described in Appendix A and in the Pacific Northwest Seismic Zone as described in Appendix B.

    b) Terrorism.

4) Additional General Provisions:

    a) The Insured will immediately notify the suppliers of services of any interruption of such services.

    b) The Company will not be liable if the interruption of such services is caused directly or indirectly by the failure of the Insured to comply with the terms and conditions of any contracts the Insured has for the supply of such specified services.

5) References and Application.  The following term(s) means:

    a) Period of Service Interruption:

    The period starting with the time when an interruption of specified services occurs; and ending when with due diligence and dispatch the service could be wholly restored.

## AA. TAX TREATMENT OF PROFITS

This Policy is extended to cover the increased tax liability from an insured loss at an Insured Location if the tax treatment of:

1) the profit portion of a loss payment under this Policy involving finished stock manufactured by the Insured; and/or

2) the profit portion of a TIME ELEMENT loss payment under this Policy;



is greater than the tax treatment of profits that would have been incurred had no loss occurred.

## BB. TEMPORARY REMOVAL OF PROPERTY

1) When insured property is removed from an Insured Location for the purpose of being repaired or serviced or in order to avoid threatened physical loss or damage of the type insured by this Policy, this Policy covers such property:

   a) while at the location to which such property has been moved; and

   b) for physical loss or damage as provided at the Insured Location from which such property was removed.

2) This Additional Coverage does not apply to property:

   a) insured, in whole or in part, elsewhere in this Policy.

   b) insured, in whole or in part, by any other insurance policy.

   c) removed for normal storage, processing or preparation for sale or delivery.

## CC. TERRORISM

This Policy covers physical loss or damage caused by or resulting from Terrorism only at locations as specifically described on the Schedule of Locations, at Miscellaneous Unnamed Locations and property covered under MISCELLANEOUS PERSONAL PROPERTY and OFF PREMISES STORAGE FOR PROPERTY UNDER CONSTRUCTION.

Any act which satisfies the definition of Terrorism in item B2f of the EXCLUSIONS clause in this section of the Policy shall not be considered to be vandalism, malicious mischief, riot, civil commotion, or any other risk of physical loss or damage covered elsewhere in this Policy.

Amounts recoverable under this Additional Coverage are excluded from coverage elsewhere in this Policy.

This Additional Coverage does not cover loss or damage which also comes within the terms of either item B2a or B2c of the EXCLUSIONS clause in this section of the Policy.

This Additional Coverage does not in any event cover loss or damage directly or indirectly caused by or resulting from any of the following, regardless of any other cause or event, whether or not insured under this Policy contributing concurrently or in any other sequence to the loss:

1) that involves the use, release or escape of nuclear materials, or that directly or indirectly results in nuclear reaction or radiation or radioactive contamination or that involves the discharge, explosion or use of any nuclear device, weapon or material employing or



involving nuclear fission, fusion, or radioactive force, whether in time of peace or war and regardless of who commits the act; or

2) that is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

3) in which pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials; or

4) that involves action taken to prevent, defend against, respond to or retaliate against Terrorism or suspected Terrorism.

As respects this Additional Coverage, this Policy does not insure any TIME ELEMENT loss as provided in the TIME ELEMENT section of this Policy for more than the number of months shown in the LIMITS OF LIABILITY clause of the DECLARATIONS section.

**DD. TRANSPORTATION**

1) This Policy covers the following Personal Property, except as excluded by this Policy, while in transit within the TERRITORY of this Policy:

   a) owned by the Insured.

   b) shipped to customers under F.O.B., C & F or similar terms.  The Insured's contingent interest in such shipments is admitted.

   c) of others in the actual or constructive custody of the Insured to the extent of the Insured's interest or legal liability.

   d) of others sold by the Insured, that the Insured has agreed prior to the loss to insure during course of delivery including:

      (i) when shipped by the Insured's direct contract service provider or by the Insured's direct contract manufacturer to the Insured.

2) This Additional Coverage excludes:

   a) samples in the custody of salespeople or selling agents.

   b) property insured under import or export ocean marine insurance.

   c) waterborne shipments, unless:

      (i) by inland water; or

      (ii) by roll-on/roll-off ferries operating between European ports; or

      (iii) by coastal shipments.

 **FM Global**

Account No.   I-33966
Policy No.   UB946

d)  airborne shipments unless by regularly scheduled passenger airlines or air freight carriers.

e)  property of others, including the Insured's legal liability for it, hauled on vehicles owned, leased or operated by the Insured when acting as a common or contract carrier.

f)  any transporting vehicle.

g)  property shipped between continents, except by land or air between Europe and Asia.

3)  Coverage Attachment and Duration:

a)  This Additional Coverage covers from the time the property leaves the original point of shipment for transit.  It then covers continuously in the due course of transit:

(i)  within the continent in which the shipment commences until the property arrives at the destination within such continent; or

(ii)  between Europe and Asia, for land or air shipments only, from when the shipment commences until the property arrives at the destination.

b)  However, coverage on export shipments not insured under ocean cargo policies ends when the property is loaded on board overseas vessels or aircraft.  Coverage on import shipments not insured under ocean cargo policies begins after discharge from overseas vessels or aircraft.

4)  This Additional Coverage:

a)  covers general average and salvage charges on shipments covered while waterborne.

b)  insures physical loss or damage caused by or resulting from:

(i)  unintentional acceptance of fraudulent bills of lading, shipping or messenger receipts.

(ii)  improper parties having gained possession of property through fraud or deceit.

5)  The exclusions in the EXCLUSIONS clause of this section do not apply to TRANSPORTATION coverage except for A1 through A4, B1 through B5, C1, C3, C5, C6, D1 through D3.

6)  Additional General Provisions:

a)  This Additional Coverage will not inure directly or indirectly to the benefit of any carrier or bailee.

b)  The Insured has permission, without prejudicing this insurance, to accept:



Account No.  1-33966
Policy No.  UB946

(i)  ordinary bills of lading used by carriers;

(ii)  released bills of lading;

(iii) undervalued bills of lading; and

(iv) shipping or messenger receipts.

c)  The Insured may waive subrogation against railroads under side track agreements.

Except as otherwise stated, the Insured will not enter into any special agreement with carriers releasing them from their common law or statutory liability.

## EE.  VALUABLE PAPERS AND RECORDS

This Policy covers insured physical loss or damage to Valuable Papers and Records while anywhere within this Policy's TERRITORY, including while in transit.

1)  This Additional Coverage excludes loss or damage to:

a)  property described below, if such property cannot be replaced with other of like kind and quality, unless specifically declared to the Company.

b)  currency, money or securities.

c)  property held as samples or for sale or for delivery after sale.

2)  VALUABLE PAPERS AND RECORDS Exclusions: The exclusions in the EXCLUSIONS clause of this section do not apply to VALUABLE PAPERS AND RECORDS coverage except for A1, A2, A6, A7, B1, B2, B3a, B4, and B5. In addition, as respects VALUABLE PAPERS AND RECORDS the following exclusions apply:

This Policy does not insure:

a)  errors or omissions in processing, or copying; all unless physical damage not excluded by this Policy results, in which event, only that resulting damage is insured.

b)  deterioration, inherent vice, vermin or wear and tear; all unless physical damage not excluded by this Policy results, in which event, only that resulting damage is insured.

c)  fungus, mold or mildew; unless directly resulting from other physical damage not excluded by this Policy.

3)  References and Application.  The following term(s) wherever used in this Policy means:

a)  Valuable Papers and Records:



Account No.   1-33966
Policy No.   UB946

Written, printed or otherwise inscribed documents and records, including books, maps, films, drawings, abstracts, deeds, mortgages and manuscripts, all of which must be of value to the Insured.

## 4.   APPLICATION OF POLICY TO DATE OR TIME RECOGNITION

A.   With respect to situations caused by the so-called "Year 2000" problem or any other Date or Time Recognition problem by Electronic Data Processing Equipment or Media, this Policy applies as follows.

1)   This Policy does not pay for remediation, change, correction, repair or assessment of any Year 2000 or any other Date or Time Recognition problem in any Electronic Data Processing Equipment or Media, whether preventative or remedial, and whether before or after a loss, including temporary protection and preservation of property. This Policy does not pay for any TIME ELEMENT loss resulting from the foregoing remediation, change, correction, repair or assessment.

2)   Failure of Electronic Data Processing Equipment or Media to correctly recognize, interpret, calculate, compare, differentiate, sequence, access or process data involving one or more dates or times, including the Year 2000, is not physical loss or damage insured against by this Policy. This Policy does not pay for any such incident or for any TIME ELEMENT loss resulting from any such incident.

Subject to all of its terms and conditions, this Policy does pay for physical loss or damage not excluded by this Policy that results from a failure of Electronic Data Processing Equipment or Media to correctly recognize, interpret, calculate, compare, differentiate, sequence, access or process data involving one or more dates or times, including the Year 2000. Such covered resulting physical loss or damage does not include any loss, cost or expense described in 1 or 2 above. If such covered resulting physical loss or damage occurs, and if this Policy provides TIME ELEMENT coverage, then, subject to all of its terms and conditions, this Policy also covers any insured Time Element loss directly resulting therefrom.

B.   References and Application. The following term(s) wherever used in this Policy means:

1)   Date or Time Recognition:

The recognition, interpretation, calculation, comparison, differentiation, sequencing, accessing or processing of data involving one or more dates or times, including the Year 2000.

2)   Electronic Data Processing Equipment or Media:

Any computer, computer system or component, hardware, network, microprocessor, microchip, integrated circuit or similar devices or components in computer or non-computer equipment, operating systems, data, programs or other software stored on electronic, electro-mechanical, electro-magnetic data processing or production equipment, whether the property of the Insured or not.

 **FM** Global

Account No.   1-33966
Policy No.   UB946

5.   **EXCLUSIONS**

The following exclusions apply unless specifically stated elsewhere in this Policy:

A.   This Policy excludes:

1)   indirect or remote loss or damage.

2)   interruption of business, except to the extent provided by this Policy.

3)   loss of market or loss of use.

4)   loss or damage or deterioration arising from any delay.

5)   mysterious disappearance, loss or shortage disclosed on taking inventory, or any unexplained loss.

6)   loss from enforcement of any law or ordinance:

    a)   regulating the construction, repair, replacement, use or removal, including debris removal, of any property; or

    b)   requiring the demolition of any property, including the cost in removing its debris;

    except as provided by the DECONTAMINATION COSTS and DEMOLITION AND INCREASED COST OF CONSTRUCTION coverages of this section of this Policy.

7)   loss resulting from the voluntary parting with title or possession of property if induced by any fraudulent act or by false pretence.

B.   This Policy excludes loss or damage directly or indirectly caused by or resulting from any of the following regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss:

1)   nuclear reaction or nuclear radiation or radioactive contamination. However:

    a)   if physical damage by fire or sprinkler leakage results, then only that resulting damage is insured; but not including any loss or damage due to nuclear reaction, radiation or radioactive contamination.

    b)   this Policy does insure physical damage directly caused by sudden and accidental radioactive contamination, including resultant radiation damage, from material used or stored or from processes conducted on the Insured Location, provided that on the date of loss, there is neither a nuclear reactor nor any new or used nuclear fuel on the Insured Location. This coverage does not apply to any act, loss or damage excluded in item B2f of this EXCLUSIONS clause.



This exclusion B1 and the exceptions in B1a and B1b do not apply to any act, loss or damage which also comes within the terms of exclusion B2b of this EXCLUSIONS clause.

2)  a)  hostile or warlike action in time of peace or war, including action in hindering, combating or defending against an actual, impending or expected attack by any:

   (i)   government or sovereign power (de jure or de facto);

   (ii)  military, naval or air force; or

   (iii) agent or authority of any party specified in i or ii above.

   b)  discharge, explosion or use of any nuclear device, weapon or material employing or involving nuclear fission, fusion or radioactive force, whether in time of peace or war and regardless of who commits the act.

   c)  insurrection, rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating or defending against such an event.

   d)  seizure or destruction under quarantine or custom regulation, or confiscation by order of any governmental or public authority.

   e)  risks of contraband, or illegal transportation or trade.

   f)  Terrorism, including action taken to prevent, defend against, respond to or retaliate against Terrorism or suspected Terrorism, except to the extent provided in the TERRORISM coverage in this section of the Policy.  However, if direct loss or damage by fire results from any of these acts (unless committed by or on behalf of the Insured), then this Policy covers only to the extent of the Actual Cash Value of the resulting direct loss or damage by fire to property insured.  This coverage exception for such resulting fire loss or damage does not apply to:

   (i)   direct loss or damage by fire which results from any other applicable exclusion in the Policy, including the discharge, explosion or use of any nuclear device, weapon or material employing or involving nuclear fission, fusion or radioactive force, whether in time of peace or war and regardless of who commits the act.

   (ii)  any coverage provided in the TIME ELEMENT section of this Policy or to any other coverages provided in this Policy.

   Any act which satisfies the definition of Terrorism as provided herein shall not be considered to be vandalism, malicious mischief, riot, civil commotion, or any other risk of physical loss or damage covered elsewhere in this Policy.

   If any act which satisfies the definition of Terrorism as provided herein also comes within the terms of item B2a of this EXCLUSIONS clause then item B2a applies in place of this item B2f exclusion.



Account No.   1-33966
Policy No.   UB946

If any act which satisfies the definition of Terrorism as provided herein also comes within the terms of item B2b of this EXCLUSIONS clause then item B2b applies in place of this item B2f exclusion.

If any act which satisfies the definition of Terrorism as provided herein also comes within the terms of item B2c of this EXCLUSIONS clause then item B2c applies in place of this item B2f exclusion.

If any act excluded herein involves nuclear reaction, nuclear radiation or radioactive contamination, this item B2f exclusion applies in place of item B1 of this EXCLUSIONS clause.

References and Application.  With the exception of PROVISIONS APPLICABLE TO SPECIFIC JURISDICTIONS clause in the GENERAL PROVISIONS section, the following term wherever used in this Policy means:

Terrorism:

Any act, involving the use or threat of: force, violence, dangerous conduct, interference with the operations of any business, government or other organization or institution, or any similar act,

> When the effect or apparent purpose is:

> > (i) To influence or instill fear in any government (de jure or de facto) or the public, or any segment of either; or

> > (ii) To further or to express support for, or opposition to, any political, religious, social, ideological or similar type of objective or position.

3) any dishonest act, including but not limited to theft, committed alone or in collusion with others, at any time:

a) by an Insured or any proprietor, partner, director, trustee, officer, or employee of an Insured; or

b) by any proprietor, partner, director, trustee, or officer of any business or entity (other than a common carrier) engaged by an Insured to do anything in connection with property insured under this Policy.

This Policy does insure acts of direct insured physical damage intentionally caused by an employee of an Insured or any individual specified in b above, and done without the knowledge of the Insured.  This coverage does not apply to any act excluded in B2f of this EXCLUSIONS clause.  In no event does this Policy cover loss by theft by any individual specified in a or b above.

4) lack of the following services:

a) incoming electricity, fuel, water, gas, steam, refrigerant;



Account No.  1-33966
Policy No.  UB946

    b)  outgoing sewerage;

    c)  incoming or outgoing voice, data or video,

all when caused by an event off the Insured Location, except as provided in SERVICE INTERRUPTION in the PROPERTY DAMAGE or TIME ELEMENT section of this Policy.  But, if the lack of such a service directly causes physical damage insured by this Policy on the Insured Location, then only that resulting damage is insured.

5)  Earth Movement for property located at Miscellaneous Unnamed Locations in California, in High Hazard Zones for Earth Movement, in the New Madrid Seismic Zone as described in Appendix A and in the Pacific Northwest Seismic Zone as described in Appendix B.

C.    This Policy excludes the following, but, if physical damage not excluded by this Policy results, then only that resulting damage is insured:

1)  faulty workmanship, material, construction or design from any cause.

2)  loss or damage to stock or material attributable to manufacturing or processing operations while such stock or material is being processed, manufactured, tested, or otherwise worked on.

3)  deterioration, depletion, rust, corrosion or erosion, wear and tear, inherent vice or latent defect.

4)  settling, cracking, shrinking, bulging, or expansion of:

    a)  foundations (including any pedestal, pad, platform or other property supporting machinery).

    b)  floors.

    c)  pavements.

    d)  walls.

    e)  ceilings.

    f)  roofs.

5)  a)  changes of temperature damage (except to machinery or equipment); or

    b)  changes in relative humidity damage,

all whether atmospheric or not.

6)  insect, animal or vermin damage.



7) loss or damage to the interior portion of buildings under construction from rain, sleet or snow, whether or not driven by wind, when the installation of the roof, walls and windows of such buildings has not been completed.

D. This Policy excludes the following unless directly resulting from other physical damage not excluded by this Policy:

1) Contamination, and any cost due to Contamination including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy. If Contamination due only to the actual not suspected presence of Contaminant(s) directly results from other physical damage not excluded by this Policy, then only physical damage caused by such Contamination may be insured. This exclusion DI does not apply to radioactive contamination which is excluded elsewhere in this Policy.

2) shrinkage.

3) changes in color, flavor, texture or finish.

References and Application: The following term(s) wherever used in this Policy means:

1) Contamination:

Any condition of property due to the actual or suspected presence of any foreign substance, impurity, pollutant, hazardous material, poison, toxin, pathogen or pathogenic organism, bacteria, virus, disease causing or illness causing agent, fungus, mold or mildew.

2) Contaminant:

Anything that causes Contamination.



Account No.   1-33966
Policy No.   UB946

## TIME ELEMENT - SECTION C

TIME ELEMENT loss as provided in the TIME ELEMENT COVERAGES and TIME ELEMENT COVERAGE EXTENSIONS of this section of the Policy:

A. is subject to the applicable limit of liability that applies to the insured physical loss or damage but in no event for more than any limit of liability that is stated as applying to the specific TIME ELEMENT COVERAGE and/or TIME ELEMENT COVERAGE EXTENSION; and

B. will not increase the Policy limit of liability; and

C. is subject to the Policy provisions, including applicable exclusions and deductibles,

all as shown in this section and elsewhere in this Policy.

## 1. LOSS INSURED

A. This Policy insures TIME ELEMENT loss, as provided in the TIME ELEMENT COVERAGES, directly resulting from physical loss or damage of the type insured by this Policy:

    1) to property described elsewhere in this Policy and not otherwise excluded by this Policy or otherwise limited in the TIME ELEMENT COVERAGES below;

    2) used by the Insured, or for which the Insured has contracted use;

    3) located at an Insured Location or within 1,000 feet of it, or as provided as TEMPORARY REMOVAL OF PROPERTY or OFF PREMISES STORAGE FOR PROPERTY UNDER CONSTRUCTION; or

    4) while at a MISCELLANEOUS PERSONAL PROPERTY Location and such Location is not a Contingent Time Element Location; or

    5) while in transit as provided by this Policy, and

    6) during the Periods of Liability described in this section.

B. This Policy insures TIME ELEMENT loss only to the extent it cannot be reduced through:

    1) the use of any property or service owned or controlled by the Insured;

    2) the use of any property or service obtainable from other sources;

    3) working extra time or overtime; or

    4) the use of inventory,

all whether at an Insured Location or at any other location. The Company reserves the right to take into consideration the combined operating results of all associated, affiliated or subsidiary companies of the Insured in determining the TIME ELEMENT loss.



Account No.  1-33966
Policy No.   UB946

C.   This Policy covers expenses reasonably and necessarily incurred by the Insured to reduce the loss otherwise payable under this section of this Policy. The amount of such recoverable expenses will not exceed the amount by which the loss has been reduced.

D.   Except as respects LEASEHOLD INTEREST, in determining the amount of loss payable, the Company will consider the experience of the business before and after and the probable experience during the PERIOD OF LIABILITY.

E.   The following TIME ELEMENT COVERAGE EXTENSIONS also apply for Contingent Time Element Locations which shall be considered Insured Locations for application of such Extensions:

CIVIL AUTHORITY
CONTINGENT TIME ELEMENT EXTENDED
DELAY IN START UP
EXTENDED PERIOD OF LIABILITY
INGRESS/EGRESS
ON PREMISES SERVICES
SERVICE INTERRUPTION TIME ELEMENT

## 2.   TIME ELEMENT COVERAGES

### A.   INSURED OPTION

The Insured has the option to make claim based on either

a)   GROSS EARNINGS and EXTENDED PERIOD OF LIABILITY; or

b)   GROSS PROFIT,

as described in the TIME ELEMENT section of this Policy and subject to the applicable terms and conditions as may be shown elsewhere.

Such option may be exercised at any time prior to the conditions set forth in SETTLEMENT OF CLAIMS clause in the LOSS ADJUSTMENT AND SETTLEMENT section of this Policy.

If such claim involves more than one Insured Location, including interdependency at one or more Insured Locations, all such claim will be adjusted by using the single coverage option chosen above.

### B.   GROSS EARNINGS

1)   Measurement of Loss:

a)   The recoverable GROSS EARNINGS loss is the Actual Loss Sustained by the Insured of the following during the PERIOD OF LIABILITY:

FM Global

(i)  Gross Earnings;

(ii) less all charges and expenses that do not necessarily continue during the interruption of production or suspension of business operations or services;

(iii) less ordinary payroll; and

(iv) plus all other earnings derived from the operation of the business.

(v) Ordinary Payroll, including taxes and charges dependent on the payment of wages:

(a) for a period of time of not more than the number of consecutive days shown in the LIMITS OF LIABILITY clause of the DECLARATIONS section immediately following the interruption of production or suspension of business operations or services, and

(b) only to the extent such Payroll continues following the loss and would have been earned had no such interruption happened.

However, if an Insured reduces the daily loss payable under Ordinary Payroll, either by:

(a) providing gainful employment for, or

(b) paying less than the normal salary rate to,

all or part of its employees, then the number of consecutive days of Ordinary Payroll may be extended.  However, this provision will not increase the total liability of this Company beyond the amount it would have been liable for Ordinary Payroll costs without this provision. Ordinary Payroll does not cover any portion of salaries or wages included in Gross Earnings.

b)  In determining the indemnity payable as the Actual Loss Sustained, the Company will consider the continuation of only those normal charges and expenses that would have been earned had no interruption of production or suspension of business operations or services occurred.

c)  If the Insured would have operated at a deficit had no interruption of production or suspension of business operations or services happened, the following applies:

(i)  for Gross Earnings, the extent to which charges and expenses would have been earned will be determined by subtracting the operating deficits from the charges and expenses that necessarily continue.

(ii) for Ordinary Payroll, the extent payroll would have been earned will be determined by subtracting the excess, if any, of the operating deficit over the fixed charges that need to continue from such payroll.

FM Global

Account No.  1-33966
Policy No.  UB946

d) There is recovery hereunder but only to the extent that the Insured is:

    (i) wholly or partially prevented from producing goods or continuing business operations or services;

    (ii) unable to make up lost production within a reasonable period of time, not limited to the period during which production is interrupted;

    (iii) unable to continue such operations or services during the PERIOD OF LIABILITY; and

    (iv) able to demonstrate a loss of sales for the operations, services or production prevented.

2) References and Application.  The following term(s) means:

Gross Earnings, as used in item 1ai:

a) for manufacturing operations: the net sales value of production less the cost of all raw stock, materials and supplies used in such production; or

b) for mercantile or non-manufacturing operations: the total net sales less cost of merchandise sold, materials and supplies consumed in the operations or services rendered by the Insured.

Any amount recovered under property damage coverage at selling price for loss or damage to merchandise will be considered to have been sold to the Insured's regular customers and will be credited against net sales.

## C.  GROSS PROFIT

1) Measurement of Loss:

a) The recoverable GROSS PROFIT loss is the Actual Loss Sustained by the Insured of the following due to the necessary interruption of business during the PERIOD OF LIABILITY: (i) Reduction in Sales, (ii) Ordinary Payroll, and (iii) Increase in Cost of Doing Business.  The amount payable as indemnity hereunder will be:

    (i) with respect to Reduction in Sales:  The sum produced by applying the Rate of Gross Profit to the amount by which the sales during the PERIOD OF LIABILITY will fall short of the Standard Sales.  In determining the Reduction in Sales, any amount recovered under property damage coverage at selling price for loss or damage to or destruction of finished goods or merchandise will be credited against lost sales.

    (ii) Ordinary Payroll, including taxes and charges dependent on the payment of wages, during the PERIOD OF LIABILITY only to the extent such payroll would have been earned had such loss not happened.



Account No.   1-33966
Policy No.   UB946

However, if an Insured reduces the daily loss payable under Ordinary Payroll, either by:

(a)  providing gainful employment for, or

(b)  paying less than the normal salary rate to,

all or part of its employees, the number of consecutive days of Ordinary Payroll may be extended. This provision will not increase the total liability of this Company beyond the amount it would have been liable for Ordinary Payroll costs without this provision.  Ordinary Payroll does not cover any portion of salaries or wages included in Net Profit or fixed charges.

(iii) with respect to Increase in Cost of Doing Business:

(a)  the additional expenditure necessarily and reasonably incurred for the sole purpose of avoiding or diminishing the Reduction In Sales and a loss of Ordinary Payroll which, but for that expenditure, would have taken place during the PERIOD OF LIABILITY; but

(b)  not exceeding the sum produced by applying the Rate of Gross Profit to the amount of the reduction thereby avoided,

all less any sum saved during the PERIOD OF LIABILITY with respect to such of the Insured Fixed Charges as may cease or be reduced because of such interruption of business.

b)  In determining the indemnity payable as the Actual Loss Sustained:

(i)  if any fixed charges of the business are not insured hereunder, then, in computing the amount recoverable hereunder as Increase in Cost of Doing Business, that proportion only of the additional expenditure will be recoverable hereunder which the sum of the Net Profit and the Insured Fixed Charges bears to the sum of the Net Profit and all the fixed charges excluding ordinary payroll.

(ii) if during the PERIOD OF LIABILITY goods will be sold or services will be rendered elsewhere than at the Insured Locations for the benefit of the business, either by the Insured or by others on the Insured's behalf, the money paid or payable in respect of such sales or services will be included in arriving at the amount of sales during the PERIOD OF LIABILITY.

c)  The Insured will act with due diligence and dispatch in repairing or replacing physically damaged buildings and equipment to the same or equivalent physical and operating conditions that existed prior to the damage; and take whatever actions are necessary and reasonable to minimize the loss payable hereunder.

2)  GROSS PROFIT Exclusions: As respects GROSS PROFIT, the TIME ELEMENT EXCLUSIONS B of this section does not apply and the following applies instead:



FM Global

Account No.  1-33966
Policy No.  UB946

This Policy does not insure against any increase in loss due to fines or damages for breach of contract or for late or noncompletion of orders, or penalties of any nature.

3) Additional Condition:

a) Coverage under GROSS PROFIT for the reduction in sales due to contract cancellation will include only those sales that would have been earned under the contract during the PERIOD OF LIABILITY.

4) References and Application.  The following term(s) mean:

a) Gross Profit:

The amount produced by adding to the Net Profit the amount of the Insured Fixed Charges, or if there be no Net Profit the amount of the Insured Fixed Charges less that proportion of any loss from business operations as the amount of the Insured Fixed Charges bears to all fixed charges.

b) Net Profit:

The net operating profit (exclusive of all capital receipts and accruals and all outlay properly chargeable to capital) resulting from the business of the Insured at the Insured Locations after due provision has been made for all fixed charges and other expenses including depreciation but before the deduction of any taxes on profits.

c) Insured Fixed Charges:

All fixed charges unless specifically excluded herein.  Ordinary Payroll is not an Insured Fixed Charge.

d) Sales:

The money paid or payable to the Insured for goods sold and delivered and for services rendered in the conduct of the business at an Insured Location.

e) Rate of Gross Profit:

The rate of Gross Profit earned on the sales during the twelve full calendar months immediately before the date of the physical loss or damage to the described property.

f) Standard Sales:

The sales during that period in the twelve months immediately before the date of the physical loss or damage to the described property which corresponds with the PERIOD OF LIABILITY.



**D. EXTRA EXPENSE**

1) Measurement of Loss:

The recoverable EXTRA EXPENSE loss will be the reasonable and necessary extra costs incurred by the Insured of the following during the PERIOD OF LIABILITY:

a) Extra expenses to temporarily continue as nearly normal as practicable the conduct of the Insured's business; and

b) Extra costs of temporarily using property or facilities of the Insured or others,

less any value remaining at the end of the PERIOD OF LIABILITY for property obtained in connection with the above.

2) EXTRA EXPENSE Exclusions: As respects EXTRA EXPENSE, the following are also excluded:

a) Any loss of income.

b) Costs that normally would have been incurred in conducting the business during the same period had no physical loss or damage occurred.

c) Cost of permanent repair or replacement of property that has been damaged or destroyed.

d) Any expense recoverable elsewhere in this Policy.

3) References and Application. The following term(s) means:

a) Normal:

The condition that would have existed had no physical loss or damage occurred.

**E. LEASEHOLD INTEREST**

1) Measurement of Loss:.

The recoverable LEASEHOLD INTEREST incurred by the Insured of the following:

a) If the lease agreement requires continuation of rent; and if the property is wholly untenantable or unusable, the actual rent payable for the unexpired term of the lease; or if the property is partially untenantable or unusable, the proportion of the rent payable for the unexpired term of the lease.

b) If the lease is canceled by the lessor pursuant to the lease agreement or by the operation of law; the Lease Interest for the first three months following the loss; and the Net Lease Interest for the remaining unexpired term of the lease.

 **FM Global**

Account No.  1-33966
Policy No.  UB946

2) References and Application.  The following term(s) means:

a) Lease Interest:

The excess rent paid for the same or similar replacement property over actual rent payable plus cash bonuses or advance rent paid (including maintenance or operating charges) for each month during the unexpired term of the Insured's lease.

b) Net Lease Interest:

That sum which placed at 6% interest rate compounded annually would equal the Lease Interest (less any amounts otherwise payable hereunder).

3) LEASEHOLD INTEREST Exclusions: As respects LEASEHOLD INTEREST, TIME ELEMENT EXCLUSIONS A, B, and C do not apply and the following applies instead:

This Policy does not insure any increase in loss resulting from the suspension, lapse or cancellation of any license, or from the Insured exercising an option to cancel the lease; or from any act or omission of the Insured that constitutes a default under the lease.

In addition, there is no coverage for the Insured's loss of LEASEHOLD INTEREST directly resulting from physical loss or damage to Personal Property.

**F.  RENTAL INSURANCE**

1) Measurement of Loss:

The recoverable RENTAL INSURANCE loss is the Actual Loss Sustained by the Insured of the following during the PERIOD OF LIABILITY:

a) The fair rental value of any portion of the property occupied by the Insured;

b) The income reasonably expected from rentals of unoccupied or unrented portions of such property; and

c) The rental income from the rented portions of such property according to bona fide leases, contracts or agreements in force at the time of loss,

all not to include noncontinuing charges and expenses.

2) RENTAL INSURANCE Exclusions:  As respects RENTAL INSURANCE, TIME ELEMENT EXCLUSIONS A does not apply and the following applies instead:

A. This Policy does not insure any loss of rental income during any period in which the insured property would not have been tenantable for any reason other than an insured loss.



3.   **TIME ELEMENT COVERAGE EXTENSIONS**

This Policy also insures TIME ELEMENT loss, as provided by the TIME ELEMENT COVERAGES of this Policy, for the TIME ELEMENT COVERAGE EXTENSIONS described below.

**SUPPLY CHAIN TIME ELEMENT COVERAGE EXTENSIONS**

A.   **CIVIL AUTHORITY**

This Policy covers the Actual Loss Sustained and EXTRA EXPENSE incurred by the Insured during the PERIOD OF LIABILITY if an order of civil authority prohibits access to the Insured Location provided such order is the direct result of physical damage of the type insured against under this Policy at the Insured Location or within five statute miles of it.

The PERIOD OF LIABILITY for this TIME ELEMENT COVERAGE EXTENSION will be:

The period of time:

1)   starting at the time of such physical damage; but

2)   not to exceed 30 consecutive days,

this period of time is part of and not in addition to any PERIOD OF LIABILITY applying to any coverage provided in the TIME ELEMENT section.

However this Extension does not apply to LEASEHOLD INTEREST.

B.   **CONTINGENT TIME ELEMENT EXTENDED**

This Policy covers the Actual Loss Sustained and EXTRA EXPENSE incurred by the Insured during the PERIOD OF LIABILITY directly resulting from physical loss or damage of the type insured to property of the type insured at Contingent Time Element Locations located within the TERRITORY of this Policy.

1)   As respects CONTINGENT TIME ELEMENT EXTENDED:

a)   The Insured will influence and cooperate with the Contingent Time Element Location in every way and take any reasonable and necessary action, including the use of other machinery, supplies or locations, to effect mitigation of the loss payable hereunder.

b)   In determining the indemnity payable hereunder, the Company will consider the amount of income derived before the date of physical loss or damage and the probable amount of income after the date of loss or damage.

c)   TIME ELEMENT EXCLUSIONS C does not apply.



2)  CONTINGENT TIME ELEMENT EXTENDED Exclusions:  As respects
CONTINGENT TIME ELEMENT EXTENDED, the following additional exclusions
apply:

This Policy does not insure loss resulting from:

a)  lack of incoming or outgoing transmission of voice, data or video.

b)  Earth Movement for locations of a supplier, contract manufacturer or contract
service provider that are located in California, in High Hazard Zones for Earth
Movement, in the New Madrid Seismic Zone as described in Appendix A and in the
Pacific Northwest Seismic Zone as described in Appendix B.

c)  physical loss or damage caused by or resulting from Terrorism, regardless of any
other cause or event, whether or not insured under this Policy, contributing
concurrently or in any other sequence of loss.

3)  References and Application.  The following term(s) wherever used in this Policy means:

a)  Contingent Time Element Location:

(i)  Any Location:

(a)  of a direct supplier, contract manufacturer or contract service provider to the
Insured.

(b)  of any company under a royalty, licensing fee or commission agreement
with the Insured.

(ii) A Contingent Time Element Location does not include Locations of any
company supplying to, or receiving from, the Insured, electricity, fuel, gas,
water, steam, refrigeration, sewage, voice, data or video.

## C.   INGRESS/EGRESS

This Policy covers the Actual Loss Sustained and EXTRA EXPENSE incurred by the
Insured due to the necessary interruption of the Insured's business due to physical prevention
of ingress to or egress from an Insured Location, whether or not the premises or property of
the Insured is damaged, provided that such prevention is a direct result of physical damage
of the type insured by this Policy, to the kind of property not excluded by this Policy.

INGRESS/EGRESS Exclusions:  As respects INGRESS/EGRESS, the following exclusions
are applicable:

This Policy does not insure loss resulting from:

1)  lack of incoming or outgoing service consisting of electric, fuel, gas, water, steam,
refrigerant, sewerage and voice, data or video.



2)  picketing or other action by strikers except for physical damage not excluded by this Policy.

3)  physical loss or damage caused by or resulting from Terrorism, regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss.

This Policy does not provide coverage under this Extension for more than the number of consecutive days shown in the LIMITS OF LIABILITY clause of the DECLARATIONS section.

## D.  LOGISTICS EXTRA COST

This Policy covers the Extra Cost incurred by the Insured during the PERIOD OF LIABILITY due to the disruption of the Normal movement of goods or materials:

1)  directly between Insured Locations; or

2)  directly between an Insured Location and a Location of a direct customer, supplier, contract manufacturer or contract service provider to the Insured,

provided that such disruption is a direct result of physical loss or damage of the type insured by this Policy to the kind of property not excluded by this Policy located within the TERRITORY of this Policy.

1)  Measurement of Loss:

The recoverable Extra Cost loss will be the reasonable and necessary extra costs incurred by the Insured of the following:

a)  Extra costs to temporarily continue as nearly Normal as practicable the movement of goods or materials.

2)  This Extension of coverage will apply when the PERIOD OF LIABILITY is in excess of the time shown as the Waiting Period in the WAITING PERIOD clause of the DECLARATIONS section.

3)  LOGISTICS EXTRA COST Exclusions:  As respects LOGISTICS EXTRA COST, the following are also excluded:

a)  Disruption in the movement of goods or materials between Contingent Time Element Locations.

b)  Disruption of incoming or outgoing services consisting of electricity, gas, fuel, steam, water, refrigeration, sewerage and voice, data or video.

c)  Any loss of income.



    d)  Costs that normally would have been incurred in conducting the business during the same period had there been no disruption of Normal movement of goods or materials.

    e)  Cost of permanent repair or replacement of property that has been damaged or destroyed.

    f)  Any expense recoverable elsewhere in this Policy.

    g)  Disruption caused by or resulting from Terrorism, regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss.

    h)  Disruption caused by loss or damage from Earth Movement in California, in High Hazard Zones for Earth Movement, in the New Madrid Seismic Zone as described in Appendix A and in the Pacific Northwest Seismic Zone as described in Appendix B.

    i)  Disruption caused by physical loss or damage to personal property of the Insured while in transit.

4)  The PERIOD OF LIABILITY for this TIME ELEMENT COVERAGE EXTENSION will be:

The period of time:

    a)  starting at the time of physical loss or damage causing the disruption of the Normal movement of goods or materials between the Insured Locations; or directly between the Insured Location and the Location of the direct supplier, contract manufacturer or contract service provider to the Insured, and

    b)  ending not later than:

        (i)  when with due diligence and dispatch the Normal movement of goods or materials between the Insured Locations; or directly between the Insured Location and the Location of the direct supplier, contract manufacturer or contract service provider to the Insured could be resumed; or

        (ii)  the number of consecutive days shown in the LIMITS OF LIABILITY clause of the DECLARATIONS section.

5)  Reference and Application.  The following term means:

    a)  Normal:

    The condition that would have existed had no physical loss or damage causing disruption occurred.

    b)  Normal Cost:

    As used in the LIMITS OF LIABILITY clause, the cost associated with the movement of goods or materials suffering the disruption that the Insured would have incurred had no physical loss or damage causing disruption occurred.



Account No.   1-33966
Policy No.   UB946

E.   **SERVICE INTERRUPTION TIME ELEMENT**

1)   This Policy covers the Actual Loss Sustained and EXTRA EXPENSE incurred by the Insured during the Period of Service Interruption at Insured Locations when the loss is caused by the interruption of incoming services consisting of electricity, gas, fuel, steam, water, refrigeration or from the lack of outgoing sewerage service by reason of any accidental event at the facilities of the supplier of such service located within this Policy's TERRITORY, that immediately prevents in whole or in part the delivery of such usable services.

2)   This Extension will apply when the Period of Service Interruption is in excess of the time shown as Waiting Period in the WAITING PERIOD clause of the DECLARATIONS section.

3)   The exclusions in the EXCLUSIONS clause of the PROPERTY DAMAGE section do not apply to SERVICE INTERRUPTION TIME ELEMENT coverage except for:

   a)   A1, A2, A3, A6, B1, B2, and

   b)   B4 with respect to incoming or outgoing voice, data or video, and

   c)   D1 except with respect to fungus, mold or mildew.

   In addition, as respects SERVICE INTERRUPTION TIME ELEMENT coverage the following exclusion applies:

   This Policy excludes loss or damage directly or indirectly caused by or resulting from the following regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss:

   a)   Earth Movement for property located in California, in High Hazard Zones for Earth Movement, in the New Madrid Seismic Zone as described in Appendix A and in the Pacific Northwest Seismic Zone as described in Appendix B.

   b)   Terrorism.

4)   Additional General Provisions:

   a)   The Insured will immediately notify the suppliers of services of any interruption of such services.

   b)   The Company will not be liable if the interruption of such services is caused directly or indirectly by the failure of the Insured to comply with the terms and conditions of any contracts the Insured has for the supply of such specified services.

5)   References and Application.  The following term(s) means:

   a)   Period of Service Interruption:

      (i)   The period starting with the time when an interruption of specified services occurs; and ending when with due diligence and dispatch the service could be



Account No.  1-33966
Policy No.  UB946

wholly restored and the Location receiving the service could or would have resumed normal operations following the restorations of service under the same or equivalent physical and operating conditions as provided by the PERIOD OF LIABILITY clause in this section.

(ii) The Period of Service Interruption is limited to only those hours during which the Insured would or could have used service(s) if it had been available.

(iii) The Period of Service Interruption does not extend to include the interruption of operations caused by any reason other than interruption of the specified service(s).

## ADDITIONAL TIME ELEMENT COVERAGE EXTENSIONS

### A.  COMPUTER SYSTEMS–NON PHYSICAL DAMAGE

1) This Policy covers the Actual Loss Sustained and EXTRA EXPENSE incurred by the Insured during the Period of Interruption directly resulting from the failure of the Insured's Electronic Data Processing Equipment or Media to operate, provided such failure is the direct result of a malicious act directed at the NAMED INSURED.

2) This Extension of coverage will apply when the Period of Interruption is in excess of the time shown as Waiting Period in the WAITING PERIOD clause of the DECLARATIONS section.

3) References and Application.  The following term(s) means:

a) Period of Interruption:

(i) The period starting when the Insured's Electronic Data Processing Equipment or Media fails to operate and ending when with due diligence and dispatch, the Insured's Electronic Data Processing Equipment or Media could be restored to the same or equivalent operating condition that existed prior to the failure.

(ii) The Period of Interruption does not include the additional time to make changes to the Insured's Electronic Data Processing Equipment or Media.

### B.  DELAY IN START UP

GROSS EARNINGS or GROSS PROFIT and EXTRA EXPENSE are extended to cover the Actual Loss Sustained incurred by the Insured during the PERIOD OF LIABILITY due to the reasonable and necessary delay in start up of the business operations directly resulting from physical loss or damage of the type insured to insured property under construction at an Insured Location or property covered by OFF PREMISES STORAGE FOR PROPERTY UNDER CONSTRUCTION.

### C.  EXTENDED PERIOD OF LIABILITY

The GROSS EARNINGS coverage is extended to cover the reduction in sales resulting from:



Account No.   1-33966
Policy No.   UB946

1)  the interruption of business as covered by GROSS EARNINGS;

2)  for such additional length of time as would be required with the exercise of due diligence and dispatch to restore the Insured's business to the condition that would have existed had no loss occurred; and

3)  commencing with the date on which the liability of the Company for loss resulting from interruption of business would terminate if this Extension had not been included herein.

However, this Extension does not apply to GROSS EARNINGS loss resulting from physical loss or damage caused by or resulting from Terrorism.

EXTENDED PERIOD OF LIABILITY Exclusions: As respects EXTENDED PERIOD OF LIABILITY, the TIME ELEMENT EXCLUSIONS B of this section does not apply and the following applies instead:

This Policy does not insure against any increase in loss due to fines or damages for breach of contract or for late or noncompletion of orders, or penalties of any nature.

Coverage under this Extension for the reduction in sales due to contract cancellation will include only those sales that would have been earned under the contract during the extended period of liability.

Coverage under this Extension does not apply for more than the number of consecutive days shown in the LIMITS OF LIABILITY clause of the DECLARATIONS section.

**D.   ON PREMISES SERVICES**

This Policy covers the Actual Loss Sustained and EXTRA EXPENSE incurred by the Insured during the PERIOD OF LIABILITY directly resulting from physical loss or damage of the type insured to the following property located within 1,000 feet of the Insured Location:

1)  Electrical equipment and equipment used for the transmission of voice, data or video.

2)  Electrical, fuel, gas, water, steam, refrigeration, sewerage, voice, data or video transmission lines.

**E.   PROTECTION AND PRESERVATION OF PROPERTY – TIME ELEMENT**

This Policy covers the Actual Loss Sustained by the Insured for a period of time not to exceed 48 hours prior to and 48 hours after the Insured first taking reasonable action for the temporary protection and preservation of property insured by this Policy provided such action is necessary to prevent immediately impending physical loss or damage insured by this Policy at such insured property.

This Extension does not cover the Actual Loss Sustained by the Insured to temporarily protect or preserve insured property from actual, or to prevent immediately impending,



Account No.  1-33966
Policy No.  UB946

physical loss or damage covered by TERRORISM coverage as provided in the PROPERTY DAMAGE section.

This Extension is subject to the deductible provisions that would have applied had the physical loss or damage occurred.

**F.    RELATED REPORTED VALUES**

If reported TIME ELEMENT values include:

1)   locations used by the Insured (such as branch stores, sales outlets and other plants) but not listed on a schedule under this Policy; and

2)   a TIME ELEMENT loss would result at such locations,

3)   from insured physical loss or damage at an Insured Location,

then this Policy provides coverage for such resulting TIME ELEMENT loss in accordance with the coverage applicable at such Insured Location.

**G.    RESEARCH AND DEVELOPMENT**

The GROSS EARNINGS and GROSS PROFIT coverages are extended to insure the Actual Loss Sustained by the Insured of continuing fixed charges and Ordinary Payroll directly attributable to the interruption of research and development activities, that in themselves would not have produced income during the PERIOD OF LIABILITY.

The PERIOD OF LIABILITY for this TIME ELEMENT COVERAGE EXTENSION will be the period from the time of direct physical loss or damage of the type insured by this Policy to the time when the property could be repaired or replaced and made ready for operations, but as respects GROSS PROFIT and Ordinary Payroll such period of time shall not exceed the period of time shown in the LIMITS OF LIABILITY clause of the DECLARATIONS section.  Such period of time shall not be limited by the date of expiration of this Policy.

**H.    SOFT COSTS**

This Policy covers the Actual Loss Sustained incurred by the Insured of Soft Costs during the PERIOD OF LIABILITY arising out of the delay of completion of buildings and additions under construction directly resulting from physical loss or damage of the type insured to insured property under construction at an Insured Location.

1)   References and Application.  The following term(s) wherever used in this Policy means:

a)   Soft Costs:

Expenses over and above normal expenses at Locations undergoing renovation or in the course of construction limited to the following:



Account No.  1-33966
Policy No.  UB946

    (i) Construction loan fees - the additional cost incurred to rearrange loans necessary for the completion of construction, repairs or reconstruction including; the cost to arrange refinancing, accounting work necessary to restructure financing, legal work necessary to prepare new documents, charges by the lenders for the extension or renewal of loans necessary.

    (ii) Commitment fees, leasing and marketing expenses - The cost of returning any commitment fees received from prospective tenant(s) or purchaser(s), the cost of re-leasing and marketing due to loss of tenant(s) or purchaser(s).

    (iii) Additional fees - for architects, engineers, consultants, attorneys and accountants needed for the completion of construction, repairs or reconstruction.

    (iv) Carrying costs - property taxes, building permits, additional interest on loans, realty taxes and insurance premiums.

## 4.   PERIOD OF LIABILITY

A.    The PERIOD OF LIABILITY applying to all TIME ELEMENT COVERAGES, except GROSS PROFIT and LEASEHOLD INTEREST and as shown below or if otherwise provided under any TIME ELEMENT COVERAGE EXTENSION, and subject to any Time Limit provided in the LIMITS OF LIABILITY clause in the DECLARATIONS section, is as follows:

    1) For building and equipment, the period:

        a) starting from the time of physical loss or damage of the type insured against; and

        b) ending when with due diligence and dispatch the building and equipment could be:

            (i) repaired or replaced; and

            (ii) made ready for operations,

        under the same or equivalent physical and operating conditions that existed prior to the damage.

        c) not to be limited by the expiration of this Policy.

    2) For building and equipment under construction:

        a) the equivalent of the above period of time will be applied to the level of business that would have been reasonably achieved after construction and startup would have been completed had no physical damage happened; and

        b) due consideration will be given to the actual experience of the business compiled after completion of the construction and startup.



3) For stock-in-process and mercantile stock, including finished goods not manufactured by the Insured, the time required with the exercise of due diligence and dispatch:

    a) to restore stock in process to the same state of manufacture in which it stood at the inception of the interruption of production or suspension of business operations or services; and

    b) to replace physically damaged mercantile stock.

    This item does not apply to RENTAL INSURANCE.

4) For raw materials and supplies, the period of time:

    a) of actual interruption of production or suspension of operations or services resulting from the inability to get suitable raw materials and supplies to replace similar ones damaged; but

    b) limited to that period for which the damaged raw materials and supplies would have supplied operating needs.

5) If water:

    a) used for any manufacturing purpose, including but not limited to as a raw material or for power;

    b) stored behind dams or in reservoirs; and

    c) on any Insured Location,

    is released as the result of physical damage of the type insured against under this Policy to such dam, reservoir or connected equipment, the Company's liability for the actual interruption of production or suspension of operations or services due to inadequate water supply will not extend beyond 30 consecutive days after the damaged dam, reservoir or connected equipment has been repaired or replaced.

    This item does not apply to RENTAL INSURANCE.

6) For physically damaged exposed films, records, manuscripts and drawings, the time required to copy from backups or from originals of a previous generation. This time does not include research, engineering or any other time necessary to restore or recreate lost information.

    This item does not apply to RENTAL INSURANCE.

7) For physically damaged or destroyed property covered under DATA, PROGRAMS OR SOFTWARE, the time to recreate or restore including the time for researching or engineering lost information.

    This item does not apply to RENTAL INSURANCE.

FM Global

Account No.   1-33966
Policy No.   UB946

B.   The PERIOD OF LIABILITY applying to GROSS PROFIT is as follows:

1)   The period:

a)   starting from the time of physical loss or damage of the type insured against; and

b)   ending not later than the period of time shown in the LIMITS OF LIABILITY clause of the DECLARATIONS section,

during which period the results of the business shall be directly affected by such damage.

c)   not to be limited by the expiration of this Policy.

2)   For property under construction, the period:

a)   starting on the date that production, business operation or service would have commenced if physical damage of the type insured against had not happened; and

b)   ending not later than the period of time shown in the LIMITS OF LIABILITY clause of the DECLARATIONS section,

during which period the results of the business shall be directly affected by such damage.

c)   not to be limited by the expiration of this Policy.

The Rate of Gross Profit and Standard Sales will be based on the experience of the business after construction is completed and the probable experience during the PERIOD OF LIABILITY.

C.   The PERIOD OF LIABILITY does not include any additional time due to the Insured's inability to resume operations for any reason, including but not limited to:

1)   making changes to equipment.

2)   making changes to the buildings or structures except as provided in the DEMOLITION AND INCREASED COST OF CONSTRUCTION clause in the PROPERTY DAMAGE section.

3)   restaffing or retraining employees.

If two or more Periods of Liability apply such periods will not be cumulative.



Account No.   1-33966
Policy No.   UB946

5.    **TIME ELEMENT EXCLUSIONS**

In addition to the exclusions elsewhere in this Policy, the following exclusions apply to TIME ELEMENT loss:

This Policy does not insure against:

A.    Any loss during any idle period, including but not limited to when production, operation, service or delivery or receipt of goods would cease, or would not have taken place or would have been prevented due to:

   1)   physical loss or damage not insured by this Policy on or off of the Insured Location.

   2)   planned or rescheduled shutdown.

   3)   strikes or other work stoppage.

   4)   any other reason other than physical loss or damage insured by this Policy.

B.    Any increase in loss due to:

   1)   suspension, cancellation or lapse of any lease, contract, license or orders.

   2)   fines or damages for breach of contract or for late or noncompletion of orders.

   3)   for penalties of any nature.

   4)   any other consequential or remote loss.

C.    Any loss resulting from loss or damage to finished goods manufactured by the Insured, nor the time required for their reproduction.

D.    Any loss resulting from the Actual Cash Value portion of direct physical loss or damage by fire caused by or resulting from Terrorism.





Account No.  1-33966
Policy No.  UB946

## LOSS ADJUSTMENT AND SETTLEMENT - SECTION D

**1.  LOSS ADJUSTMENT/PAYABLE**

Loss, if any, will be adjusted with and payable to DIRECTV, or as may be directed by DIRECTV. Additional insured interests will also be included in loss payment as their interests may appear when named as additional named insured, lender, mortgagee and/or loss payee in the Certificates of Insurance on file with the Company or named below.

**2.  CURRENCY FOR LOSS PAYMENT**

Losses will be adjusted and paid in the currency of the United States of America, except in Canada where losses will be paid in Canadian currency, unless directed otherwise by the Insured.

In the event of a loss adjustment involving currency conversion, the exchange selling rate will be calculated as follows:

A.  As respects the calculation of deductibles and limits of liability, the rate of exchange published in The Wall Street Journal on the date of loss.

B.  As respects loss or damage to Real and Personal Property:

  1)  the cost to repair or replace Real and Personal Property will be converted at the time the cost of repair or replacement is incurred based on the rate of exchange published in The Wall Street Journal.

  2)  if such property is not replaced or repaired, the conversion will be based on the rate of exchange published in The Wall Street Journal as of the date of loss.

C.  As respects TIME ELEMENT loss the conversion will be based on the average of the rate of exchange published in The Wall Street Journal on the date of loss and the rate of exchange published in The Wall Street Journal on the last day of the Period of Liability.

If The Wall Street Journal was not published on the stipulated date, the rate of exchange will be as published on the next business day.

**3.  VALUATION**

Adjustment of the physical loss amount under this Policy will be computed as of the date of loss at the location of the loss, and for no more than the interest of the Insured, subject to the following:

A.  On stock in process, the value of raw materials and labor expended plus the proper proportion of overhead charges.

B.  On finished goods manufactured by the Insured, the regular cash selling price at the Location where the loss happens, less all discounts and charges to which the finished goods would have been subject had no loss happened.

C.  On raw materials, supplies and other merchandise not manufactured by the Insured:



Account No.   1-33966
Policy No.   UB946

    1) if repaired or replaced, the actual expenditure incurred in repairing or replacing the damaged or destroyed property; or

    2) if not repaired or replaced, the Actual Cash Value.

D. On exposed films, records, manuscripts and drawings, that are not Valuable Papers and Records, the value blank plus the cost of copying information from back-up or from originals of a previous generation. These costs will not include research, engineering or any costs of restoring or recreating lost information.

E. On property covered under DEFERRED PAYMENTS, the lesser of the:

    1) total amount of unpaid installments less finance charges.

    2) Actual Cash Value of the property at the time of loss.

    3) cost to repair or replace with material of like size, kind and quality.

F. On FINE ARTS articles, the lesser of:

    1) the reasonable and necessary cost to repair or restore such property to the physical condition that existed on the date of loss.

    2) cost to replace the article.

    3) the value, if any, stated on a schedule on file with the Company.

In the event a Fine Arts article is part of a pair or set, and a physically damaged article cannot be replaced, or repaired or restored to the condition that existed immediately prior to the loss, the Company will be liable for the lesser of the full value of such pair or set or the amount designated on the schedule. The Insured agrees to surrender the pair or set to the Company.

G. On property covered under DATA, PROGRAMS OR SOFTWARE:

    1) The cost to repair, replace or restore data, programs or software including the costs to recreate, research and engineer;

    2) If not repaired, replaced or restored within two years from the date of loss, the blank value of the media.

H. On VALUABLE PAPERS AND RECORDS, the lesser of the following:

    1) The cost to repair or restore the item to the condition that existed immediately prior to the loss.

    2) The cost to replace the item.



    3)  The amount designated for the item on the schedule on file with the Company.

I.    On property in transit:

    1)  Property shipped to or for the account of the Insured will be valued at actual invoice to the Insured.  Included in the value are accrued costs and charges legally due.  Charges may include the Insured's commission as selling agent.

    2)  Property sold by the Insured and shipped to or for the purchaser's account will be valued at the Insured's selling invoice amount.  Prepaid or advanced freight costs are included.

    3)  Property not under invoice will be valued:

        a)  for property of the Insured, at the valuation provisions of this Policy applying at the location from which the property is being transported; or

        b)  for other property, at the actual cash market value at the destination point on the date of loss,

    less any charges saved which would have become due and payable upon arrival at destination.

J.    On property that is damaged by fire and such fire is the result of Terrorism, the Actual Cash Value of the fire damage loss.  Any remaining fire damage loss shall be adjusted according to the terms and conditions of the VALUATION clause in this section of the Policy and shall be subject to the limit(s) of liability for TERRORISM, and if stated the limit of liability for SUPPLEMENTAL UNITED STATES CERTIFIED ACT OF TERRORISM ENDORSEMENT, as shown in the LIMITS OF LIABILITY clause in the DECLARATIONS section.

K.    On all other property, the loss amount will not exceed the lesser of the following:

    1)  The cost to repair.

    2)  The cost to rebuild or replace on the same site with new materials of like size, kind and quality.

    3)  The cost in rebuilding, repairing or replacing on the same or another site, but not to exceed the size and operating capacity that existed on the date of loss.

    4)  The selling price of real property or machinery and equipment, other than stock, offered for sale on the date of loss.

    5)  The cost to replace unrepairable electrical or mechanical equipment, including computer equipment, with equipment that is the most functionally equivalent to that damaged or destroyed, even if such equipment has technological advantages and/or represents an improvement in function and/or forms part of a program of system enhancement.



Account No.  1-33966
Policy No.  UB946

6)  The increased cost of demolition, if any, resulting from loss covered by this Policy, if such property is scheduled for demolition.

7)  The unamortized value of improvements and betterments, if such property is not repaired or replaced at the Insured's expense.

8)  The Actual Cash Value if such property is:

a)  useless to the Insured; or

b)  not repaired, replaced or rebuilt on the same or another site within two years from the date of loss.

The Insured may elect not to repair or replace the insured real and/or personal property lost, damaged or destroyed.  Loss settlement may be elected on the lesser of repair or replacement cost basis if the proceeds of such loss settlement are expended on other capital expenditures related to the Insured's operations within two years from the date of loss.  As a condition of collecting under this item, such expenditure must be unplanned as of the date of loss and be made at an Insured Location under this Policy.  This item does not extend to DEMOLITION AND INCREASED COST OF CONSTRUCTION.

References and Application.  The following term(s) wherever used in this Policy means:

a)  Actual Cash Value:

The amount it would cost to repair or replace insured property, on the date of loss, with material of like kind and quality, with proper deduction for obsolescence and physical depreciation.

## 4.  LOSS CONDITIONS

### A.  REQUIREMENTS IN CASE OF LOSS

The Insured will:

1)  give immediate written notice to the Company of any loss.

2)  protect the property from further loss or damage.

3)  promptly separate the damaged and undamaged property; put it in the best possible order; and furnish a complete inventory of the lost, destroyed, damaged and undamaged property showing in detail the quantities, costs, Actual Cash Value, replacement value and amount of loss claimed.

4)  give a signed and sworn proof of loss to the Company within 90 days after the loss, unless that time is extended in writing by the Company.  The proof of loss must state the knowledge and belief of the Insured as to:

a)  the time and origin of the loss.



b) the Insured's interest and that of all others in the property.

c) the Actual Cash Value and replacement value of each item and the amount of loss to each item; all encumbrances; and all other contracts of insurance, whether valid or not, covering any of the property.

d) any changes in the title, use, occupation, location, possession or exposures of the property since the effective date of this Policy.

e) by whom and for what purpose any location insured by this Policy was occupied on the date of loss, and whether or not it then stood on leased ground.

5) include a copy of all the descriptions and schedules in all policies and, if required, provide verified plans and specifications of any buildings, fixtures, machinery or equipment destroyed or damaged.

6) further, the Insured, will as often as may be reasonably required:

a) exhibit to any person designated by the Company all that remains of any property;

b) submit to examination under oath by any person designated by the Company and sign the written records of examinations; and

c) produce for examination at the request of the Company:

(i) all books of accounts, business records, bills, invoices and other vouchers; or

(ii) certified copies if originals are lost;

at such reasonable times and places that may be designated by the Company or its representative and permit extracts and machine copies to be made.

## B.  COMPANY OPTION

The Company has the option to take all or any part of damaged property at the agreed or appraised value.  The Company must give notice to the Insured of its intention to do so within 30 days after receipt of proof of loss.

## C.  ABANDONMENT

There may be no abandonment of any property to the Company.

## D.  SUBROGATION

The Insured is required to cooperate in any subrogation proceedings.  The Company may require from the Insured an assignment or other transfer of all rights of recovery against any party for loss to the extent of the Company's payment.



Account No. 1-33966
Policy No. UB946

The Company will not acquire any rights of recovery that the Insured has expressly waived prior to a loss, nor will such waiver affect the Insured's rights under this Policy.

Any recovery from subrogation proceedings, less costs incurred by the Company in such proceedings, will be payable to the Insured in the proportion that the amount of:

1) any applicable deductible; and/or

2) any provable uninsured loss,

bears to the entire provable loss amount.

## E. APPRAISAL

If the Insured and the Company fail to agree on the amount of loss, each will, on the written demand of either, select a competent and disinterested appraiser after:

1) the Insured has fully complied with all provisions of this Policy, including REQUIREMENTS IN CASE OF LOSS; and

2) the Company has received a signed and sworn proof of loss from the Insured.

Each will notify the other of the appraiser selected within 20 days of such demand.

The appraisers will first select a competent and disinterested umpire. If the appraisers fail to agree upon an umpire within 30 days then, on the request of the Insured or the Company, the umpire will be selected by a judge of a court of record in the jurisdiction in which the appraisal is pending. The appraisers will then appraise the amount of loss, stating separately the Actual Cash Value and replacement cost value as of the date of loss and the amount of loss, for each item of physical loss or damage or if, for TIME ELEMENT loss, the amount of loss for each TIME ELEMENT coverage of this Policy.

If the appraisers fail to agree, they will submit their differences to the umpire. An award agreed to in writing by any two will determine the amount of loss.

The Insured and the Company will each:

1) pay its chosen appraiser; and

2) bear equally the other expenses of the appraisal and umpire.

A demand for APPRAISAL shall not relieve the Insured of its continuing obligation to comply with the terms and conditions of this Policy, including as provided under REQUIREMENTS IN CASE OF LOSS.

The Company will not be held to have waived any of its rights by any act relating to appraisal.



Account No.  1-33966
Policy No.  UB946

### F.  SUIT AGAINST THE COMPANY

No suit, action or proceeding for the recovery of any claim will be sustained in any court of law or equity unless:

1) the Insured has fully complied with all the provisions of this Policy; and

2) legal action is started within twelve months after inception of the loss.

If under the insurance laws of the jurisdiction in which the property is located, such twelve months' limitation is invalid, then any such legal action needs to be started within the shortest limit of time permitted by such laws.

## 5.  SETTLEMENT OF CLAIMS

The amount of loss, except for ACCOUNTS RECEIVABLE coverage, for which the Company may be liable will be paid within 30 days after:

A.  proof of loss as described in this Policy is received by the Company; and

B.  when a resolution of the amount of loss is made either by:

1) written agreement between the Insured and the Company; or

2) the filing with the Company of an award as provided in the APPRAISAL clause of this section.

## 6.  COLLECTION FROM OTHERS

The Company will not be liable for any loss to the extent that the Insured has collected for such loss from others.

## 7.  PARTIAL PAYMENT OF LOSS SETTLEMENT

In the event of a loss occurring which has been ascertained to be insured loss or damage under this Policy and determined by the Company's representatives to be in excess of the applicable Policy deductible, the Company will advance mutually agreed upon partial payment(s) on the insured loss or damage, subject to the Policy's provisions. To obtain said partial payments, the Insured will submit a signed and sworn Proof of Loss as described in this Policy, with adequate supporting documentation.

## 8.  JURISDICTION

This Policy will be governed by United States of America Law. Any disputes arising hereunder will be exclusively subject to United States of America jurisdiction.



Account No. 1-33966
Policy No. UB946

## GENERAL PROVISIONS - SECTION E

### 1. ADDITIONAL INSURABLE INTERESTS/CERTIFICATES OF INSURANCE

Additional insured interests are automatically added to this Policy as their interest may appear when named as additional named insured, lender, mortgagee and/or loss payee in the Certificates of Insurance on a schedule on file with the Company. Such interests become effective on the date shown in the Certificate of Insurance and will not amend, extend or alter the terms, conditions, provisions and limits of this Policy.

### 2. CANCELLATION/NON-RENEWAL

This Policy may be:

A.   cancelled at any time at the request of the Insured by surrendering this Policy to the Company or by giving written notice to the Company stating when such cancellation will take effect; or

B.   cancelled by the Company by giving the Insured not less than:

    1)   60 days' written notice of cancellation; or

    2)   10 days' written notice of cancellation if the Insured fails to remit, when due, payment of premium for this Policy; or

C.   non-renewed by the Company by giving the Insured not less than 60 days' written notice of non-renewal.

Return of any unearned premium will be calculated on the customary short rate basis if the Insured cancels and on a pro-rata basis if the Company cancels this Policy. Return of any unearned premium will be made by the Company as soon as practicable.

### 3. INSPECTIONS

The Company, at all reasonable times, will be permitted, but will not have the duty, to inspect insured property.

The Company's:

A.   right to make inspections;

B.   making of inspections; or

C.   analysis, advice or inspection report,

will not constitute an undertaking, on behalf of or for the benefit of the Insured or others, to determine or warrant that the insured property is safe or healthful. This Company will have no liability to the Insured or any other person because of any inspection or failure to inspect.



Account No.   I-33966
Policy No.   UB946

When the Company is not providing jurisdictional inspections, the Owner/Operator has the responsibility to assure that jurisdictional inspections are performed as required, and to assure that required jurisdictional Operating Certificates are current for their pressure equipment.

## 4.   PROVISIONS APPLICABLE TO SPECIFIC JURISDICTIONS

A.   If the provisions of this Policy conflict with the laws of any jurisdictions in which this Policy applies, and if certain provisions are required by law to be stated in this Policy, this Policy will be read so as to eliminate such conflict or deemed to include such provisions for Insured Locations within such jurisdictions.

B.   The Company will provide to the Insured copies of endorsements mandated for use by the laws of provinces in Canada. The endorsements modify this Policy with respect to any insured property located in the province in which the endorsement applies.

C.   The Company will provide to the Insured copies of endorsements mandated for use by the laws of states in the United States of America. The endorsements modify this Policy with respect to any insured property located in the state in which the endorsement applies.

D.   As respects the United States, its territories and possessions and the Commonwealth of Puerto Rico, the definition of Terrorism contained in item B2f of the EXCLUSIONS clause in the PROPERTY DAMAGE section of this Policy is declared null and void and it is agreed that an event defined as a Certified Act of Terrorism under the terms of the SUPPLEMENTAL UNITED STATES CERTIFIED ACT OF TERRORISM ENDORSEMENT attached to this Policy shall be considered an act of Terrorism within the terms of this Policy. Coverage recoverable under the SUPPLEMENTAL UNITED STATES CERTIFIED ACT OF TERRORISM ENDORSEMENT is excluded from any other coverage under this Policy. Any difference in limit between loss recoverable under the SUPPLEMENTAL UNITED STATES CERTIFIED ACT OF TERRORISM ENDORSEMENT and this Policy is not recoverable under this Policy.

E.   In respect of any insured property located in France or in French territories, coverage is provided for loss or damage caused by or resulting from acts of terrorism committed within France or within French territories, in accordance with articles L126-2, R126-1 and R126-2 of the Insurance Code and decree 2001-1337 dated 28 December 2001.

F.   Notwithstanding anything contained in this Policy to the contrary, there is no coverage for loss or damage and any resulting TIME ELEMENT loss, as provided in the TIME ELEMENT section of this Policy, caused by or resulting from the following regardless of any other cause or event contributing concurrently or in any other sequence to the loss:

    1)   Terrorism as defined in item B2f of the EXCLUSIONS clause in the PROPERTY DAMAGE section of this Policy for property located in Great Britain.

References and Application: The following terms(s) wherever used in this Policy means:

    a)   Great Britain:

        England and Wales and Scotland but not the territorial seas adjacent thereto as defined by the Territorial Sea Act 1987 nor the Isle of Man nor the Channel Islands.



Account No.  1-33966
Policy No.  UB946

G.  For any insured property located in Norway, this Policy insures against loss or damage to insured property resulting from Natural Catastrophe perils as designated in the Act of Natural Perils of June 16th, 1989.

H.  Coverage is provided for physical loss or damage and any resulting TIME ELEMENT loss as provided in the TIME ELEMENT section of this Policy to insured property in Northern Ireland occasioned by or happening through or in consequence directly or indirectly of:

1) riot, civil commotion and (except in respect of loss or damage and resulting TIME ELEMENT loss by fire or explosion) strikers, locked-out workers or persons taking part in labor disturbances or malicious persons; and

2) Terrorism as described in item B2f of EXCLUSIONS in the PROPERTY DAMAGE section,

subject to liability of the Company only to be for the extent of the loss not recoverable by the Insured under the "Criminal Damage (Compensation) (Northern Ireland) Order 1977" or subsequent legislation; and to all other terms, conditions and limits of this Policy.

I.  With respect to any insured property in South Africa, the following conditions additionally apply:

Notwithstanding anything contained herein to the contrary:

1) This Policy does not cover loss of or damage directly or indirectly to property related to or caused by:

a) civil commotion, labor disturbances, riot, strike, lockout or public disorder or any act or activity which is calculated or directed to bring about any of the above;

b) war, invasion, act of foreign enemy, hostilities or warlike operations (whether war be declared or not) or civil war;

c) (i) mutiny, military rising, military or usurped power, martial law or state of siege, or any other event or cause which determines the proclamation or maintenance of martial law or siege;

(ii) insurrection, rebellion or revolution.

d) any act (whether on behalf of any organization, body or person, or group of persons) calculated or directed to overthrow or influence any state or government, or any provincial, local or tribal authority with force, or by means of fear, terrorism or violence;

e) any act which is calculated or directed to bring about loss or damage in order to further any political aim, objective or cause or to bring about any social or economic change, or in protest against any state or government, or any provincial, local or

FM Global

Account No.   1-33966
Policy No.   UB946

tribal authority, or for the purpose of inspiring fear in the public, or any section thereof;

 f) any attempt to perform any act referred to in clause d or e above;

 g) The act of any lawfully established authority in controlling, preventing, suppressing or in any other way dealing with any event referred to in clause a, b, c, d, e or f above.

If the Insurers allege that by reason of clauses a, b, c, d, e, f, or g of this exclusion, loss or damage is not covered by this Policy, the burden of proving the contrary will rest on the Insured.

 2) This Policy does not cover loss or damage caused directly or indirectly by or through or in consequence of any event for which a fund has been established in terms of the War Damage Insurance and Compensation Act 1976 (No. 85 of 1976) or any similar Act operative in any of the territories to which this Policy applies.

## 5.  LIBERALIZATION

If during the period that insurance is in force under this Policy, any filed rules or regulations affecting the same are revised by statute so as to broaden the insurance without additional premium charge, such extended or broadened insurance will inure to the benefit of the Insured within such jurisdiction, effective the date of the change specified in such statute.

## 6.  MISREPRESENTATION AND FRAUD

This entire Policy will be void if, whether before or after a loss, an Insured has:

 A.  willfully concealed or misrepresented any material fact or circumstance concerning this insurance, the subject thereof, any insurance claim, or the interest of an Insured.

 B.  made any attempt to defraud the Company.

 C.  made any false swearing.

## 7.  LENDERS LOSS PAYEE AND MORTGAGEE INTERESTS AND OBLIGATIONS

 A.  The Company will pay for loss to specified property insured under this Policy to each specified Lender Loss Payee (hereinafter referred to as Lender) as its interest may appear, and to each specified Mortgagee as its interest may appear, under all present or future mortgages upon such property, in order of precedence of the mortgages.

 B.  The interest of the Lender or Mortgagee (as the case may be) in property insured under this Policy will not be invalidated by:

  1) any act or neglect of the debtor, mortgagor, or owner (as the case may be) of the property.



2) foreclosure, notice of sale, or similar proceedings with respect to the property.

3) change in the title or ownership of the property.

4) change to a more hazardous occupancy.

The Lender or Mortgagee will notify the Company of any known change in ownership, occupancy, or hazard and, within 10 days of written request by the Company, may pay the increased premium associated with such known change. If the Lender or Mortgagee fails to pay the increased premium, all coverage under this Policy will cease.

C. If this Policy is cancelled at the request of the Insured or its agent, the coverage for the interest of the Lender or Mortgagee will terminate 10 days after the Company sends to the Lender or Mortgagee written notice of cancellation, unless:

1) sooner terminated by authorization, consent, approval, acceptance, or ratification of the Insured's action by the Lender or Mortgagee, or its agent.

2) this Policy is replaced by the Insured, with a policy providing coverage for the interest of the Lender or Mortgagee, in which event coverage under this Policy with respect to such interest will terminate as of the effective date of the replacement policy, notwithstanding any other provision of this Policy.

D. The Company may cancel this Policy and/or the interest of the Lender or Mortgagee under this Policy, by giving the Lender or Mortgagee written notice 60 days prior to the effective date of cancellation, if cancellation is for any reason other than non-payment. If the debtor, mortgagor, or owner has failed to pay any premium due under this Policy, the Company may cancel this Policy for such non-payment, but will give the Lender or Mortgagee written notice 10 days prior to the effective date of cancellation. If the Lender or Mortgagee fails to pay the premium due by the specified cancellation date, all coverage under this Policy will cease.

E. The Company has the right to invoke this Policy's SUSPENSION clause. The suspension of insurance will apply to the interest of the Lender or Mortgagee in any machine, vessel, or part of any machine or vessel, subject to the suspension. The Company will provide the Lender or Mortgagee at the last known address a copy of the suspension notice.

F. If the Company pays the Lender or Mortgagee for any loss, and denies payment to the debtor, mortgagor or owner, the Company will, to the extent of the payment made to the Lender or Mortgagee be subrogated to the rights of the Lender or Mortgagee under all securities held as collateral to the debt or mortgage. No subrogation will impair the right of the Lender or Mortgagee to sue or recover the full amount of its claim. At its option, the Company may pay to the Lender or Mortgagee the whole principal due on the debt or mortgage plus any accrued interest. In this event, all rights and securities will be assigned and transferred from the Lender or Mortgagee to the Company, and the remaining debt or mortgage will be paid to the Company.

G. If the Insured fails to render proof of loss, the Lender or Mortgagee, upon notice of the Insured's failure to do so, will render proof of loss within 60 days of notice and will be



Account No. 1-33966
Policy No. UB946

subject to the provisions of this Policy relating to APPRAISAL, SETTLEMENT OF CLAIMS, and SUIT AGAINST THE COMPANY.

H. Other provisions relating to the interests and obligations of the Lender or Mortgagee may be added to this Policy by agreement in writing.

## 8. OTHER INSURANCE

A. If there is any other insurance that would apply in the absence of this Policy, this Policy will apply only after such insurance whether collectible or not.

B. In no event will this Policy apply as contributing insurance.

C. The Insured is permitted to have other insurance over any limits or sublimits of liability specified elsewhere in this Policy without prejudice to this Policy. The existence of any such insurance will not reduce any limit or sublimit of liability in this Policy. Any other insurance that would have provided primary coverage in the absence of this Policy will not be considered excess.

D. The Insured is permitted to have other insurance for all, or any part, of any deductible in this Policy. The existence of such other insurance will not prejudice recovery under this Policy. If the limits of liability of such other insurance are greater than this Policy's applicable deductible, this Policy's insurance will apply only after such other insurance has been exhausted.

E. In the event this Policy is deemed to contribute with other insurance, the limit of liability applicable at each Location, for purposes of such contribution with other insurers, will be the latest amount described in this Policy or the latest Location value on file with the Company.

## 9. POLICY MODIFICATION

This Policy contains all of the agreements between the Insured and the Company concerning this insurance. The Insured and the Company may request changes to this Policy. This Policy can be changed only by endorsements issued by the Company and made a part of this Policy.

Notice to any agent or knowledge possessed by any agent or by any other person will not:

A. create a waiver, or change any part of this Policy; or

B. prevent the Company from asserting any rights under the provisions of this Policy.

## 10. REDUCTION BY LOSS

Claims paid under this Policy will not reduce its' limit of liability, except claims paid will reduce any Policy Year Aggregate Limit of Liability.



Account No.  1-33966
Policy No.   UB946

11.  **SUSPENSION**

On discovery of a dangerous condition, the Company may immediately suspend this insurance on any machine, vessel or part thereof by giving written notice to the Insured.  The suspended insurance may be reinstated by the Company.  Any unearned premium resulting from such suspension will be returned by the Company.

12.  **TITLES**

The titles in this Policy are only for reference.  The titles do not in any way affect the provisions of this Policy.



Account No. 1-33966
Policy No. UB946

## NEW MADRID SEISMIC ZONE, APPENDIX A

**Arkansas, counties of:**
Arkansas, Ashley, Chicot, Clay, Craighead, Crittenden, Cross, Desha, Drew, Fulton, Grant, Greene, Independence, Izard, Jackson, Jefferson, Lawrence, Lee, Lincoln, Lonoke, Mississippi, Monroe, Phillips, Poinsett, Prairie, Pulaski, Randolph, Saline, Sharp, St. Francis, White, Woodruff

**Illinois, counties of:**
Alexander, Bond, Calhoun, Christian, Clark, Clay, Clinton, Coles, Crawford, Cumberland, Edwards, Effingham, Fayette, Franklin, Gallatin, Greene, Hamilton, Hardin, Jackson, Jasper, Jefferson, Jersey, Johnson, Lawrence, Macoupin, Madison, Marion, Massac, Monroe, Montgomery, Morgan, Perry, Pike, Pope, Pulaski, Randolph, Richland, Saline, Sangamon, Scott, Shelby, St. Clair, Union, Wabash, Washington, Wayne, White, Williamson

**Indiana, counties of:**
Crawford, Daviess, Dubois, Gibson, Greene, Knox, Lawrence, Martin, Orange, Perry, Pike, Posey, Spencer, Sullivan, Vanderburgh, Warrick

**Kentucky, counties of:**
Ballard, Breckinridge, Butler, Caldwell, Calloway, Carlisle, Christian, Crittenden, Daviess, Fulton, Graves, Hancock, Henderson, Hickman, Hopkins, Livingston, Logan, Lyon, Marshall, McCracken, McLean, Muhlenberg, Ohio, Simpson, Todd, Trigg, Union, Warren, Webster

**Mississippi, counties of:**
Alcorn, Benton, Bolivar, Calhoun, Carroll, Chickasaw, Choctaw, Clay, Coahoma, De Soto, Grenada, Holmes, Humphreys, Issaquena, Itawamba, Lafayette, Lee, Leflore, Lowndes, Marshall, Monroe, Montgomery, Oktibbeha, Panola, Pontotoc, Prentiss, Quitman, Sharkey, Sunflower, Tallahatchie, Tate, Tippah, Tishomingo, Tunica, Union, Warren, Washington, Webster, Yalobusha, Yazoo

**Missouri, counties of:**
Audrain, Bollinger, Butler, Callaway, Cape Girardeau, Carter, Cole, Crawford, Dent, Dunklin, Franklin, Gasconade, Howell, Iron, Jefferson, Lincoln, Madison, Maries, Marion, Miller, Mississippi, Montgomery, New Madrid, Oregon, Osage, Pemiscot, Perry, Phelps, Pike, Pulaski, Ralls, Reynolds, Ripley, Scott, Shannon, St. Charles, St. Francois, St. Louis, St. Louis City, Ste. Genevieve, Stoddard, Texas, Warren, Washington, Wayne

**Tennessee, counties of:**
Benton, Carroll, Cheatham, Chester, Crockett, Decatur, Dickson, Dyer, Fayette, Gibson, Hardeman, Hardin, Haywood, Henderson, Henry, Hickman, Houston, Humphreys, Lake, Lauderdale, Lawrence, Lewis, Madison, McNairy, Montgomery, Obion, Perry, Robertson, Shelby, Stewart, Tipton, Wayne, Weakley



Account No.  1-33966
Policy No.  UB946

## PACIFIC NORTHWEST SEISMIC ZONE, APPENDIX B

**Oregon, counties of:**
Benton, Clackamas, Clatsop, Columbia, Coos, Curry, Douglas, Jackson, Josephine, Klamath, Lake, Lane, Lincoln, Linn, Marion, Multnomah, Polk, Tillamook, Washington, Yamhill

**Washington, counties of:**
Chelan, Clallam, Clark, Cowlitz, Grays Harbor, Island, Jefferson, King, Kitsap, Kittitas, Lewis, Mason, Pacific, Pierce, San Juan, Skagit, Skamania, Snohomish, Thurston, Wahkiakum, Whatcom

**British Columbia (includes Vancouver Island):**
South of 50° N latitude and west of 120° W longitude





Account No. 1-33966
Policy No. UB946

## HIGH HAZARD WIND ZONES WORLDWIDE, APPENDIX C

Tier I Wind Areas

<u>Counties inside the United States:</u>

**Alabama:** Baldwin, Mobile
**Florida:** Bay, Brevard, Broward, Calhoun, Charlotte, Citrus, Collier, Dade, Dixie, Duval, Escambia, Flagler, Franklin, Gulf, Hernando, Hillsborough, Indian River, Jefferson, Lee, Levy, Liberty, Manatee, Martin, Monroe, Nassau, Okaloosa, Palm Beach, Pasco, Pinellas, Sarasota, St. Lucie, St. Johns, Santa Rosa, Taylor, Volusia, Wakulla, Walton, Washington
**Georgia:** Bryan, Camden, Chatham, Glynn, McIntosh, Liberty
**Hawaii:** All islands
**Louisiana:** Assumption, Cameron, Iberia, Jefferson, Lafourche, Orleans, Plaquemines, St. Bernard, St. Charles, St. James, St. John Baptist, St. Mary, St. Tammany, St. Martin, Terrebonne, Vermilion
**Mississippi:** Hancock, Harrison, Jackson
**North Carolina:** Beaufort, Bertie, Brunswick, Camden, Carteret, Chowan, Craven, Currituck, Dare, Gates, Hyde, Jones, New Hanover, Onslow, Pamlico, Pasquotank, Pender, Perquimans, Tyrell, Washington
**South Carolina:** Beaufort, Berkeley, Charleston, Georgetown, Horry, Jasper
**Texas:** Aransas, Brazoria, Calhoun, Cameron, Chambers, Galveston, Jefferson, Kenedy, Kleberg, Matagorda, Nueces, Orange, Refugio, San Patricio, Willacy

<u>Areas outside the United States:</u>

**Within 25 miles of the coastline in the following areas:**
**Australia** (Northern coastline from Shark Bay, Western Australia to Hervey Bay, Queensland), **Bermuda, Caribbean Islands** (including but not limited to Anguilla, Antigua & Barbuda, Aruba, Bahamas, Barbados, British Virgin Islands, Cayman Islands, Dominican Republic, Guadeloupe, Jamaica, Martinique, Netherlands Antilles, the Commonwealth Puerto Rico, St. Kitts & Nevis, St. Lucia, St. Vincent & The Grenadines, Trinidad & Tobago, Turks & Caicos Islands, U. S. Virgin Islands), **China** (Coastline except coastline between Shanghai and Lianyungang), **Costa Rica, French Polynesia, Guam, Guatemala, Honduras, Hong Kong, India** (Western coastline between northern coast of Gulf of Kachchh and Mangalore; Eastern coastline between Bangladesh border and Madurae), **Indonesia** (Java and all islands east of Java to Kepulauan Babar Island), **Japan, Marshall Islands, the Republic of Mexico** (Coastlines of the states of Tamaulipas, Veracruz, Tabasco, Campeche, Yucatan, Quintana Roo, Baja California Sur, Colima, Jalisco, Guerrero, Michoacan, Nayarit and Sinaloa), **Micronesia, Nicaragua, Philippines** (Islands except Mindanao, Palawan, Basilan, Jolo and Busuanga), **South Korea, Taiwan**

Case 2:14-cv-08673-DDP-MAN   Document 1   Filed 11/07/14   Page 96 of 132   Page ID #:99





Account No.  1-33966
Policy No.  UB946

## HIGH HAZARD WIND ZONES WORLDWIDE, APPENDIX C

**Tier II Wind Areas**

<u>Counties inside the United States:</u>

**Florida:**  Alachua, Baker, Bradford, Clay, Columbia, DeSoto, Gadsden, Gilchrist, Glades, Hamilton, Hardee, Hendry, Highlands, Holmes, Jackson, Lafayette, Lake, Leon, Madison, Marion, Okeechobee, Orange, Osceola, Polk, Putnam, Seminole, Sumter, Suwannee, Union
**Georgia:**  Brantley, Charlton, Effingham, Long, Wayne
**Louisiana:**  Acadia, Ascension, Calcasieu, East Baton Rouge, Iberville, Jefferson Davis, Lafayette, Livingston, St. Martin, Tangipahoa, Washington, West Baton Rouge
**Mississippi:**  George, Pearl River, Stone
**North Carolina:**  Bladen, Columbus, Duplin, Hertford, Lenoir, Martin, Pitt
**South Carolina:**  Colleton, Dorchester, Williamsburg
**Texas:**  Bee, Brooks, Fort Bend, Goliad, Hardin, Harris, Hidalgo, Jackson, Jasper, Jim Wells, Liberty, Newton, Victoria, Wharton

<u>Areas outside the United States:</u>

**Between 25 and 50 Miles from the coastline:**
Australia (Northern coastline from Shark Bay, Western Australia to Hervey Bay, Queensland), **Bermuda, Caribbean Islands** (including but not limited to Anguilla, Antigua & Barbuda, Aruba, Bahamas, Barbados, British Virgin Islands, Cayman Islands, Dominican Republic, Guadeloupe, Haiti, Jamaica, Martinique, Netherlands Antilles, the Commonwealth of Puerto Rico, St. Kitts & Nevis, St. Lucia, St. Vincent & The Grenadines, Trinidad & Tobago, Turks & Caicos Islands, U. S. Virgin Islands), **China** (Coastline except coastline between Shanghai and Lianyungang), **Costa Rica, Polynesia, Guam, Guatemala, Honduras, Hong Kong, India** (Western coastline between northern coast of Gulf of Kachchh and Mangalore; Eastern coastline between Bangladesh border and Madurae), **Indonesia** (Java and all islands east of Java to Kepulauan Babar Island), **Japan, Marshall Islands, the Republic of Mexico** (Coastlines of the states of Tamaulipas, Veracruz, Tabasco, Campeche, Yucatan, Quintana Roo, Baja California Sur, Colima, Jalisco, Guerrero, Michoacan, Nayarit and Sinaloa), **Micronesia, Nicaragua, Philippines** (Islands except Mindanao, Palawan, Basilan, Jolo and Busuanga), **South Korea, Taiwan**



 FM Global

Account No.  1-33966
Policy No.  UB946

## HOME SERVICES LOCATIONS, APPENDIX D

| Location No. | Index No. | Location Description |
|---|---|---|
| 0184 | 072438.97-03 | 161 Inverness Drive West<br>Englewood, Colorado 80112-5003<br>Denver Home Services - New Offices |
| 0250 | 001812.57-01 | 102 Ragland Drive<br>Lafayette, Tennessee 37083-1443<br>Home Services Installation -  Lafayette |
| 0252 | 001811.48-01 | 11111 West 8th Avenue, Units B & C<br>Lakewood, Colorado 80215-5577<br>Home Services Installation -  Lakewood |
| 0253 | 001811.15-01 | 11399 Walsh Street<br>Castroville, California 95012-3039<br>Home Services Installation - Castroville 2 |
| 0254 | 001811.47-01 | 12087 Lopez Canyon Road Building A<br>Sylmar, California 91342-6063<br>Home Services Installation -  Sylmar |
| 0256 | 001811.27-01 | 12269 Scarbrough Court<br>Oak Hills, California 92344-9201<br>Home Services Installation - Hesperia |
| 0259 | 001811.43-01 | 135 Main Avenue<br>Sacramento, California 95838-2041<br>Home Services Installation - Sacramento |
| 0262 | 001811.01-01 | 14520 Neal Road<br>Loxley, Alabama 36551-2513<br>Home Services Installation -  Loxley |
| 0265 | 001811.17-01 | 15946 Kaplan Avenue<br>City of Industry, California 91744-3109<br>Home Services Installation -  City of Industry 2 |
| 0280 | 001811.23-01 | 249 East Avenue K8, Ste K8<br>HI Vista, California 93535-4518<br>Home Services Installation -  Lancaster |
| 0281 | 000418.99-02 | 2802 Northeast 65th Avenue<br>Vancouver, Washington 98661-6899<br>Home Services Installation -  Vancouver 2 |
| 0290 | 001811.04-01 | 3159 Pegasus Drive<br>Bakersfield, California 93308-6800<br>Home Services Installation - Bakersfield |



 FM Global

Account No.  1-33966
Policy No.  UB946

## HOME SERVICES LOCATIONS, APPENDIX D

| Location No. | Index No. | Location Description |
|---|---|---|
| 0302 | 001810.97-01 | 397 4th Avenue Southwest<br>Bessemer, Alabama 35022-4735<br>Home Services Installation -  Bessemer |
| 0305 | 001810.99-01 | 4031 Parkway Drive<br>Florence, Alabama 35630-7619<br>Home Services Installation -  Florence |
| 0308 | 001811.14-01 | 4650 Calle Quetzal<br>Camarillo, California 93012-8558<br>Home Services Installation - Camarillo |
| 0310 | 001811.26-01 | 547  Lindon Lane<br>Nipomo, California 93444-7812<br>Home Services Installation - Nipomo |
| 0314 | 001811.03-01 | 6061  Perimeter Place<br>Montgomery, Alabama 36116-5173<br>Home Services Installation -  Montgomery |
| 0317 | 089781.58-05 | 6370 Nancy Ridge Road Suite 104<br>San Diego, California 92121-3212<br>Home Services Installation - San Diego |
| 0319 | 072438.70-02 | 6501 East Belleview Avenue, Ste 500<br>Englewood, Colorado 80111-6060<br>Home Services Network Corporate Office |
| 0320 | 073154.09-04 | 6701 West 12th Street<br>Little Rock, Arkansas 72204-1515<br>Home Services Installation -  Little Rock |
| 0321 | 001811.33-01 | 6823 Eastside Road<br>Redding, California 96001-5452<br>Home Services Installation - Redding |
| 0324 | 001812.65-01 | 715 78th Ave SW, Ste F<br>Tumwater, Washington 98501-5700<br>Home Services Installation -  Tumwater/ Home Services<br>Installation -  Tumwater 2 |
| 0331 | 001811.50-01 | 907 West Roosevelt Avenue<br>Albany, Georgia 31701-2156<br>Home Services Installation - Albany |
| 0332 | 001811.55-01 | 91-295  Kauhi Street<br>Kapolei, Hawaii 96707-1851<br>Home Services Installation - Kapolei |





Account No. 1-33966
Policy No. UB946

## HOME SERVICES LOCATIONS, APPENDIX D

| Location No. | Index No. | Location Description |
|---|---|---|
| 0334 | 001812.60-01 | 958 West 3265 South<br>South Salt Lake, Utah 84119-3346<br>Home Services Installation-South Salt Lake |
| 0363 | 001813.62-01 | 7606 Fort Chaffee Boulevard Building 216<br>Barling, Arkansas 72923-2685<br>Home Services Installation -  Barling |
| 0386 | 001941.87-01 | 753 North Bierdeman Road<br>Jackson, Mississippi 39208-3306<br>Home Services Installation -  Vardaman |
| 0388 | 030385.16-03 | 25 Andrews Drive<br>West Paterson, New Jersey 07424-2682<br>Home Services Installation-West Paterson |
| 0400 | 002063.45-01 | 15308 Citrus Country Drive<br>Dade City, Florida 33523-6009<br>Home Services Installation -  Dade |
| 0401 | 002063.46-01 | 12601 Westlinks Drive<br>Fort Myers, Florida 33913<br>Home Services Installation -  Ft. Myers |
| 0402 | 002063.47-01 | 1150 Bell Avenue<br>Fort Pierce, Florida 34982<br>Home Services Installation -  Ft. Pierce |
| 0403 | 002063.48-01 | 6735 Northwest 18th Drive, Suite 4<br>Gainesville, Florida 32653-1674<br>Home Services Installation -  Gainesville |
| 0404 | 084412.10-08 | 4801 Executive Park Court, Suite 201<br>Jacksonville, Florida 32216-6001<br>Home Services Installation -  Jacksonville |
| 0405 | 000828.82-03 | 12400 Southwest 134th Court<br>Miami, Florida 33186-6499<br>Home Services Installation -  Miami |
| 0406 | 084429.90-39 | 1966 West New Hampshire Street<br>Orlando, Florida 32804-6023<br>Home Services Installation -  Orlando |
| 0407 | 002063.49-01 | 640 Park Street<br>Sebring, Florida 33870-3229<br>Home Services Installation -  Sebring |



Account No.  1-33966
Policy No.  UB946

## HOME SERVICES LOCATIONS, APPENDIX D

| Location No. | Index No. | Location Description |
|---|---|---|
| 0408 | 002063.50-01 | 8973 Palm River Road<br>Tampa, Florida 33619-4323<br>Home Services Installation -  Tampa |
| 0412 | 002063.71-01 | 20280 Highland Road<br>Baton Rouge, Louisiana 70817-7343<br>Home Services Installation -  Baton Rouge |
| 0413 | 002063.72-01 | 253 Industrial Drive<br>Jonesboro, Louisiana 71251-5464<br>Home Services Installation -  Jonesboro |
| 0414 | 002063.73-01 | 234 Harbor Circle<br>New Orleans, Louisiana 70126-1104<br>Home Services Installation -  New Orleans |
| 0415 | 002064.11-01 | 19930 Industrial Drive<br>Big Lake, Minnesota 55309-8016<br>Home Services Installation -  Big Lake |
| 0416 | 000582.98-02 | 11421 Rupp Drive<br>Burnsville, Minnesota 55337-1276<br>Home Services Installation -  Burnsville |
| 0417 | 002064.12-01 | 524-524 1/2  West Front Street<br>Claremont, Minnesota 55924<br>Home Services Installation -  Claremont |
| 0418 | 002064.50-01 | 13 Commerce Drive<br>Ballston Spa, New York 12020-3631<br>Home Services Installation -  Ballston Spa |
| 0429 | 002064.30-01 | 10 Dewey Boulevard, Suite 5<br>Butte, Montana 59701-3127<br>Home Services Installation -  Butte |
| 0431 | 002065.07-01 | 10 South 1st Avenue<br>Yakima, Washington 98902-3413<br>Home Services Installation 2011 - Yakima |
| 0440 | 002064.71-01 | 1060 Drop Off Drive # I439<br>Summerville, South Carolina 29483-7224<br>Home Services Installation -  Summerville |
| 0442 | 002064.86-01 | 10916 Spencer Highway<br>La Porte, Texas 77571-4536<br>Home Services Installation -  La Porte |

 

Account No. 1-33966
Policy No. UB946

## HOME SERVICES LOCATIONS, APPENDIX D

| Location No. | Index No. | Location Description |
|---|---|---|
| 0444 | 002063.30-01 | 1103 East 21st Street, Suite A<br>Yuma, Arizona 85365-2427<br>Home Services Installation - Yuma |
| 0448 | 002064.83-01 | 11220 Rojas Drive, Suite B2<br>El Paso, Texas 79935-5411<br>Home Services Installation - El Paso |
| 0452 | 002063.91-01 | 121 Village Mill Court, Ste 9-121V<br>Owings Mills, Maryland 21117-4934<br>Home Services Installation - Owings Mills |
| 0454 | 002064.22-01 | 1221 Highway 51 Northeast<br>Brookhaven, Mississippi 39601-2008<br>Home Services Installation - Brookhaven |
| 0456 | 043252.34-02 | 12400 Kiln Court<br>Beltsville, Maryland 20705-1320<br>Home Services Installation - Beltsville |
| 0457 | 002064.17-01 | 125 Irwin Drive #2<br>Jefferson City, Missouri 65109-3348<br>Home Services Installation - Jefferson City |
| 0459 | 002063.28-01 | 1300 East Missouri Avenue<br>Phoenix, Arizona 85014-2362<br>Home Services Installation - Phoenix 2 |
| 0471 | 002063.32-01 | 1314 Dupont Court<br>Manteca, California 95336-6004<br>Home Services Installation - Manteca |
| 0472 | 055158.72-12 | 1315 Read Street<br>Evansville, Indiana 47710-2521<br>Home Services Installation - Evansville |
| 0473 | 002064.73-01 | 13228 TN-51 South Atoka<br>Atoka, Tennessee 38004<br>Home Services Installation - Atoka |
| 0474 | 002063.52-01 | 1335 Lynah<br>Garden City, Georgia 31408-3044<br>Home Services Installation - Garden City |
| 0476 | 002064.44-01 | 13435 A Street Omaha<br>Omaha, Nebraska 68144-3658<br>Home Services Installation - Omaha |





Account No. 1-33966
Policy No. UB946

## HOME SERVICES LOCATIONS, APPENDIX D

| Location No. | Index No. | Location Description |
|---|---|---|
| 0479 | 002063.56-01 | 13759 110th Avenue<br>Davenport, Iowa 52804-9034<br>Home Services Installation - Davenport |
| 0482 | 002065.08-01 | 1402 Parkside Drive<br>Madison, Wisconsin 53704-3618<br>Home Services Installation - Madison |
| 0483 | 002064.70-01 | 141 Country Manor Road<br>Piedmont, South Carolina 29673-9727<br>Home Services Installation - Piedmont |
| 0486 | 002063.35-01 | 1429 Highway 50<br>Delta, Colorado 81416-3120<br>Home Services Installation - Delta |
| 0490 | 002064.96-01 | 1495 South Black Ridge Drive, Suite A-140, Ste A-140<br>Saint George, Utah 84770-6098<br>Home Services Installation - St. George |
| 0492 | 002064.80-01 | 1505 Luna Road, Suite 134<br>Carrollton, Texas 75006-6461<br>Home Services Installation - Carrollton |
| 0495 | 001811.17-01 | 15942 Kaplan Avenue<br>City of Industry, California 91744-3109<br>Home Services Installation - City of Industry |
| 0498 | 002065.09-01 | 1643 Arcadian Avenue, Ste 1002<br>Waukesha, Wisconsin 53186-5391<br>Home Services Installation - Waukesha |
| 0500 | 002064.16-01 | 1716 Rudder Industrial Park Drive<br>Fenton, Missouri 63026-2019<br>Home Services Installation - Fenton |
| 0505 | 002064.79-01 | 1809 Drillers Drive<br>Bryan, Texas 77808-1316<br>Home Services Installation - Bryan |
| 0506 | 002064.75-01 | 1900 Brookside Lane<br>Kingsport, Tennessee 37660-6633<br>Home Services Installation - Kingsport |
| 0509 | 002064.18-01 | 1960 East Blaine Street, Suite 100<br>Springfield, Missouri 65803-4586<br>Home Services Installation - Jefferson City |

 

Account No. 1-33966
Policy No. UB946

## HOME SERVICES LOCATIONS, APPENDIX D

| Location No. | Index No. | Location Description |
|---|---|---|
| 0512 | 002064.38-01 | 200C Kale Road<br>New Bern, North Carolina 28562-7055<br>Home Services Installation - New Bern |
| 0516 | 001395.37-03 | 20630 56th Avenue West<br>Lynnwood, Washington 98036-7640<br>Home Services Installation - Lynnwood |
| 0518 | 002064.43-01 | 2105 Avenue East<br>Kearney, Nebraska 68847-5617<br>Home Services Installation - Kearney |
| 0521 | 083791.83-03 | 2150 Boggs Road, Suite 600<br>Duluth, Georgia 30096-5816<br>Home Services Installation - Duluth |
| 0525 | 002064.60-01 | 2216 Southwest 2nd Court Unit 11<br>Redmond, Oregon 97756-7075<br>Home Services Installation - Redmond 2 |
| 0528 | 000517.04-02 | 22515 Heslip Drive<br>Novi, Michigan 48375-4140<br>Home Services Installation - Novi |
| 0533 | 072536.78-08 | 2400 Industrial Lane, Ste 1500<br>Broomfield, Colorado 80020-1693<br>Home Services Installation - Broomfield |
| 0538 | 002064.25-01 | 2590 Sellers Drive<br>Meridian, Mississippi 39301-1749<br>Home Services Installation - Brookhaven |
| 0539 | 002064.90-01 | 2601 Kiphen Road Bldg 300<br>Round Rock, Texas 78665<br>Home Services Installation - Round Rock |
| 0540 | 002063.60-01 | 2646 Corporate Parkway<br>Algonquin, Illinois 60102-2560<br>Home Services Installation - Algonquin |
| 0542 | 002063.41-01 | 273 Spring Creek Road # B8<br>Gypsum, Colorado 81637-8607<br>Home Services Installation - Gypsum |
| 0544 | 076117.13-02 | 2851 Alvarado Street<br>San Leandro, California 94577-5703<br>Home Services Installation - San Leandro |

 

Account No. 1-33966
Policy No. UB946

## HOME SERVICES LOCATIONS, APPENDIX D

| Location No. | Index No. | Location Description |
|---|---|---|
| 0548 | 002063.64-01 | 2915 Gary Drive<br>Plymouth, Indiana 46563-8889<br>Home Services Installation - Plymouth |
| 0557 | 002063.51-01 | 315 Industrial Park Road, Ste C<br>Cartersville, Georgia 30121-5047<br>Home Services Installation - Cartersville |
| 0558 | 072494.81-02 | 3151 South Vaughn Way, Cherry Creek Plaza, Suite 400<br>Aurora, Colorado 80014-3517<br>Home Services - Aurora |
| 0565 | 002063.34-01 | 3459 Astrozon Court<br>Colorado Springs, Colorado 80910-1005<br>Home Services Installation - Colorado Springs 2 |
| 0567 | 002063.44-01 | 36 North Research Drive<br>Pueblo West, Colorado 81007-4418<br>Home Services Installation - Pueblo West |
| 0568 | 002064.91-01 | 3607 Metro Parkway<br>San Antonio, Texas 78247-3501<br>Home Services Installation - San Antonio |
| 0569 | 002064.81-01 | 3622 Apollo Road<br>Corpus Christi, Texas 78413-1905<br>Home Services Installation - Corpus Christi |
| 0572 | 002064.04-01 | 3685 Hagen Drive Southeast<br>Wyoming, Michigan 49548-2340<br>Home Services Installation - Wyoming |
| 0573 | 002064.15-01 | 3707-A Southwest US 40 Highway East Bound<br>Blue Springs, Missouri 64015-4546<br>Home Services Installation - Blue Springs 2 |
| 0580 | 002064.40-01 | 3847 US Highway 421 North<br>Wilmington, North Carolina 28401-9025<br>Home Services Installation - Wilmington |
| 0582 | 002063.90-01 | 3920 Vero Road, Suite C,D,E<br>Halethorpe, Maryland 21227-1517<br>Home Services Installation - Halethorpe, 2011 - Baltimore |
| 0583 | 002064.61-01 | 3925 Southwest 25th Place # Q08<br>Redmond, Oregon 97756-7749<br>Home Services Installation - Redmond |





Account No. 1-33966
Policy No. UB946

## HOME SERVICES LOCATIONS, APPENDIX D

| Location No. | Index No. | Location Description |
|---|---|---|
| 0584 | 002064.47-01 | 3955 West Mesa Vista Avenue<br>Las Vegas, Nevada 89118-2338<br>Home Services Installation - Las Vegas 2 |
| 0586 | 002064.54-01 | 400 West Main Street Unit A<br>Durant, Oklahoma 74701-5000<br>Home Services Installation - Durant |
| 0592 | 002063.57-01 | 4127 - 4174 Northwest Urbandale<br>Des Moines, Iowa 50310<br>Home Services Installation - Des Moines |
| 0593 | 002064.78-01 | 4138 Business Park Drive<br>Amarillo, Texas 79110-4225<br>Home Services Installation - Amarillo |
| 0599 | 002063.89-01 | 45 Engerman Avenue<br>Denton, Maryland 21629-2007<br>Home Services Installation - Denton |
| 0605 | 002064.72-01 | 47083 98th Street, Ste C-138<br>Sioux Falls, South Dakota 57108-8100<br>Home Services Installation - Sioux Falls 2 |
| 0608 | 002064.26-01 | 4803B 29th Avenue<br>Meridian, Mississippi 39305-2675<br>Home Services Installation - Meridian |
| 0609 | 002063.59-01 | 4832 Haroldsen Dr. Unit 8<br>Idaho Falls, Idaho 83401<br>Home Services Installation - Idaho Falls 2 |
| 0612 | 002063.61-01 | 5028 West 67th Street<br>Bedford Park, Illinois 60638-6410<br>Home Services Installation - Bedford Park |
| 0614 | 002064.36-01 | 512 Industrial Avenue<br>Greensboro, North Carolina 27406-4602<br>Home Services Installation - Greensboro |
| 0617 | 002063.70-01 | 525 Blue Sky Parkway<br>Lexington, Kentucky 40509-9456<br>Home Services Installation - Lexington |
| 0620 | 002064.39-01 | 540 Pylon Drive<br>Raleigh, North Carolina 27606-1415<br>Home Services Installation - Raleigh |





Account No. 1-33966
Policy No. UB946

## HOME SERVICES LOCATIONS, APPENDIX D

| Location No. | Index No. | Location Description |
|---|---|---|
| 0621 | 077400.76-01 | 541 Business Park Dr. Unit D, Ste D<br>Medford, Oregon 97504-4188<br>Home Services Installation -  Medford |
| 0625 | 002064.37-01 | 606 Cornerstone Court<br>Hillsborough, North Carolina 27278-8554<br>Home Services Installation -  Hillsborough |
| 0626 | 002064.52-01 | 6106A North Dixie Drive<br>Dayton, Ohio 45414-3302<br>Home Services Installation -  Dayton |
| 0629 | 002063.29-01 | 618 West Flores Street<br>Tucson, Arizona 85705-5438<br>Home Services Installation -  Tucson |
| 0631 | 002063.38-01 | 6500  Stapleton Drive South Unit G, Ste G<br>Denver, Colorado 80216-6601<br>Home Services Installation -  Denver |
| 0633 | 002063.42-01 | 6770 East County Road 18<br>Johnstown, Colorado 80534-4015<br>Home Services Installation -  Johnstown |
| 0638 | 002064.57-01 | 7202 East 38th Street<br>Tulsa, Oklahoma 74145-3230<br>Home Services Installation -  Tulsa |
| 0639 | 072437.60-05 | 7229 South Alton Way # 100<br>Centennial, Colorado 80112-2202<br>Home Services Installation -  Centennial |
| 0641 | 002065.02-01 | 75 Chad Lane<br>Williston, Vermont 05495-8115<br>Home Services Installation -  Williston |
| 0642 | 076680.67-18 | 755 North Nash Street, Ste 100 and 200<br>El Segundo, California 90245-2802<br>Home Services Installation - El Segundo, Warehouse DTV |
| 0644 | 072546.47-03 | 8136 South Grant Way<br>Littleton, Colorado 80122-2726<br>Home Services Installation -  Littleton |
| 0646 | 002064.55-01 | 819 Southeast 2nd Street<br>Lawton, Oklahoma 73501-2412<br>Home Services Installation -  Lawton |




Account No.  1-33966
Policy No.  UB946

## HOME SERVICES LOCATIONS, APPENDIX D

| Location No. | Index No. | Location Description |
|---|---|---|
| 0647 | 002063.93-01 | 83 Walch Drive<br>Portland, Maine 04103-1286<br>Home Services Installation - Portland |
| 0649 | 002064.88-01 | 8506 Valencia Avenue<br>Lubbock, Texas 79424-4926<br>Home Services Installation - Lubbock |
| 0664 | 002064.58-01 | 30655 Highway 34 Southwest<br>Albany, Oregon 97321-9465<br>Home Services Installation - Albany 2 |
| 0667 | 002125.81-01 | 5330 Williams Street Southeast<br>Albuquerque, New Mexico 87105-0811<br>Home Services - Albuquerque |
| 0668 | 002125.83-01 | 9367 Winkler Drive, Unit A & B<br>Houston, Texas 77017-5915<br>Home Services - Houston |
| 0670 | 002125.78-01 | 45 Alamotero Lane<br>Alamogordo, New Mexico 88310-9635<br>Home Services - Alamogordo |
| 0673 | 000000.00 | 4207 Montgomery Highway Ste C59<br>Dothan, Alabama 36303-1586<br>Home Services Installation 2011 -Dothan |
| 0674 | 000000.00 | 803 Labarge Drive<br>Bessemer, Alabama 35022-8321<br>Home Services Installation 2011 -Bessemer |
| 0676 | 000000.00 | 4200 South Caraway Road Ste B123<br>Jonesboro, Arkansas 72404-0651<br>Home Services Installation 2011 -Jonesboro |
| 0678 | 000000.00 | 6644 Highway 260, Ste G14<br>Showlow, Arizona 85901<br>Home Services Installation 2011 -Showlow |
| 0679 | 000000.00 | 7537 West Mountain View Road<br>Peoria, Arizona 85345-6649<br>Home Services Installation - Peoria |
| 0680 | 000000.00 | 1051 West 17th Street<br>Tempe, Arizona 85281-6415<br>Home Services - Tempe |





Account No. 1-33966
Policy No. UB946

## HOME SERVICES LOCATIONS, APPENDIX D

| Location No. | Index No. | Location Description |
|---|---|---|
| 0683 | 000000.00 | 30695 Hill Street<br>Thousand Palms, California 92276-2619<br>Home Services Installation 2011 -Thousand Palms |
| 0684 | 000000.00 | 775 Commercial Street<br>San Jose, California 95112-1409<br>Home Services Installation 2011 -San Jose |
| 0685 | 000000.00 | 35-39 Butte Avenue<br>Randsburg, California 93554<br>Home Services Installation - Randsburg |
| 0686 | 000000.00 | 1055 West Francis Street<br>Ontario, California 91762-6177<br>Home Services - Ontario |
| 0687 | 000000.00 | 7911 Redwood Drive<br>Cotati, California 94931-3032<br>HOME SERVICES -Cotati |
| 0688 | 000000.00 | 2727 South Golden State Boulevard<br>Fresno, California 93725-2328<br>Home Services Installation - Fresno 2 |
| 0689 | 000000.00 | 1821 Old Bayshore Highway<br>Burlingame, California 94010-1201<br>Home Services - Burlingame |
| 0690 | 000000.00 | 15372 Bonanza Road<br>Victorville, California 92392-2410<br>Home Services - Victorville |
| 0691 | 000000.00 | 2990 Myers Street<br>Riverside, California 92503-5524<br>Home Services - Riverside2 |
| 0692 | 000000.00 | 19335 South Laurel Park Road<br>Rancho Dominguez, California 90220-6036<br>Home Services Installation - Rancho Dominguez |
| 0693 | 000000.00 | 755 Commercial Street Ste 3113<br>San Jose, Califomia 95112-1409<br>Home Services Installation - San Jose |
| 0695 | 000000.00 | 11128 Midway Ste 3<br>Chico, California 95928-8240<br>Home Services Installation 2011 -Chico |





Account No. 1-33966
Policy No. UB946

## HOME SERVICES LOCATIONS, APPENDIX D

| Location No. | Index No. | Location Description |
|---|---|---|
| 0696 | 000000.00 | 7518 Carroll Road<br>San Diego, California 92121-2402<br>Home Services Installation 2011 -San Diego |
| 0697 | 000000.00 | 1680 Sunflower Avenue<br>Costa Mesa, California 92626-1513<br>Home Services - Costa Mesa |
| 0698 | 000000.00 | 29597 US Highway 63<br>Brush, Colorado 80723<br>Home Services Installation 2011 -Brush |
| 0699 | 000000.00 | 55 North Silicon Drive<br>Pueblo West, Colorado 81007-4443<br>Home Services Installation 2011 -Pueblo West |
| 0701 | 000000.00 | 3825 East Mulberry Street Unit 10<br>Fort Collins, Colorado 80524-8574<br>Home Services Installation - Fort Collins |
| 0707 | 000000.00 | 4017 Northwest Passage<br>Tallahassee, Florida 32303-7816<br>Home Services - Tallahassee |
| 0710 | 000000.00 | 4209 Milgen Road Ste 5<br>Columbus, Georgia 31907-1265<br>Home Services Installation 2011 -Columbus |
| 0711 | 000000.00 | 4375 Interstate Drive<br>Macon, Georgia 31210-6811<br>Home Services - Macon |
| 0713 | 000000.00 | 16-123 Lilii Street Ste 3<br>Keaau, Hawaii 96749-8000<br>Home Services - Keaau |
| 0715 | 000000.00 | 710 32nd Avenue Southwest<br>Cedar Rapids, Iowa 52404-3908<br>Home Services - Cedar Rapids |
| 0716 | 000000.00 | 8075 East Executive Drive<br>Nampa, Idaho 83687-3827<br>Home Services - Nampa |
| 0717 | 000000.00 | 1245 Hollipark Drive Unit 40181<br>Idaho Falls, Idaho 83401-6217<br>Home Services Installation - Idaho Falls |



Account No. 1-33966
Policy No. UB946

## HOME SERVICES LOCATIONS, APPENDIX D

| Location No. | Index No. | Location Description |
|---|---|---|
| 0719 | 000000.00 | 692 Grange Lane<br>Twin Falls, Idaho 83301-5390<br>Home Services Installation 2011 -Twin Falls |
| 0721 | 000000.00 | 717 North 17th Street<br>Belleville, Illinois 62226-6552<br>Home Services - Belleville |
| 0726 | 000000.00 | 2175 Manton Drive<br>Covington, Louisiana 70433-1002<br>Home Services Installation 2011 -Covington |
| 0728 | 000000.00 | 8965 Highway 36 Ste 1<br>Hannibal, Missouri 63401-6739<br>Home Services Installation 2011 -Hannibal |
| 0729 | 000000.00 | 1550 Wall Street Ste 14B<br>Saint Charles, Missouri 63303-3524<br>Home Services Installation 2011 -St. Charles |
| 0730 | 000000.00 | 1012 North Farm Road 123 Ste A<br>Springfield, Missouri 65802-6616<br>Home Services Installation - Springfield |
| 0731 | 000000.00 | 1932 Popps Ferry Road Ste F650<br>Biloxi, Mississippi 39532-2016<br>Home Services Installation 2011 -Biloxi |
| 0733 | 000000.00 | 17 Pioneer Road East<br>Hattiesburg, Mississippi 39402-8657<br>Home Services - Hattiesburg |
| 0735 | 000000.00 | 4808 Great River Drive<br>Meridian, Mississippi 39305-2664<br>Home Services Installation 2011 -Meridian |
| 0736 | 000000.00 | 1138 D L Collums Drive<br>Tupelo, Mississippi 38801-0804<br>Home Services Installation 2011 -Tupelo |
| 0737 | 000000.00 | 4275 Industrial Drive<br>Jackson, Mississippi 39209-2748<br>Home Services Installation 2011 -Jackson |
| 0739 | 000000.00 | 3655 Old Grant Creek Road, Ste B27 & B34<br>Missoula, Montana 59808<br>Home Services Installation 2011 -Missoula |





Account No. 1-33966
Policy No. UB946

## HOME SERVICES LOCATIONS, APPENDIX D

| Location No. | Index No. | Location Description |
|---|---|---|
| 0740 | 000000.00 | 2825 Stockyard Road Ste C2<br>Missoula, Montana 59808-1502<br>Home Services Installation - Missoula 2 |
| 0741 | 000000.00 | 120 Cherry Creek Street Ste 28<br>Glasgow, Montana 59230-2844<br>Home Services Installation 2011 -Glasgow |
| 0742 | 000000.00 | 29 Business Park Road Ste 246<br>Livingston, Montana 59047-9261<br>Home Services Installation 2011 -Livingston |
| 0743 | 000000.00 | 2605 Hwy 87 North<br>Billings, Montana 59105<br>Home Services Installation - Billings |
| 0744 | 000000.00 | 6605 West WT Harris Boulevard Ste C216<br>Charlotte, North Carolina 28269-1582<br>Home Services Installation - Charlotte |
| 0745 | 000000.00 | 3333 East Broadway Avenue Ste 1101<br>Bismarck, North Dakota 58501-3371<br>Home Services Installation 2011 -Bismarck |
| 0746 | 000000.00 | 521 15th Street N, Prairie Commercial Center, Bldg C<br>Fargo, North Dakota 58102<br>Home Services Installation - Fargo |
| 0747 | 000000.00 | 1400 East 4th Street Ste 410<br>North Platte, Nebraska 69101-4301<br>Home Services Installation 2011 -North Platte |
| 0748 | 000000.00 | 520 Airport Drive Southwest Ste A1<br>Albuquerque, New Mexico 87121-2557<br>Home Services Installation - Albuquerque |
| 0749 | 000000.00 | 50 East Greg Street Ste 100<br>Sparks, Nevada 89431-6595<br>HOME SERVICES -Sparks |
| 0751 | 000000.00 | 206 East Front Street<br>Findlay, Ohio 45840-4815<br>Home Services Installation - Findlay |
| 0752 | 000000.00 | 700 Rockwell Avenue<br>Findlay, Ohio 45840-2713<br>Home Services Installation - Findlay 2 |



Account No. 1-33966
Policy No. UB946

## HOME SERVICES LOCATIONS, APPENDIX D

| Location No. | Index No. | Location Description |
|---|---|---|
| 0755 | 000000.00 | 1601 East I-240 Service Road<br>Oklahoma City, Oklahoma 73135<br>Home Services - Oklahoma City |
| 0756 | 000000.00 | 1320 Southeast Armour Road Ste A4<br>Bend, Oregon 97702-4405<br>Home Services Installation 2011 -Bend |
| 0758 | 000000.00 | 710 Buckner Road Ste A<br>Columbia, South Carolina 29203-3658<br>Home Services Installation -  Columbia 2 |
| 0759 | 000000.00 | 3505 North 1st Avenue<br>Sioux Falls, South Dakota 57104-0706<br>Home Services Installation -  Sioux Falls |
| 0760 | 000000.00 | 1535 Heil Quaker Boulevard<br>La Vergne, Tennessee 37086-3539<br>Home Services Installation 2011 -LaVergne |
| 0761 | 000000.00 | 207 Wayne Street<br>Columbia, Tennessee 38401-4526<br>Home Services Installation 2011 -Columbia |
| 0762 | 000000.00 | 710-A  Buckner Road<br>Columbia, Tennessee 38401<br>Home Services Installation -  Columbia |
| 0763 | 000000.00 | 10159 Gallows Point Drive<br>Knoxville, Tennessee 37931-3115<br>Home Services - Knoxville |
| 0764 | 000000.00 | 341 West Grundy Street<br>Tullahoma, Tennessee 37388-3333<br>Home Services - Tullahoma |
| 0770 | 000000.00 | 1185 North 1210 West<br>St George, Utah 84770-4851<br>Home Services Installation 2011 -St. George |
| 0771 | 000000.00 | 3120 East College Way Ste A015<br>Mount Vernon, Washington 98273-8987<br>Home Services Installation 2011 -Mount Vernon |
| 0772 | 000000.00 | 2382 North Highway # 141<br>Colville, Washington 99114-8649<br>Home Services Installation 2011 -Colville |





Account No. 1-33966
Policy No. UB946

## HOME SERVICES LOCATIONS, APPENDIX D

| Location No. | Index No. | Location Description |
|---|---|---|
| 0773 | 000000.00 | 213 Industrial Boulevard<br>BELLEVUE, Washington 98006<br>Home Services Installation – Bellevue 2 |
| 0774 | 000000.00 | 1401 North Oak Harbor Street Ste F10<br>Oak Harbor, Washington 98277-3525<br>Home Services Installation 2011 -Oak Harbor |
| 0775 | 000000.00 | 9232 West Clearwater Drive<br>Kennewick, Washington 99336-8622<br>Home Services - Kennewick |
| 0776 | 000000.00 | 5484 Barrett Road # 257-262<br>Ferndale, Washington 98248-9408<br>Home Services Installation 2011 -Ferndale |
| 0777 | 000000.00 | 1050 Glory Road<br>Green Bay, Wisconsin 54304-5667<br>Home Services Installation – Green Bay |
| 0778 | 000000.00 | 3700 Falcon Drive<br>Wausau, Wisconsin 54401-9741<br>Home Services Installation – Wausau |
| 0780 | 000000.00 | 51 Patriot Court Ste O-2<br>Evanston, Wyoming 82930-3812<br>Home Services Installation 2011 -Evanston |



Account No. 1-33966
Policy No. UB946

## SUPPLEMENTAL UNITED STATES
## CERTIFIED ACT OF TERRORISM ENDORSEMENT

**This Endorsement is applicable to all insured Locations in the United States, its territories and possessions and the Commonwealth of Puerto Rico.**

**Coverage for "Certified Act of Terrorism" Under The Terrorism Risk Insurance Act of 2002, as amended.**

In consideration of a premium charged of USD302,000, this Policy, subject to the terms and conditions therein and in this Endorsement, covers direct physical loss or damage to insured property and any resulting TIME ELEMENT loss, as provided in the TIME ELEMENT section of the Policy, caused by or resulting from a Certified Act of Terrorism as defined herein.

Notwithstanding anything contained elsewhere in this Policy, any exclusion or limitation of terrorism in this Policy and any endorsement attached to and made a part of this Policy, is hereby amended to the effect that such exclusion or limitation does not apply to a "Certified Act of Terrorism" as defined herein. This amendment does not apply to any limit of liability for a Certified Act of Terrorism, if any, stated under the LIMITS OF LIABILITY clause of the DECLARATIONS section of this Policy.

With respect to any one or more Certified Act(s) of Terrorism, this Company will not pay any amounts for which the Company is not responsible under the terms of the Terrorism Risk Insurance Act of 2002 (including subsequent action of Congress pursuant to the Act) which includes a provision stating that if the aggregate insured losses exceed USD100,000,000,000 during any program year, neither the United States Government nor any insurer that has met its insurer deductible shall be liable for the payment of any portion of the amount of such losses that exceed USD100,000,000,000. If the aggregate insured losses for all insurers exceed USD100,000,000,000, your coverage may be reduced.

The coverage provided under this Endorsement for "Certified" losses caused by acts of terrorism will be partially reimbursed by the United States Government under a formula established by Federal Law. Under this formula, the United States pays 85% of covered terrorism losses exceeding a statutorily established retention by the insurer referenced in this Policy. The premium charged for this coverage is provided above.

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Endorsement or the Policy.

The coverage provided by this Endorsement only applies to a Certified Act of Terrorism.

Reference and Application: The following term(s) means:

Certified Act of Terrorism:

A "Certified Act of Terrorism" means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State, and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002 as amended and extended in 2005 and in 2007. The criteria contained in that Act for a "Certified Act of Terrorism" include the following:

**Form FMG7308**    Page 1 of 2    Edition January 2008

a.  The act resulted in aggregate losses in excess of USD5,000,000; and

b.  The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

EXHIBIT "B"

 **ORIGINAL** 

| ATTORNEY OR PARTY WITHOUT ATTORNEY (name and Address) | FOR COURT USE ONLY |
|---|---|
| KIRK A. PASICH  (SBN 94242)<br>MICHAEL S. GEHRT  (SBN 246450)<br>DICKSTEIN SHAPIRO LLP<br>2049 CENTURY PARK EAST, SUITE 700<br>LOS ANGELES, CA  90067 | **FILED**<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES<br><br>OCT 2 3 2014<br><br>SHERRI R. CARTER  Officer/Clerk<br>BY _____ Deputy<br>Charlotte Robinson<br>D71 |
| TELEPHONE NO.: (310) 772-8300      FAX NO. (Optional): | |
| E-MAIL ADDRESS (Optional) : | |
| ATTORNEY FOR (Name):  PLAINTIFF | |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES | |
|---|---|
| STREET ADDRESS: 111 N. HILL STREET | |
| MAILING ADDRESS: | |
| CITY AND ZIP CODE: LOS ANGELES  90012 | |
| BRANCH NAME: CENTRAL DISTRICT | |

| PLAINTIFF/PETITIONER: DIRECTV, A DELAWARE CORPORATION<br><br>DEFENDANT/RESPONDENT: FACTORY MUTUAL INSURANCE COMPANY, ET AL. | CASE NUMBER: BC560150 |
|---|---|
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: 917246 MV |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of :
   - a.☒  Summons
   - b.☒  Complaint
   - c ☐  Alternative Dispute Resolution (ADR) package
   - d ☒  Civil Case Cover Sheet *(served in complex cases only)*
   - e ☐  cross-complaint
   - f. ☒  other *(specify documents):* CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION; NOTICE OF CASE ASSIGNMENT

3. a. Party served: *(specify name of party as shown on documents served):*
      FACTORY MUTUAL INSURANCE COMPANY, A RHODE ISLAND CORPORATION
   b. Person served (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made)*(specify name and relationship to the party named in item 3a):*
      DAVID R. THOMAN, AGENT FOR SERVICE OF PROCESS

4. Address where the party was served: 6320 CANOGA AVE., STE. 1100
      WOODLAND HILLS, CA  91367

5. I served the party (check proper box)
   - a. ☒ **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):* OCTOBER 20, 2014  (2) at: *(time)* 3:40 PM

   - b. ☐ **by substituted service.** On *(date):*           at: *(time)*           . I left the documents listed in item 2 with or in the presence of (name and title or relationship to the person indicated in item 3):
      - (1) ☐  **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.
      - (2) ☐  **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.
      - (3) ☐  **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.
      - (4) ☐  I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date):*         *(city):*         or ☐ a declaration of mailing is attached.
      - (5) ☐  I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

| PLANTIFF/PETITIONER: DIRECTV, A DELAWARE CORPORATION | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: FACTORY MUTUAL INSURANCE COMPANY, ET AL. | BC560150 |

5.  c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    **(1)** (date):         **(1)** (city):

    **(3)** ☐ with two copies of the *Notice and Acknowledgment of Receipt* (form 982(a)(4)) and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt *(form 982(a)(4).)* (Code Civ. Proc., § 415.30.)

    **(4)** ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d. ☐ **by other means** (specify means of service and authorizing code section):

      ☐   Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

  a. ☐ as an individual defendant

  b. ☐ as the person sued under the fictitious name of (specify):

  c. ☒ on behalf of (specify): FACTORY MUTUAL INSURANCE COMPANY, A RHODE ISLAND CORPORATION

    under the following Code of Civil Procedure section:

    ☒ 416.10 (corporation)             ☐ 415.95 (business organization, form unknown)

    ☐ 416.20 (defunct corporation)         ☐ 416.60 (minor)

    ☐ 416.30 (joint stock company/association)   ☐ 416.70 (ward or conservatee)

    ☐ 416.40 (association or partnership)     ☐ 416.90 (authorized person)

    ☐ 416.50 (public entity)            ☐ 415.46 (occupant)

                          ☐ other:

7.  **Person who served papers**

  a.   Name: OMAR SHAMMOUT

  b.   Address: 800 W. 1ST STREET, SUITE 200-B
       LOS ANGELES, CALIFORNIA 90012

  c.   Telephone number: (213) 607-9000

  d.   The fee for service was: $

  e.   I am:

    **(1)** ☐ not a registered California process server.

    **(2)** ☐ exempt from registration under Business and Professions Code section 22350(b).

    **(3)** ☒ registered California process server:

      **(i)** ☐ owner  ☐ Employee  ☒ independent contractor.

      **(ii)** ☒ Registration No.:6359

      **(iii)** ☒ County: LOS ANGELES

8. ☒ I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    Or

9. ☐ I am a California sheriff or marshal and I certify that the foregoing is true and correct.

Date: OCTOBER 20, 2014

OMAR SHAMMOUT

_____
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHALL)

_____
(SIGNATURE)

Page 2 of 2

Form Adopted for Mandatory Use
Judicial Council of California
POS-010 [Rev. January 1, 2007]

**PROOF OF SERVICE OF SUMMONS**

Code of Civil Procedure § 417.10

**PROOF OF SERVICE**
*DIRECTV v. Factory Mutual Insurance Company, et al.*
**LASC Case No. BC560150**

STATE OF CALIFORNIA          )
                             ) ss
COUNTY OF LOS ANGELES        )

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the action. My business address is 2049 Century Park East, Suite 700, Los Angeles, California 90067-3109. On October 23, 2014, I served the document(s) on the interested parties in this action as follows:

**PROOF OF SERVICE OF SUMMONS**

By placing ☐ the original ☑ a true copy thereof enclosed in a sealed envelope addressed as follows:

David R. Thoman
Agent for Service of Process For
Factory Mutual Insurance Company
6320 Canoga Avenue, Suite 1100
Woodland Hills, CA 91367

☐  **BY E-MAIL SERVICE:** By agreement of the parties, e-mail shall equal personal service.

☑  **BY MAIL:** The envelope was mailed with postage thereon fully prepaid. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after service of deposit for mailing in affidavit.

☐  **BY OVERNIGHT DELIVERY:** By causing such envelope to be deposited or delivered in a box or other facility regularly maintained by Federal Express authorized to receive documents, or delivering to a courier or driver authorized by said express service carrier to receive documents, the copy of the foregoing document in a sealed envelope designated by the express service carrier, addressed as stated above, with fees for overnight (next business day) delivery paid or provided for and causing such envelope to be delivered by said express service carrier on [Insert Date].

☐  **BY PERSONAL SERVICE:** I caused to be delivered the foregoing document(s) to the addressee(s) specified.

☑  [State] I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on October 23, 2014, at Los Angeles, California.

*Vaneta S. Birtha*
Vaneta D. Birtha

DICKSTEIN
SHAPIRO LLP

DOCSLA-123434 v1

EXHIBIT "C"

Scott G. Johnson, Bar No. 153735
SGJohnson@rkmc.com
Amy M. Churan, Bar No. 216932
AMChuran@rkmc.com
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
2049 Century Park East, 34th Floor
Los Angeles, CA 90067-3206
Telephone:    310-552-0130
Facsimile:    310-229-5800

Attorneys for Defendant
FACTORY MUTUAL INSURANCE COMPANY

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

NOV 0 6 2014

Sherri R. Carter, Executive Officer/Clerk
By Shaunya Bolden, Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

| | |
|---|---|
| DIRECTV, A Delaware corporation | Case No. BC 560150 |
| Plaintiff, | [Assigned for all purposes to Suzanne G. Bruguera, Judge – Dept. 71] |
| v. | **FACTORY MUTUAL INSURANCE COMPANY'S ANSWER TO COMPLAINT** |
| FACTORY MUTUAL INSURANCE COMPANY, a Rhode Island corporation and DOES 1 through 10, | Complaint filed: Oct. 9, 2014 |
| Defendants. | |

Defendant Factory Mutual Insurance Company ("FM") answers or otherwise responds to the Amended Complaint of Plaintiff DIRECTV as follows:

**GENERAL DENIAL**

Pursuant to Section 431.30 of the California Code of Civil Procedure, FM hereby denies generally each and every allegation of the Amended Complaint filed by Plaintiff DIRECTV. FM further denies specifically that Plaintiff is entitled to recover any damages, costs or attorneys' fees.

///

///

///

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

85222775.1

Factory Mutual Insurance Company's
Answer to Complaint

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

1.      The Complaint, and each and every claim therein, fails to state facts sufficient to constitute a cause of action upon which relief may be granted against FM.

### SECOND AFFIRMATIVE DEFENSE

2.      Plaintiff cannot meets its burden of proving coverage under the following provision of the FM policy:

**B.      CONTINGENT TIME ELEMENT EXTENDED**

This Policy covers the Actual Loss Sustained and EXTRA EXPENSE incurred by the Insured during the PERIOD OF LIABILITY directly resulting from physical loss or damage of the type insured to property of this type insured at Contingent Time Element Locations located within the TERRITORY of this Policy.

\* \* \*

3)      References and Application.  The following term(s) whenever used in this Policy means:

a)      Contingent Time Element Location:

(i)      Any Location:

(a)      of a direct supplier, contract manufacturer or contract service provider to the Insured.

(b)      of any company under a royalty, licensing fee or commission agreement with the Insured.

For this coverage to apply, there must be physical loss or damage to property of Plaintiff's direct suppliers. There was no physical loss or damage to property of Plaintiff's direct suppliers (Technicolor Connected Home USA, LLC, Pace Americas Inc., Samsung Electronics America, Inc., and Humex USA, Inc.).  Western Digital, whose property was alleged to be damaged, was not a direct supplier because it did not supply hard drives directly to Plaintiff. Rather, Western Digital supplied hard drives to Plaintiff's direct suppliers, and, thus, Western Digital was an

1   indirect supplier to Plaintiff. There is no coverage under this provision where there is physical

2   loss or damage to property of Plaintiff's indirect suppliers.

### THIRD AFFIRMATIVE DEFENSE

3.   Plaintiff's claim, if covered, is subject to the following deductible provision:

**12.   DEDUCTIBLES**

In each case of loss covered by the Policy, the Company will be liable only if the Insured sustains a loss, including any TIME ELEMENT loss, in a single Occurrence greater than the applicable deductible specified below, and only for its share of that greater amount.

* * *

D.   Contingent Time Element Location

USD2,500,000 per Occurrence. However, when the loss results from Wind and/or Flood such loss shall be subject to its respective deductible(s) and shall apply at each Contingent Time Element Location where the physical damage occurs as follows:

1)   Flood

USD 2,500,000 Time Element, per Location.

### FOURTH AFFIRMATIVE DEFENSE

4.   There may be other affirmative defenses that would be applicable to Plaintiff's claims.  If it is hereafter determined that any additional defenses are applicable, FM reserves the right to assert such affirmative defenses.

WHEREFORE, FM prays for relief as follows:

(1)   That Plaintiff take nothing by way of its Complaint;

(2)   That FM be awarded costs of suit; and

(3)   That FM be awarded such other and further relief as the Court deems just and proper.

///

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1    Dated:  November 6, 2014          ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

2                                      By:  _____

3                                           Scott G. Johnson

4                                      Attorneys for Defendant
                                       **FACTORY MUTUAL INSURANCE**
5                                      **COMPANY**

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

85222775.1                             - 4 -          Factory Mutual Insurance Company's
                                                       Answer to Complaint

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

## PROOF OF SERVICE

I, Barbara I. Beringer, declare:

I am a citizen of the United States and employed in Los Angeles County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 2049 Century Park East, Suite 3400, Los Angeles, California 90067-3208. On November 6, 2014, I served a copy of the within document(s): **FACTORY MUTUAL INSURANCE COMPANY'S ANSWER TO COMPLAINT**

☐   by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

√   by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, the United States mail at Los Angeles, California addressed as set forth below.

☐   by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

Kirk A. Pasich                          Tel:  (310) 772-8300
Michael S. Gehrt                        Fax: (310) 772-8301
DICKSTEIN SHAPIRO LLP                   E-mail addresses:
2049 Century Park East, Suite 700       pasichk@dicksteinshapiro.com
Los Angeles, CA 90067-3109              gehrtm@dicksteinshapiro.com

*Attorneys for Plaintiff*
DIRECTV

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on November 6, 2014, at Los Angeles, California.

*Barbara I. Beringer*
Barbara I. Beringer

85344887.1

EXHIBIT "D"

## Case Summary

Please make a note of the Case Number.

<u>Click here to access document images for this case.</u>
If this link fails, you may go to the Case Document Images site and search using the case number displayed on this page.

Case Number: BC560150
DIRECTV VS FACTORY MUTUAL INS CO

Filing Date: 10/09/2014
Case Type: Ins Coverage (not Complex) (General Jurisdiction)
Status: Pending

Future Hearings

None

<u>Documents Filed</u> | <u>Proceeding Information</u>

Parties

DICKSTEIN SHAPIRO LLP - Attorney for Plaintiff/Petitioner

DIRECTV - Plaintiff/Petitioner

DOES 1 THROUGH 10 - Defendant/Respondent

FACTORY MUTUAL INSURANCE CO. - Defendant/Respondent

<u>Case Information</u> | <u>Party Information</u> | <u>Proceeding Information</u>

Documents Filed (Filing dates listed in descending order)

**10/30/2014** Notice-Case Management Conference
Filed by Clerk

**10/23/2014** Proof of Service
Filed by Attorney for Plaintiff/Petitioner

**10/09/2014** Complaint

<u>Case Information</u> | <u>Party Information</u> | <u>Documents Filed</u>

Proceedings Held (Proceeding dates listed in descending order)
None

<u>Case Information</u> | <u>Party Information</u> | <u>Documents Filed</u> | <u>Proceeding Information</u>

**PROOF OF SERVICE**

I, Barbara I. Beringer, declare:

I am a citizen of the United States and employed in Los Angeles County, California.  I am over the age of eighteen years and not a party to the within-entitled action.  My business address is 2049 Century Park East, Suite 3400, Los Angeles, California 90067-3208.  On November 7, 2014, I served a copy of the within document(s):  **NOTICE OF REMOVAL OF ACTION UNDER 28 USC § 1441(b) – (DIVERSITY)**

√    by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below.

☐    by placing the document(s) listed above in a sealed _____ envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a <u>Delivery Service</u> agent for delivery.

☐    by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

| | |
|---|---|
| Kirk A. Pasich | Tel:   (310) 772-8300 |
| Michael S. Gehrt | Fax:   (310) 772-8301 |
| DICKSTEIN SHAPIRO LLP | E-mails: |
| 2049 Century Park East, Suite 700 | pasichk@dicksteinshapiro.com |
| Los Angeles, CA 90067-3109 | gehrtm@dicksteinshapiro.com |

*Attorneys for Plaintiff*
DIRECTV

I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made. Executed on November 7, 2014, at Los Angeles, California.

*Barbara I. Beringer*
Barbara I. Beringer

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET



| I. (a) PLAINTIFFS ( Check box if you are representing yourself ☐ ) | DEFENDANTS ( Check box if you are representing yourself ☐ ) |
|---|---|
| DIRECTV | FACTORY MUTUAL INSURANCE COMPANY |

| (b) County of Residence of First Listed Plaintiff   Los Angeles, CA | County of Residence of First Listed Defendant |
|---|---|
| (EXCEPT IN U.S. PLAINTIFF CASES) | (IN U.S. PLAINTIFF CASES ONLY) |

| (c) Attorneys (Firm Name, Address and Telephone Number) If you are representing yourself, provide the same information. | (c) Attorneys (Firm Name, Address and Telephone Number) If you are representing yourself, provide the same information. |
|---|---|
| Kirk A. Pasich (SBN 94242) and Michael S. Gehrt (SBN 246450), Dickstein Shapiro, LLP, 2049 Century Park East, Suite 700, Los Angeles, CA 90067, (310) 772-8300 | Scott G. Johnson (SBN 153735) and Amy M. Churan (SBN 216932), Robins, Kaplan, Miller & Ciresi LLP, 2049 Century Park East, Suite 3400, Los Angeles, CA 90067, (310) 552-0130 |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff
☐ 2. U.S. Government Defendant
☐ 3. Federal Question (U.S. Government Not a Party)
☒ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1. Original Proceeding
☒ 2. Removed from State Court
☐ 3. Remanded from Appellate Court
☐ 4. Reinstated or Reopened
☐ 5. Transferred from Another District (Specify)
☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes  ☐ No   (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No   ☒ **MONEY DEMANDED IN COMPLAINT:** $ 23,000,000

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Plaintiff alleges claims for breach of contract and declaratory relief. Defendant removes pursuant to 28 U.S.C. section 1441(b).

**VII. NATURE OF SUIT** (Place an X in one box only).

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☒ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **TORTS PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | ☐ 196 Franchise | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | **REAL PROPERTY** | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 210 Land Condemnation | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/ Accommodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 220 Foreclosure | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | ☐ 230 Rent Lease & Ejectment | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

| FOR OFFICE USE ONLY: | Case Number: | CV14-08673 | |
|---|---|---|---|
| CV-71 (06/14) | | CIVIL COVER SHEET | Page 1 of 3 |

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**VIII. VENUE:** Your answers to the questions below will determine the division of the Court to which this case will be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| QUESTION A: Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| ☒ Yes ☐ No | ☒ Los Angeles, Ventura, Santa Barbara, or San Luis Obispo | Western |
| If "no, " skip to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question E, below, and continue from there. | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | Eastern |

| QUESTION B: Is the United States, or one of its agencies or employees, a PLAINTIFF in this action? | B.1. Do 50% or more of the defendants who reside in the district reside in Orange Co.? *check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
|---|---|---|
| ☐ Yes ☒ No | | ☐ NO. Continue to Question B.2. |
| | B.2. Do 50% or more of the defendants who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.) *check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| If "no," skip to Question C. If "yes," answer Question B.1, at right. | | ☐ NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION C: Is the United States, or one of its agencies or employees, a DEFENDANT in this action? | C.1. Do 50% or more of the plaintiffs who reside in the district reside in Orange Co.? *check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
|---|---|---|
| ☐ Yes ☒ No | | ☐ NO. Continue to Question C.2. |
| | C.2. Do 50% or more of the plaintiffs who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.) *check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| If "no," skip to Question D. If "yes," answer Question C.1, at right. | | ☐ NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION D: Location of plaintiffs and defendants? | A. Orange County | B. Riverside or San Bernardino County | C. Los Angeles, Ventura, Santa Barbara, or San Luis Obispo County |
|---|---|---|---|
| Indicate the location(s) in which 50% or more of *plaintiffs who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☒ |
| Indicate the location(s) in which 50% or more of *defendants who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☐ |

| D.1. Is there at least one answer in Column A? | D.2. Is there at least one answer in Column B? |
|---|---|
| ☐ Yes ☒ No | ☐ Yes ☒ No |
| If "yes," your case will initially be assigned to the SOUTHERN DIVISION. | If "yes," your case will initially be assigned to the EASTERN DIVISION. |
| Enter "Southern" in response to Question E, below, and continue from there. | Enter "Eastern" in response to Question E, below. |
| If "no," go to question D2 to the right. ➡ | If "no," your case will be assigned to the WESTERN DIVISION. Enter "Western" in response to Question E, below. ⬇ |

| QUESTION E: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, C, or D above: ➡ | Western |

| QUESTION F: Northern Counties? | | |
|---|---|---|
| Do 50% or more of plaintiffs or defendants in this district reside in Ventura, Santa Barbara, or San Luis Obispo counties? | ☐ Yes | ☒ No |

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**IX(a). IDENTICAL CASES:** Has this action been previously filed **in this court?**  ☒ NO   ☐ YES

If yes, list case number(s): _____

**IX(b). RELATED CASES:** Is this case related (as defined below) to any cases previously filed **in this court?**  ☒ NO   ☐ YES

If yes, list case number(s): _____

Civil cases are related when they:

☐ A. Arise from the same or closely related transactions, happening, or event;

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges.

Check all boxes that apply. That cases may involve the same patent, trademark, or copyright is not, in itself, sufficient to deem cases related.

**X. SIGNATURE OF ATTORNEY
(OR SELF-REPRESENTED LITIGANT):** _____   DATE: November 7, 2014

**Notice to Counsel/Parties:** The submission of this Civil Cover Sheet is required by Local Rule 3-1. This Form CV-71 and the information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. For more detailed instructions, see separate instruction sheet (CV-071A).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |

**ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**
ATTORNEYS AT LAW
LOS ANGELES

## PROOF OF SERVICE

I, Barbara I. Beringer, declare:

I am a citizen of the United States and employed in Los Angeles County, California.  I am over the age of eighteen years and not a party to the within-entitled action.  My business address is 2049 Century Park East, Suite 3400, Los Angeles, California 90067-3208.  On November 7, 2014, I served a copy of the within document(s):  **CIVIL CASE COVER SHEET**

√   by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below.

☐   by placing the document(s) listed above in a sealed _____ envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a <u>Delivery Service</u> agent for delivery.

☐   by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

Kirk A. Pasich                          Tel:    (310) 772-8300
Michael S. Gehrt                        Fax:    (310) 772-8301
DICKSTEIN SHAPIRO LLP                    E-mails:
2049 Century Park East, Suite 700        pasichk@dicksteinshapiro.com
Los Angeles, CA 90067-3109               gehrtm@dicksteinshapiro.com

*Attorneys for Plaintiff*
DIRECTV

I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made. Executed on November 7, 2014, at Los Angeles, California.

*Barbara I. Beringer*
Barbara I. Beringer