Scott G. Johnson, Bar No. 153735
sjohnson@RobinsKaplan.com
Amy M. Churan, Bar No. 216932
achuran@RobinsKaplan.com
ROBINS KAPLAN LLP
2049 Century Park East, Suite 3400
Los Angeles, CA  90067-3208
Telephone:   310-552-0130
Facsimile:    310-229-5800

A. Elizabeth Burnett (pro hac vice)
EBurnett@RobinsKaplan.com
ROBINS KAPLAN LLP
800 LaSalle Avenue
Minneapolis, MN 55402-2015
Telephone: 612-349-8500
Facsimile: 612-339-4181

Attorneys for Defendant,
FACTORY MUTUAL INSURANCE COMPANY

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIRECTV,<br><br>    Plaintiff,<br><br>v.<br><br>FACTORY MUTUAL INSURANCE COMPANY, et al.<br><br>    Defendant. | Case No.  2:14-cv-08673-AB-MAN<br><br>**FACTORY MUTUAL INSURANCE COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**<br><br>Hon. André Birotte Jr.<br><br>Date:  December 7, 2015<br>Time:  10:00 a.m.<br>Courtroom:  4 |

# TABLE OF CONTENTS

**Page**

A.   Introduction ............................................................................................. 1

B.   Statement of Material Facts .................................................................... 1

   1.   DIRECTV ...................................................................................... 1

   2.   The FACTORY MUTUAL Insurance Coverage.............................. 2

   3.   The Thailand Flood and the Subsequent Insurance Claim ............ 4

C.   Legal Argument ....................................................................................... 6

   1.   The Interpretation of an Insurance Policy is a Questions of Law Appropriate for Resolution on Summary Judgment. ........................... 6

   2.   Terms in an Insurance Contracts are Interpreted Using the Plain and Ordinary Meaning as Understood by a Layperson. ....................... 7

   3.   The Contingent Time Element Coverage Does Not Apply Because There was No Damage to Property of DIRECTV's Direct Suppliers, Contract Manufacturers, or Contract Service Providers. ................................................................................................ 8

   4.   There is No Coverage for DIRECTV's Mitigation Expenses Because There is No Coverage for the Losses DIRECTV Sought to Mitigate. ........................................................................................ 17

D.   Conclusion .............................................................................................. 18

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AIU Insurance Co. v. Superior Court*,
   51 Cal. 3d 807, 274 Cal. Rptr. 820, 799 P.2d 1253 (1990) ..................................7

*Archer-Daniels-Midland Co. v. Phoenix Assurance Co.*,
   936 F. Supp. 534 (S.D. Ill. 1996) .................................................... 12, 13

*Bhan v. NME Hospitals., Inc.*,
   669 F. Supp. 998 (E.D. Cal. 1987) ........................................................9

*Big 5 Sporting Goods Corp. v. Zurich American Insurance Co.*,
   957 F. Supp. 2d 1135 (C.D. Cal. 2013) ..................................................6

*City of Laguna Beach v. Mead Reinsurance Corp.*,
   226 Cal. App. 3d 822, 276 Cal. Rptr. 438 (1990) ......................... 8, 18

*Crane v. State Farm Fire & Casualty Co.*,
   5 Cal. 3d 112, 95 Cal. Rptr. 513, 485 P.2d 1129 (1971) .....................7

*DirecTV, Inc. v. Webb*,
   545 F.3d 837 (9th Cir. 2008) ................................................................9

*First American Title Insurance Co. v. XWarehouse Lending Corp.*,
   177 Cal. App. 4th 106, 98 Cal. Rptr. 3d 801 (2009) ...........................7

*Hameid v. National Fire Insurance of Hartford*,
   31 Cal. 4th 16, 1 Cal. Rptr. 3d 401, 71 P.3d 761 (2003)......................7

*In re Furnace*,
   185 Cal. App. 4th 649, 110 Cal. Rptr. 3d 820 (2010) .........................9

*Millennium Inorganic Chemicals. Ltd v. National Union Fire
   Insurance Co. of Pittsburgh*,
   744 F.3d 279 (4th Cir. 2014) ................................................3, 11, 12

*National Insurance Underwriters v. Carter*,
   17 Cal. 3d 380, 131 Cal. Rptr. 42, 551 P.2d 362 (1976).....................7

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

*Nautilus Insurance Co. v. OneBeacon Insurance Co.*,
No. CV 12-08399 DPP, 2014 U.S. Dist. LEXIS 62713 (C.D. Cal.
May 6, 2014)..................................................................................6

*Pentair, Inc. v. American Guarantee & Liability Insurance Co.*,
400 F.3d 613 (8th Cir. 2005) .........................................................3

*Retail Brand Alliance v. Factory Mutual Insurance Co.*,
489 F. Supp. 2d 326 (S.D.N.Y. 2007) ..........................................3

*Rosen v. State Farm General Insurance Co.*,
30 Cal. 4th 1070, 135 Cal. Rptr. 2d 361, 70 P.3d 351 (2003)......8

*Scott v. Continental Insurance Co.*,
44 Cal. App. 4th 24, 51 Cal. Rptr. 2d 566 (1996) ........................8

*Seminis, Inc. v. Factory Mutual Insurance Co.*,
802 F. Supp. 2d 1097 (C.D. Cal. 2008) ........................................8

*Waller v. Truck Insurance Exchange*,
11 Cal. 4th 1, 44 Cal. Rptr. 2d 370, 900 P.2d 619 (1995)............7

*Ward General Insurance Services, Inc. v. Employers Fire Insurance
Co.*,
114 Cal. App. 4th 548, 7 Cal. Rptr. 3d 844 (2003) ..........15, 16, 17

*Wright v. Adventures Rolling Cross Country, Inc.*,
No. C-12-0982 EMC, 2012 U.S. Dist. LEXIS 104378 (N.D. Cal.
May 3, 2012)................................................................................16

**Rules**

Fed. R. Civ. P. 56(a) ............................................................................6

**Other Authorities**

1 H. Walter Croskey, et al., *California Practice Guide: Insurance
Litigation* § 6:276.5, at 6B-34 (2013)..........................................9

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

FACTORY MUTUAL'S MEMO OF P'S & A'S IN
SUPPORT OF MTN FOR SUMMARY JUDGMENT

## A.  <u>Introduction</u>

This motion presents a simple issue:

The Contingent Time Element coverage in the FACTORY MUTUAL insurance policy requires, as an essential element, physical damage to property of the insured's "***direct***" suppliers, contract manufacturers, or contract service providers. But DIRECTV's Contingent Time Element claim is premised on physical damage to property of DIRECTV's ***indirect*** suppliers. Is FACTORY MUTUAL entitled to summary judgment on DIRECTV's claims for breach of contract and declaratory relief based on FACTORY MUTUAL's denial of DIRECTV's Contingent Time Element claim?

As explained below, the answer is "yes."

## B.  <u>Statement of Material Facts</u>

### 1.    **DIRECTV**

DIRECTV "operate[s] two direct-to-home, or DTH, business units: DIRECTV U.S. and DIRECTV Latin America, which are differentiated by their geographic location and are engaged in acquiring, promoting, selling and distributing digital entertainment programming primarily via satellite to residential and commercial subscribers." (Statement of Uncontroverted Facts ("SUF") 1.) A satellite dish antenna picks up signals from DIRECTV's satellites and transmits those signals to a DIRECTV Receiver (hereinafter referred to as the "set-top box" or "STB"), which in turn transmits the signals to the subscriber's television as viewable programming. (SUF 2.)

DIRECTV contracted with four companies to manufacture and supply its STBs: (1) Technicolor Connected Home USA, LLC; (2) Pace Americas Inc.; (3) Samsung Electronics America, Inc.; and (4) Humax USA, Inc. (SUF 3.) DIRECTV refers to these four companies as the STB original equipment manufacturers ("OEMs"). (SUF 4.) The STB manufacturers place the "DIRECTV" logo and trademark on the STBs they manufacture. (SUF 5.)

FACTORY MUTUAL'S MEMO OF  P'S & A'S IN
SUPPORT OF  MTN FOR SUMMARY JUDGMENT

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

The STBs are comprised of 700-800 component parts. (SUF 6.) The four STB manufacturers purchased the component parts and incorporated them into the finished STBs. (SUF 7.) The four STB manufacturers then sold the finished STBs to DIRECTV. (SUF 8.)

Some STBs include, as a component part, a hard drive that stores software and data in the STB and allows subscribers to record and watch television programming at their convenience. (SUF 9.) Western Digital Technologies, Inc. and Seagate Technology LLC manufactured the hard drives used in the STBs. (SUF 10.)

Like all other STB component suppliers, Western Digital and Seagate supplied their hard drives to the four STB manufacturers: Technicolor, Pace, Samsung, and Humax. (SUF 11.) DIRECTV does not know the amount that the STB manufacturers pay to Western Digital and Seagate for the hard drives because of non-disclosure agreements between the STB manufacturers and Western Digital and Seagate. (SUF 12.) The four STB manufacturers (or their contract manufacturers) then incorporated the hard drives into the STBs and supplied the finished STBs to DIRECTV. (SUF 13.)

DIRECTV refers to the STB manufacturers as its "Tier 1" suppliers and to Western Digital and Seagate as its "Tier 2" suppliers. (SUF 14.) Tier 1 suppliers supply products to DIRECTV, and Tier 2 suppliers supply products to the Tier 1 suppliers. (SUF 15.)

Hard drives are also installed in repaired and refurbished STBs. DIRECTV contracted with Jabil to repair and refurbish its STBs. (SUF 16.) Jabil purchased hard drives directly from Western Digital for use in the repaired and refurbished STBs. (SUF 17.)

## 2.    The FACTORY MUTUAL Insurance Coverage

FACTORY MUTUAL provided first-party property insurance coverage to DIRECTV under its Policy No. UB946 during the policy period March 15, 2011 to

FACTORY MUTUAL'S MEMO OF P'S & A'S IN
SUPPORT OF MTN FOR SUMMARY JUDGMENT

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

March 15, 2012. (SUF 18.) The FACTORY MUTUAL policy included both property damage and time element coverages.[1] (SUF 19.) The policy provided, among other time element coverages, "Contingent Time Element" coverage. (SUF 20.)[2]

The Contingent Time Element provision covered time element losses sustained by DIRECTV caused by damage, not otherwise excluded, to certain property at "Contingent Time Element Locations":

### B.   CONTINGENT TIME ELEMENT EXTENDED

This Policy covers the Actual Loss Sustained and EXTRA EXPENSE incurred by the Insured during the PERIOD OF LIABILITY directly resulting from physical loss or damage of the type insured to property of the type insured at Contingent Time Element Locations located within the TERRITORY of this Policy.

(SUF 20.)

---

[1]  Time element coverages are often referred to as business interruption and extra expense. *Pentair, Inc. v. Am. Guarantee & Liab. Ins. Co.*, 400 F.3d 613, 615 n.3 (8th Cir. 2005). The phrase "time element" is used because "[t]ime element coverage reimburses the insured for losses directly related to the period of time necessary to restore the damaged property to its normal condition." *Retail Brand Alliance v. Factory Mut. Ins. Co.*, 489 F. Supp. 2d 326, 328 n.1 (S.D.N.Y. 2007).

[2]  Standard time element coverage insures business income and extra expense losses sustained due to an interruption in business resulting from damage to the *insured's own property*. In contrast, contingent time element coverage (sometimes referred to as contingent business interruption or "CBI" coverage) reimburses a company for business income and extra expense losses sustained because of an interruption of business resulting from damage to *property of others*. *See, e.g., Millennium Inorganic Chems. Ltd v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 744 F.3d 279, 281 n.1 (4th Cir. 2014) ("A subset of business interruption coverage, termed CBI coverage, protects against business losses caused by damage to property not owned by the insured party."); *Pentair, Inc.*, 400 F.3d at 615 n.3 ("The word 'contingent' is something of a misnomer; it simply means that the insured's business interruption loss resulted from damage to a third party's property.").

FACTORY MUTUAL'S MEMO OF P'S & A'S IN
SUPPORT OF MTN FOR SUMMARY JUDGMENT

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

The policy defined "Contingent Time Element Location" to mean any location of a direct supplier, contract manufacturer, or contract service provider to the insured:

> 3)   References and Application.  The following term(s) wherever used in this Policy means:
>
> a)   Contingent Time Element Location:
>
> (i)   Any Location:
>
> (a)   of a direct supplier, contract manufacturer or contract service provider to the Insured.

(SUF 20.)

This definition of "Contingent Time Element Location" differed from that found in FACTORY MUTUAL's standard policy form. (SUF 21.) Indeed, the definition of "Contingent Time Element Location" in the standard FACTORY MUTUAL policy form extended coverage to locations of "indirect" as well as "direct" suppliers, contract manufacturers, and contract service providers:

> (ii) Any location of a company that is a direct or indirect customer, supplier, contract manufacturer or contract service provider to a Location described in a)(i) above.

(SUF 22.) But FACTORY MUTUAL manuscripted that language out of Policy No. UB946 issued to DIRECTV, so Policy No. UB946 did not extend the Contingent Time Element coverage to locations of "indirect" suppliers, contract manufacturers, and contract service providers to DIRECTV. (SUF 23.)

## 3.   The Thailand Flood and the Subsequent Insurance Claim

In October 2011, an accumulation of floodwater from an unusually strong monsoon season in northern Thailand caused damage to two of Western Digital's hard drive manufacturing facilities located there. (SUF 25.) As a result, DIRECTV claims that it sustained a Contingent Time Element loss in excess of $19 million because the flood damage diminished the supply of hard drives available for

incorporation into its STBs. (SUF 26.) DIRECTV further claims that it incurred more than $3 million in extra expenses, other loss, and costs because it "sourced" replacement hard drives from Seagate in an effort to mitigate its loss. (SUF 27.) The October 2011 Thailand floods did not cause any physical loss or damage to property at the locations of DIRECTV's STB manufacturers (Technicolor, Pace, Samsung, and Humax). (SUF 28.)

Thereafter, DIRECTV submitted a claim for its loss to FACTORY MUTUAL under the policy's Contingent Time Element coverage. (SUF 29.) On December 5, 2013, FACTORY MUTUAL denied coverage for DIRECTV's claimed loss. (SUF 30.) In its denial, FACTORY MUTUAL explained that the Contingent Time Element coverage did not apply because there was no damage to any "direct" supplier of DIRECTV:

> Based on the supply chain information you provided to us, the supply chain used in the manufacturing of the HD and DVR television set-top box receivers for DIRECTV are comprised of both "direct" and "indirect" suppliers.

> The direct suppliers to DIRECTV are the four (4) set-top box assembly plants, Pace Americas, Samsung, Technicolor and Humax whom DIRECTV has a contractual relationship with.

> The indirect suppliers to DIRECTV are the two (2) manufacturers of HDDs, Western Digital (Thailand flood locations) and Seagate (Thailand non-flood locations) who provide HDDs to the four (4) set-top box assembly plants noted above. . . .

> We are notifying you that based on the facts of the loss, as provided to us, and our review of the terms and conditions of the Factory Mutual Insurance Company Policy No.: UB946, the policy does not respond to DIRECTV'S Contingent Time Element Extended (CTEE) claim resulting from the direct flood damage that occurred to

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

DIRECTV's two (2) indirect supplier locations of Western Digital, listed above. Nor does the coverage extend to the supplier(s) of components for Seagate where flooding reportedly occurred.

The policy does provide CTEE coverage resulting from direct physical damage that occurs to direct supplier location(s).  However, in this case, none of DIRECTV's direct supplier locations suffered any physical damage associated with the flooding. (SUF 31.)

On October 9, 2014, DIRECTV commenced this action, alleging claims for breach of contract and declaratory relief. (SUF 32.)

## C. <u>Legal Argument</u>

## 1. <u>The Interpretation of an Insurance Policy is a Questions of Law Appropriate for Resolution on Summary Judgment.</u>

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). In this insurance coverage dispute, the material facts consist of the terms of the insurance policy and the facts and circumstances giving rise to DIRECTV's claimed loss. None of these material facts is genuinely disputed.

Thus, this case involves only the interpretation of an insurance contract, which is a question of law, making this case appropriate for disposition on summary judgment. *See, e.g., Nautilus Ins. Co. v. OneBeacon Ins. Co.*, No. CV 12-08399 DPP (JCGx), 2014 U.S. Dist. LEXIS 62713, at *11 (C.D. Cal. May 6, 2014) ("The meaning of an insurance policy and the scope of its coverage are questions of law appropriate to resolution on summary judgment."); *Big 5 Sporting Goods Corp. v. Zurich Am. Ins. Co.*, 957 F. Supp. 2d 1135, 1142 (C.D. Cal. 2013) ("Determining the scope of coverage under an insurance contract, which generally involves only issues of law, is particularly appropriate for summary judgment.").

///

FACTORY MUTUAL'S MEMO OF P'S & A'S IN
SUPPORT OF MTN FOR SUMMARY JUDGMENT

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

**2.**     <u>**Terms in an Insurance Contracts are Interpreted Using the Plain and Ordinary Meaning as Understood by a Layperson.**</u>

Insurance contracts are governed by the principles of interpretation applicable to other contracts. *E.g.*, *Hameid v. Nat'l Fire Ins. of Hartford*, 31 Cal. 4th 16, 21, 1 Cal. Rptr. 3d 401, 404, 71 P.3d 761, 764 (2003). As with all contracts, "the mutual intention of the parties at the time the contract is formed governs interpretation." *AIU Ins. Co. v. Superior Court*, 51 Cal. 3d 807, 821, 274 Cal. Rptr. 820, 831, 799 P.2d 1253, 1264 (1990). The parties' intent is found, if possible, solely in the contract's written provisions. *E.g., id*. at 821, 274 Cal. Rptr. at 831, 799 P.2d at 1264.

The court applies the plain and ordinary meaning of contract terms as understood by a layperson and not as it might be analyzed by an attorney or expert. *E.g.*, *Waller v. Truck Ins. Exch.*, 11 Cal. 4th 1, 18, 44 Cal. Rptr. 2d 370, 378, 900 P.2d 619, 627 (1995) ("The rules governing policy interpretation require us to look first to the language of the contract in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it."); *Crane v. State Farm Fire & Cas. Co*., 5 Cal. 3d 112, 115, 95 Cal. Rptr. 513, 514, 485 P.2d 1129, 1130 (1971) ("The policy should be read as a layman would read it and not as it might be analyzed by an attorney or insurance expert."). Where the terms of an insurance policy are plain and unambiguous, courts will apply that meaning. *E.g., AIU*, at 821, 274 Cal. Rptr. at 831, 799 P.2d at 1264.

"An insurance company has the right to limit the coverage of a policy issued by it and when it has done so, the plain language of the limitation must be respected." *Nat'l Ins. Underwriters v. Carter*, 17 Cal. 3d 380, 386, 131 Cal. Rptr. 42, 46, 551 P.2d 362, 366 (1976). A court may not rewrite the terms of an insurance policy or indulge in a forced construction so as to fasten a liability on the insurance company which it has not assumed. *E.g.*, *First Am. Title Ins. Co. v. XWarehouse Lending Corp*., 177 Cal. App. 4th 106, 115, 98 Cal. Rptr. 3d 801, 808 (2009);

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

*Rosen v. State Farm Gen. Ins. Co.*, 30 Cal. 4th 1070, 1078, 135 Cal. Rptr. 2d 361, 366, 70 P.3d 351, 356 (2003).

**3.** **The Contingent Time Element Coverage Does Not Apply Because There was No Damage to Property of DIRECTV's Direct Suppliers, Contract Manufacturers, or Contract Service Providers.**

**a.** **The Contingent Time Element Coverage Requires Damage to Property of a Direct Supplier, Contract Manufacturer, or Contract Service Provider to DIRECTV.**

"The starting point for determining the extent of coverage provided an insured is 'the particular language of the policies involved.'" *City of Laguna Beach v. Mead Reinsurance Corp.*, 226 Cal. App. 3d 822, 830, 276 Cal. Rptr. 438, 442 (1990) (quoting in part *Harbor Ins. Co. v. Cent. Nat'l Ins. Co.*, 165 Cal. App. 3d 1029, 1034, 211 Cal. Rptr. 902, 906 (1985)). Here, the Contingent Time Element coverage applies only where there is physical loss or damage to property "at Contingent Time Element Locations." (SUF 20.) "Contingent Time Element Location" is defined to mean any location "of a direct supplier, contract manufacturer, or contract service provider to the Insured." (SUF 20.) Coverage was not provided to DIRECTV for losses arising out of damage at locations of "indirect" suppliers, contract manufacturers, or contract service providers to DIRECTV. (SUF 21-23.)

**b.** **"Direct" Means Without an Intermediary or Intervening Persons.**

The meaning of the word "direct," an undefined term in the policy, is given its plain and ordinary meaning, which can be determined by reference to general dictionaries. *E.g., Seminis, Inc. v. Factory Mut. Ins. Co.*, 802 F. Supp. 2d 1097, 1104 (C.D. Cal. 2008) ("[C]ourts are to consider general dictionaries to ascertain the plain and ordinary meaning of undefined terms."); *Scott v. Cont'l Ins. Co.*, 44 Cal. App. 4th 24, 29, 51 Cal. Rptr. 2d 566, 569 (1996) ("In seeking to ascertain the ordinary sense of words, courts in insurance cases regularly turn to general

FACTORY MUTUAL'S MEMO OF P'S & A'S IN
SUPPORT OF MTN FOR SUMMARY JUDGMENT

dictionaries.").

The adjective "direct" is defined in general dictionaries to mean without intermediaries or intervention:

- "transmitted back and forth without an intermediary." *Webster's Third New International Dictionary* 640 (1993); and

- "without intervening factors or intermediaries." *New Oxford American Dictionary* 479 (2d ed. 2005).

California courts have defined "direct" in a similar manner. *See*, *e.g.*, *Bhan v. NME Hosps., Inc.*, 669 F. Supp. 998, 1013 (E.D. Cal. 1987) (quoting a dictionary and defining "direct" as "proceeding from one point to another in time or space without deviation or interruption."); *In re Furnace*, 185 Cal. App. 4th 649, 661, 110 Cal. Rptr. 3d 820, 828 (2010) (quoting a dictionary and defining "direct" as meaning "without interruption or diversion," and "without any intervening agency or step."); *see also* 1 H. Walter Croskey, et al., *California Practice Guide: Insurance Litigation* § 6:276.5, at 6B-34 (2013) ("'Direct' means 'without intervening persons, conditions, or agencies; immediate.'").

In short, based on definitions in general dictionaries, the plain and ordinary meaning of "direct" is without intermediaries or intervention.[3]

**c.    Western Digital Was Not a Direct Supplier to DIRECTV.**

The word "supplier" is defined in general dictionaries to mean "one that supplies: as . . . **b :** a manufacturer that produces a part for use in the product of another part <a ~ to the auto industry>." *Webster's Third New International Dictionary* 2297 (1993). There is no dispute that Western Digital is a "supplier" of

---

[3] DIRECTV applies the same definition of "direct" when it describes itself as a "direct-to-home" provider of satellite programming. (SUF 1.) *See, e.g., DirecTV, Inc. v. Webb*, 545 F.3d 837, 841 (9th Cir. 2008) ("DTV [DIRECTV] is a provider of direct-to-home satellite broadcast programming. Unlike cable television providers, which transmit signals through fixed optical fibers or coaxial cables, DTV delivers its signals via satellite directly into its customers' homes.").

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1  hard drives under the plain and ordinary meaning of that term.

2      But for Western Digital to be considered a "direct" supplier to DIRECTV, it

3  must have supplied hard drives to DIRECTV without the hard drives going through

4  an intermediary or intervening person. Or, like this:

5
6

**Western Digital** ➡ **DIRECTV**

7  That, however, was not the case here.

8      Indeed, Western Digital did not supply hard drives directly to DIRECTV.

9  Rather, Western Digital supplied hard drives to the STB manufacturers. (SUF 11.)[4]

10  The STB manufacturers incorporated the Western Digital hard drives into the STBs

11  and supplied the finished STBs to DIRECTV. (SUF 13.) Thus, Western Digital's

12  hard drives were supplied to DIRECTV through an intermediary, so its supply

13  chain looked like this:

14
15


**Western Digital** ➡ **STB Manufacturers** ➡ **DIRECTV**

16      Therefore, Western Digital was an ***indirect*** supplier to DIRECTV because it

17  was a supplier to DIRECTV's direct suppliers (the STB manufacturers). *See*

18  *Webster's Third New International Dictionary* at 1151 (defining "indirect" as "not

19  proceeding straight from one point to another"); *New Oxford American Dictionary*

20  at 860 (defining "indirect" as "not done directly; conducted through

21  intermediaries."). But coverage under the Contingent Time Element coverage

22  provision is limited; it requires that there be physical loss or damage to property of

23  DIRECTV's ***direct*** suppliers. There is no coverage under the Contingent Time

24  Element coverage provision where, as here, there is physical loss or damage to

25  property of DIRECTV's ***indirect*** suppliers; that coverage was not provided to

26  _____

27  [4] It is undisputed that the October 2011 Thailand floods did not cause any physical
   loss or damage to property at the locations of DIRECTV's four STB manufacturers.

28  (SUF 28)

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

DIRECTV. (SUF 23).

Case law on this issue also supports FACTORY MUTUAL's position. Indeed, the case *Millennium Inorganic Chemicals Ltd. v. National Union Fire Insurance Co. of Pittsburgh*, 744 F.3d 279 (4th Cir. 2014) is on point. *Millennium* arose out of a loss at a natural gas production facility owned by Apache Corporation. Alinta Sales Pty Ltd. purchased the natural gas from Apache and sold it to end users, including Millennium. *Id.* at 282. An explosion at the Apache facility resulted in the loss of natural gas supply to Millennium's titanium dioxide production facility, forcing Millennium to shut down for months. *Id.* at 283. Millennium sought coverage for its business income loss under its property policies issued by National Union and ACE, which provided contingent time element coverage for losses caused by damage to or destruction of any "contributing properties." *Id.* at 281. Under the policies, only a "direct supplier of materials to the Insured's locations" could be a "contributing property." *Id.* at 282.

Relying on the dictionary definition of "direct"—"proceeding from one point to another in time and space without deviation or interruption" and "transmitted back and forth without an intermediary"— the Fourth Circuit (in a 2-1 decision) found the term "direct" to be clear and unambiguous. *Id.* at 285 (quoting *Webster's Third New International Dictionary* at 640). Because Millennium received its gas from Alinta and not Apache, the Fourth Circuit concluded that Apache was not a direct supplier to Millennium:

> Whatever the relationship between Apache and Millennium, it was clearly interrupted by "an intermediary," Alinta, who took full physical control of Apache's gas before delivering indistinguishable commingled gas to Millennium. That relationship was also interrupted by an intervening step, the physical insertion of the gas into the DB Pipeline, at which point Apache relinquished all physical control over that gas. Under any view of the relevant facts, Apache can therefore be

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

only an indirect contributing property to Millennium, coverage of
which is not included in the terms of the Policies.

*Id*. at 285-86. The court remanded the case to the district court for entry of
summary judgment in favor of the insurers. *Id*. at 286.

Here, as in *Millennium*, the product was supplied to an intermediary before it
ever reached the insured. Indeed, like the gas in *Millennium*, the hard drives were
delivered to intermediaries (the STB manufacturers), who took full control of them
before incorporating them as a component part into the finished STBs that the
intermediaries then sold to DIRECTV. Thus, as in *Millennium*, Western Digital is
an indirect supplier to DIRECTV. And as in *Millennium*, there is no Contingent
Time Element coverage in the FACTORY MUTUAL policy where there is damage
to the property of an indirect supplier.

The case *Archer-Daniels-Midland Co. v. Phoenix Assurance Co*., 936 F.
Supp. 534 (S.D. Ill. 1996) is also instructive. Archer-Daniels-Midland ("ADM")
purchased grain from licensed grain dealers who in turn either purchased the grain
directly from farmers or from other dealers. *Id*. at 543-44. After the Mississippi
River flooded and damaged 20 million acres of farmland, ADM sought coverage
under its contingent business interruption ("CBI") provision that covered business
interruption losses "caused by damage to or destruction of real or personal property
. . . of any supplier of goods or services." *Id*. at 540. ADM claimed that the farmers
who grew the crops that ADM processed were "supplier[s] of goods or services"
under the policies. *Id*. at 543. ADM's insurers, however, contended that the farmers
were not suppliers because ADM purchased grain from licensed grain dealers and
not from individual farmers. *Id*. at 543-44.

Finding the CBI provision to be unambiguous, the court agreed with ADM's
interpretation that the farmers fell within the scope of "any supplier." *Id*. at 540-44.
But the court added that if the parties wanted to limit coverage to "direct" suppliers,
they could have easily added the word "direct" to the policy language:

FACTORY MUTUAL'S MEMO OF P'S & A'S IN
SUPPORT OF MTN FOR SUMMARY JUDGMENT

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

> The goods at issue is the grain grown by the Midwest farmers. The grain is produced by the farmers and sold to grain dealers, who then sell it to ADM. The farmers may be an 'indirect' supplier of the grain, but they are a supplier nonetheless. Had either of the parties wanted to limit the coverage to 'direct' suppliers, they could easily have added language to that effect.

*Id.*

Here, as in *Archer-Daniels*, DIRECTV did not purchase goods directly from the parties whose property was damaged (the farmers in *Archer-Daniels*, Western Digital in this case). Rather, in both instances, the insured's direct supplier (the grain dealers in *Archer-Daniels*, the four STB manufacturers here) purchased goods from the parties whose property was damaged. The *Archer-Daniels* court acknowledged that the farmers were indirect suppliers and noted that if the parties wanted to limit coverage to "direct" suppliers, they could have easily added language to that effect. Here, the parties did just that—the FACTORY MUTUAL policy expressly limited coverage to "direct" suppliers. As noted above, the standard FACTORY MUTUAL policy extended coverage to "indirect" suppliers, but that coverage was not afforded to DIRECTV.

DIRECTV, however, claims that it has a "direct relationship" with Western Digital because it provides "performance and product specifications" to Western Digital and has regular monthly meetings and biweekly discussions "regarding quality and fault analyses of HDs." *See* Letter from Chris Burgee, Vice President, DIRECTV, to George Retamoza, Staff Adjuster, FACTORY MUTUAL, at 2, (July 11, 2013) (attached as Ex. "R" to Johnson Decl.).

But this has nothing whatsoever to do with the <u>supply of hard drives</u> which is at issue in this case. To be sure, DIRECTV's claim is that the 2011 Thailand floods "physically damaged two of Western Digital's Thailand manufacturing plants that supplied the hard drives used by DIRECTV in its DIRECTV DVRs" and that this

damage "resulted in a diminished supply of hard drives available to DIRECTV for incorporation into the DIRECTV DVRS." Compl. ¶ 23 (ECF No. 1, at p. 10 of 132, Page ID #13.) And it is undisputed that Western Digital supplied its hard drives to an intermediary (the STB manufacturers), which incorporated the hard drives into the STBs before sending the finished STBs to DIRECTV. (SUF 11, 13).

In sum, on the undisputed facts, Western Digital cannot be considered a "direct" supplier because it supplied the hard drives to intermediaries, who, in turn, incorporated the hard drives into the STBs that the intermediaries then supplied to DIRECTV.

### d.      Western Digital Was Not a Direct Contract Manufacturer for DIRECTV.

#### (1)      Western Digital Was Not a Contract Manufacturer.

"Contract manufacturing" is defined as a "joint venture in which a company contracts with a manufacturer, generally in a foreign market, to produce a particular product for the company to sell or distribute." *A Dictionary of Business and Management* 139 (2009); *see also BusinessDictionary.com*, http://www.businessdictionary.com/definition/contract-manufacturing.html (last visited Oct. 9, 2015) (Contract manufacturing is the "[p]roduction of goods by one firm, under the label or brand of another firm" and is sometimes called "private label manufacturing.")

Western Digital is not a contract manufacturer because there is no evidence that DIRECTV contracted with Western Digital to manufacture goods for DIRECTV to then sell or distribute. The four STB manufacturers (Technicolor, Pace Americas, Samsung, and Humax) are DIRECTV's direct contract manufacturers. Indeed, DIRECTV's has contracts with each of the four STB manufacturers to manufacture STBs and to place the "DIRECTV" trademark in a prominent position on all STBs they manufacture. (SUF 4, 5.)

///

**(2)     Even if Western Digital Was a Contract Manufacturer, It Was Not a Direct Contract Manufacturer.**

The adjective "direct" modifies all three terms in the definition of Contingent Time Element Location definition: "supplier," "contract manufacturer," and "contract service provider." To be sure, the list of terms in the definition—"supplier, contract manufacturer, or contract service provider"—employ the word "or" not in the disjunctive but as a coordinating conjunction connecting the three terms.[5] The coordinating adjective "direct" thus modifies all three terms under generally accepted rules of grammar:

> Remember that an initial article, preposition, auxiliary verb, or modifier will tend to govern all elements in the series unless it is repeated for each element. For example, if you set up a series of nouns with the first modified by an adjective, the reader will expect the adjective to modify the rest of the series as well. . . .

*The American Heritage Book of English Usage* 53 (1996).

California courts also have found that the first adjective in a series of nouns modifies each noun in the series. In *Ward General Insurance Services, Inc. v. Employers Fire Insurance Co.*, 114 Cal. App. 4th 548, 554, 7 Cal. Rptr. 3d 844, 849 (2003), for example, the court held that the words "direct physical" modified both "loss of" and "damage to" in the phrase "direct physical loss of or damage to Covered Property." The court rejected as strained the insured's interpretation that "direct physical" modified only "loss of" and not "damage to":

> We do not adopt this interpretation, however, because it constitutes a strained and clumsy meaning, not an ordinary and popular meaning.

---

[5] "Conjunctions serve as connectors. The coordinating conjunctions (*and, but, or, nor, for, so, yet*), as well as the correlatives (*both—and, either—or, neither—nor, not only—but also, whether—or*) connect sentence elements (words, phrases, or clauses) of equal grammatical rank." *Harbrace College Handbook* 16 (11th ed. 1990) (italics in original).

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

Most readers expect the first adjective in a series of nouns or phrases to modify each noun or phrase in the following series unless another adjective appears. For example, if a writer were to say, "The orphanage relies on donors in the community to supply the children with used shirts, pants, dresses, and shoes," the reader expects the adjective "used" to modify each element in the series of nouns, "shirts," "pants," "dresses," and "shoes." The reader does not expect the writer to have meant that donors supply "used shirts," but supply "new" articles of the other types of clothing. Thus, we construe the words "direct physical" to modify both "loss of" and "damage to."

*Id.*; *see also Wright v. Adventures Rolling Cross Country, Inc.*, No. C-12-0982 EMC, 2012 U.S. Dist. LEXIS 104378, at *12 (N.D. Cal. May 3, 2012) (rejecting as a "strained and unnatural reading" of the contract subjecting plaintiff to "California's tax laws and regulations" plaintiff's assertion that the word "tax" modified only "laws" and not "regulations.").

Here too, the first adjective in a series of nouns ("direct") modifies each noun or phrase in the following series. As the courts in *Ward* and *Wright* found, it would be a strained interpretation to have "direct" modify only "supplier" and not the other two nouns. Indeed, to interpret the phrase to mean that "direct" modifies only "supplier" and that contract manufacturers and contract service providers may be either "direct" or "indirect" is a clumsy and unnatural reading of the parties' contract.

Therefore, even if Western Digital could be considered a contract manufacturer, it was not a "direct" contract manufacturer as required for the Contingent Time Element coverage to apply. Western Digital manufactured nothing directly for DIRECTV. Rather, and as explained above, Western Digital manufactured hard drives and supplied them to DIRECTV's four STB manufacturers. (SUF 11.) The four STB manufacturers supplied the finished STBs

(including the hard drive as one of many component parts) to DIRECTV. (SUF 12.)

### e. Western Digital's Thailand Manufacturing Location Was Not the Location of a Contract Service Provider to DIRECTV.

DIRECTV also claims that Western Digital was a contract service provider. There's no evidence here that Western Digital provided any services to DIRECTV under contract. Even if there was a contract, there has been no claim by DIRECTV, let alone any evidence, that the Thailand floods caused the interruption of any *services* provided by Western Digital. Indeed, DIRECTV claims that the flood damage resulted in a diminished supply of hard drives: "The damage to Western Digital's manufacturing plants resulted in a diminished supply of hard drives available to DIRECTV for incorporation into the DIRECTV DVRs." Compl. ¶ 23 (ECF No. 1, at p. 10 of 132.)

### 4. There is No Coverage for DIRECTV's Mitigation Expenses Because There is No Coverage for the Losses DIRECTV Sought to Mitigate.

DIRECTV claims that it incurred more than $3 million in extra expenses, other loss, and costs because it "sourced" replacement hard drives from Seagate in an effort to mitigate its loss. (SUF 26.) DIRECTV claims that these expenses "are covered by the various provisions of the Policy" and under "the common law doctrine of mitigation of damages." *See* Compl., ¶ 26 (ECF No. 1, at p. 10 of 132.)

The only policy provision that could potentially apply to provide coverage for these claimed extra expenses is the Contingent Time Element coverage discussed above. And as explained above, there is no coverage because Western Digital's Thailand manufacturing plants were not locations of a "direct" supplier to DIRECTV.

The common law doctrine of mitigation does not apply either. Under the common law doctrine of mitigation, an insured can recover from its insurer costs incurred by the insured for the primary benefit of the insurer to mitigate against the further occurrence of an insured loss. *See*, *e.g.*, *City of Laguna Beach v. Mead*

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

*Reinsurance Corp.*, 226 Cal. App. 3d 822, 833, 276 Cal. Rptr. 438, 445 (1990). But to be recoverable, the loss being mitigated must also be covered under the policy: "Necessary to a recovery of 'mitigation costs' is the existence of *an insured loss*." *Id.* (italics in original). As explained above, the loss that DIRECTV sought to mitigate is not covered by the FACTORY MUTUAL policy. Therefore, the mitigation costs are not recoverable either.

### D. <u>Conclusion</u>

The Contingent Time Element coverage in the FACTORY MUTUAL insurance policy requires, as an essential element, physical damage to property of the insured's "***direct***" suppliers, contract manufacturers, or contract service providers. But DIRECTV's claim here is premised on physical damage to property of DIRECTV's ***indirect*** suppliers. Thus there is no coverage for DIRECTV's Contingent Time Element claim. DIRECTV's claimed extra expense costs incurred to mitigate its loss are not recoverable under either the FACTORY MUTUAL policy or the common law doctrine of mitigation. Accordingly, the Court should grant FACTORY MUTUAL's motion for summary judgment on DIRECTV's breach of contract and declaratory relief claims.

Dated: October 19, 2015          ROBINS KAPLAN LLP

By:  /s/ Scott G. Johnson

Scott G. Johnson, 153735

ATTORNEYS FOR DEFENDANT FACTORY MUTUAL INSURANCE COMPANY

86083688.1

FACTORY MUTUAL'S MEMO OF P'S & A'S IN SUPPORT OF MTN FOR SUMMARY JUDGMENT